IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

                 Plaintiff,

       vs.

JOSHUA CHRISTOPHER DOOLIN - 3,

                Defendant.
_____/

Criminal Action
No. 1:21-447

Washington, DC
August 16, 2023

2:02 p.m

TRANSCRIPT OF SENTENCING
BEFORE THE HONORABLE CARL J. NICHOLS
UNITED STATES DISTRICT JUDGE

APPEARANCES:

**For the Plaintiff:**     **Benet Kearney**
                              DOJ-USAO
                              One Saint Andrew's Plaza
                              New York, NY 10007
                              benet.kearney@usdoj.gov

                              **Brendan Ballou**
                              DOJ-Antitrust Division
                              950 Constitution Avenue NW
                              Washington, DC 20530
                              brendan.ballou-kelley@usdoj.gov

**For the Defendant:**    **Allen Howard Orenberg**
                              THE ORENBERG LAW FIRM, P.C.
                              12505 Park Potomac Avenue, 6th Fl
                              Potomac, MD 20854
                              aorenberg@orenberglaw.com

**Reported By:**         **LORRAINE T. HERMAN, RPR, CRC**
                              Official Court Reporter
                              U.S. District & Bankruptcy Courts
                              333 Constitution Avenue NW
                              Washington, DC 20001
                              lorraine_herman@dcd.uscourts.gov

1                          **P R O C E E D I N G S**

2              **DEPUTY CLERK:**  Good afternoon, Your Honor.

3              This is criminal case year 2021-447, *United States*

4     *of America versus Joshua Christopher Doolin, Defendant No.*

5     *3.*

6              Probation Officer is Sherry Baker.

7              Counsel, please come forward and introduce

8     yourselves for the record, beginning with the government.

9              **MS. KEARNEY:**  Good afternoon, Your Honor.  Benet

10    Kearney and Brendan Ballou for the United States.

11             **THE COURT:**  Ms. Kearney, Mr. Ballou.

12             Mr. Orenberg.

13             **MR. ORENBERG:**  Yes, good afternoon, Your Honor.

14    Allen Orenberg on behalf of Mr. Doolin --

15             **THE COURT:**  Good afternoon.

16             **MR. ORENBERG:**  -- who is present.

17             **THE COURT:**  Mr. Doolin.

18             **MR. ORENBERG:**  And also accompanying Mr. Doolin

19    this afternoon is his cousin, Robert Bowl [phonetic], who is

20    in the back row.  He is from Alabama.

21             **THE COURT:**  Thank you.

22             Welcome back, everyone.

23             We are obviously here to sentence Mr. Doolin on

24    the four counts that he was convicted of following the trial

25    this spring.  Are both parties ready to proceed?

1            **MS. KEARNEY:**  Yes, Your Honor.

2            **MR. ORENBERG:**  Yes, Your Honor.

3            **THE COURT:**  Thank you.

4            So just by way of road-mapping and also

5     identifying what I've done, I have read probation's

6     presentence investigation report and recommendation, the

7     pretrial services report, the sentencing memoranda and the

8     exhibits submitted by both the government and Mr. Doolin.

9     That includes, in particular, the video exhibits sent to me

10    by Mr. Doolin, which I have watched.

11            Before we begin, does anyone have anything to add

12    to those written documents or other materials or anything I

13    should be aware of?

14            **MS. KEARNEY:**  No, nothing from the government.

15            **MR. ORENBERG:**  No, Your Honor.

16            **THE COURT:**  Thank you.

17            Here's how I intend to proceed.  First, I'll

18    consider objections to the PSR, in particular, the factual

19    objections to the PSR and make my factual findings regarding

20    it.

21            Second, and it will be pretty clear as I go

22    through the PSR the issues I want to hear argument on, but I

23    will hear argument from the parties on a couple of

24    guidelines calculation issues.  Depending on that argument,

25    I may then take a short recess at that point.  Whether I

1    take a recess or not, I will then go through my final

2    guidelines calculation.

3              After that, I will hear from counsel and

4    Mr. Doolin, if he wishes to address the Court, regarding

5    what the parties believe the sentence I impose should be.

6    And after I've heard from the parties, I will likely again

7    take a quick recess and return to pronounce the sentence.

8    Okay?

9              As to the PSR, it appears that there are some

10   outstanding factual objections by the defendant to the PSR.

11   I'm going to walk through what I understand the disputes to

12   be.  I am going to resolve a number of them right now.  And

13   then, as you will hear, there are a couple I want to hear

14   argument on.

15             Mr. Doolin objects to the inclusion of Paragraphs

16   20 to 25, as they pertain to Mr. Perkins' conduct, not

17   Mr. Doolin's.  I agree.  In my view, those paragraphs do not

18   pertain to Mr. Doolin's conduct on January 6th, 2021.  They

19   will thus not form the basis of my decision at sentencing.

20             Mr. Doolin objects to certain statements in

21   Paragraphs 13 and 39 that he and his codefendants "engaged

22   in a coordinated effort to attack law enforcement officers."

23             I agree, at least in part.  Although there was

24   some level of interaction at the Capitol between Doolin and

25   his co-defendants, it's a stretch in my view to call what

happened "a coordinated effort to attack law enforcement,"
at least with respect to Mr. Doolin.  I will therefore
strike those lines from those paragraphs for my
consideration.

Mr. Doolin objects to the statement in
Paragraph 16 that the bike rack fencing was largely intact
on the southwest side of the U.S. Capitol.  I agree.  In my
verdict, I explicitly found that some of the barriers had
been dismantled or moved by the time Doolin approached the
outer perimeter of the restricted grounds, although Doolin
was certainly aware of the bike racks on the West Front
Plaza in front of the police line.  I therefore strike that
statement from Paragraph 16 for my consideration.

Mr. Doolin objects to the first sentence of
Paragraph 18, which states that "Defendant Doolin was made
aware in other ways that entry onto the restricted grounds
was prohibited."  I overruled this objection.  I agree with
the PSR here.

In fact, at the time of the verdict, I explained
that, "Even if those barriers had not been visible to
Doolin, he was certainly aware of the bike racks in the West
Plaza in front of the police line and the police actively
trying to prevent the protestors from further encroaching on
the Capitol through various means, which clearly
communicated to Doolin that at least the area beyond those

1   bike racks and the police line was off limits to the

2   protestors."

3            Mr. Doolin objects to the entirety of

4   Paragraph 28, which states that Doolin took the Capitol

5   Police shield, he was convicted of stealing, home to Florida

6   where he and his co-defendants signed it.  Doolin argues

7   that there was no direct evidence introduced at trial to

8   this fact and that the allegations were, at best,

9   circumstantial.

10            I agree.  The government has alleged, in this case

11   generally, that Jonathan Pollock also came to be in

12   possession of a riot shield on January 6th.  While

13   Mr. Doolin certainly had and was indeed convicted of

14   stealing a riot shield on January 6th, the government did

15   not establish that Doolin brought that shield back to

16   Florida.

17            In fact, there was some evidence that Doolin was

18   stopped by police on his way to the car and that the police

19   recovered zip ties and a canister but not a riot shield.

20   Considering the size of the riot shield, that incident makes

21   it somewhat less likely that Doolin took the shield he had

22   on January 6 back to Florida.

23            **MS. KEARNEY:**  Your Honor, may we be heard on that

24   issue?  I think the government addressed parts of that in

25   its submission.

1          **THE COURT:**  Sure.  I guess.

2          I sat through the trial.  I know what the facts

3    are.

4          **MS. KEARNEY:**  Understood.  There was, kind of,

5    additional information provided in the government's

6    submission, which I think sheds additional light on that.

7          **THE COURT:**  Okay.

8          **MS. KEARNEY:**  And that would be, Your Honor, on

9    Pages 25 and 26, the FBI interviewed two members of the

10   group that Mr. Doolin traveled to and from Washington D.C.

11   with.  Both recalled that it was Mr. Doolin who loaded the

12   riot shield into the van as they left the Capitol grounds.

13   One of those individuals recalled that it was Mr. Doolin who

14   brought the shield to the Pollocks' residence for everyone

15   to sign.

16         **THE COURT:**  Yes.  I am aware of that argument.

17   The thing that I was about to say is I think it's an open

18   question.  I think that the government did not establish

19   beyond a reasonable doubt at trial -- I know that that's not

20   the standard now at the sentencing phase.  I think it's an

21   open question whose shield or which shield it was that made

22   its way back to Florida.

23         But what I was going to add is that, at a minimum,

24   the evidence is clear to me that Mr. Doolin signed a riot

25   shield that was taken on January 6th, which in a way strikes

1   me as a celebration that a riot shield, whether it was that

2   riot shield or some other riot shield, had made its way back

3   to Florida.

4          So whether it's the shield that Mr. Doolin took

5   that made its way back to Florida or some other riot shield,

6   I think, for purposes of my sentencing, I find or I will

7   rely on the fact that Mr. Doolin, quite clearly, signed a

8   riot shield, again, what seems to me to suggest a

9   celebration that a momento had made its way back to Florida,

10  which is not a good fact for Mr. Doolin.

11         So thank you for that, Ms. Kearney.

12         **MS. KEARNEY:**  Thank you, Your Honor.

13         **THE COURT:**  Mr. Doolin objects to the inclusion of

14  Paragraphs 30 to 33, which in the PSR fall under the

15  heading, "Defendant Doolin's Purported False Testimony at

16  Trial."

17         For those paragraphs, Doolin argues that the PSR

18  contains the government's submission, based on the

19  government's interpretation of the trial evidence, and that

20  I, as factfinder, am in the best position to assess Doolin's

21  credibility and make any factual determinations.  This is a

22  topic on which I intend to hear argument, in particular

23  regarding whether or not there should be an enhancement for

24  obstruction of justice based on Mr. Doolin's testimony at

25  trial.  And I, therefore, reserve judgment on the extent to

1    which I am accepting the conclusions in Paragraphs 30 to 33,

2    which I will go through when I do my guidelines calculation.

3              So with that -- and recognizing, again, I am

4    reserving on the question of whether the enhancement under

5    Paragraphs 30 to 33 applies here -- do you have any other

6    objections, Mr. Orenberg, that I have not covered to at

7    least factual statements in the PSR?

8              And just a reminder to have your microphone near

9    you for the court reporter's benefit and mine.

10        **MR. ORENBERG:**  Well, if I heard the Court

11   correctly, the Court is going to invite us to talk about or

12   present argument about the possible enhancement --

13        **THE COURT:**  Yes.

14        **MR. ORENBERG:**  -- on obstruction of justice.

15             So I guess my objections to Paragraphs 42 and 67

16   are part of that argument.

17        **THE COURT:**  Yes.  Agreed.

18        **MR. ORENBERG:**  I'm just checking to see what else.

19             And then we have other objections to the

20   guidelines starting on Page 11 of my sentencing memo -- I'm

21   sorry -- to the report not to the guidelines.

22             Does the Court want to address those now?

23        **THE COURT:**  Yes.  Let's walk through those if I

24   haven't already addressed them.  So there's, of course,

25   Paragraph 110, which regards the funds being used for travel

1    expenses.  Correct?

2             **MR. ORENBERG:**  Well, actually, Paragraph 10,

3    Mr. Doolin is requesting that --

4             **THE COURT:**  Sorry.  I said Paragraph 110.

5             **MR. ORENBERG:**  Right.

6             **THE COURT:**  Yes.

7             **MR. ORENBERG:**  He's requesting that the PSR be

8    amended to show he has been continuously monitored by GPS

9    ankle bracelet since at least July 8th, 2021.

10            **THE COURT:**  Ms. Kearney, any objection to noting

11   that fact?

12            **MS. KEARNEY:**  No.

13            **THE COURT:**  That fact as to Paragraph 10 is noted.

14            And then, as to Paragraph 110, these are additions

15   you would like.  These aren't objections to what's in the

16   PSR as it exists now.

17            **MR. ORENBERG:**  Correct.

18            **THE COURT:**  But Paragraph 110, you would like the

19   addition that the funds raised were used for travel expenses

20   in connection with the trial; that the money was not raised

21   for legal fees or to potentially pay a fine or restitution.

22            Then you have the argument that the funds should

23   not be considered to determine whether Mr. Doolin can pay a

24   fine of restitution.  Correct?

25            **MR. ORENBERG:**  Right.

1          **THE COURT:**  Ms. Kearney, I assume you object to

2     the inclusion of these statements?

3          **MS. KEARNEY:**  I object to the argument portion.  I

4     have no insight into what the funds were used for.  I

5     presume they were not used for legal counsel, but I have no

6     information either way.

7          **THE COURT:**  So I will allow these statements to be

8     considered as part of the PSR but only to the extent that

9     they are fact statements.  In particular, I will include in

10    the PSR that Mr. Doolin reports that all the funds raised

11    were used for travel expenses to/from his home in Florida in

12    connection with his trial in March, 2023.  This money was

13    not raised for legal fees or to potentially pay a fine or

14    restitution.  Full stop.

15         The rest is argument that we can take up about

16    whether they should or should not be used to determine

17    whether he could pay a fine or restitution.

18         Any other objections, Mr. Orenberg?

19         **MR. ORENBERG:**  Well, just for the record, I would

20    note that I object to the government's letter or what the

21    government was proposing to Mr. Walters, who prepared the

22    presentence report in this case, about seeking restitution

23    for the value of the riot shield as Mr. Doolin denies having

24    stolen the riot shield.

25         **THE COURT:**  Yes.  I understand.  That's a

1    sentencing argument it seems to me.

2            **MR. ORENBERG:**  Okay.

3            **THE COURT:**  That's really not an objection to

4    something in the PSR.

5            **MR. ORENBERG:**  All right.  We'll take that up

6    later then.

7            **THE COURT:**  What I'm really trying to do is

8    resolve objections to the PSR, at least the fact-finding

9    component in it.  Once we get past that, we can talk about

10   guidelines arguments and then sentencing arguments more

11   generally.

12           Are there any other objections to statements in

13   the PSR of a factual nature?

14           **MR. ORENBERG:**  No, Your Honor.

15           **THE COURT:**  Ms. Kearney, any objections from the

16   government's perspective to factual statements in the PSR?

17           **MS. KEARNEY:**  Your Honor, we had proposed

18   additional language for Paragraph 13, which I think is more

19   accurate in light of facts that were developed in the past

20   two years.  Basically, just that the defendant traveled to

21   and from Washington D.C. with a group of approximately 15

22   people.  It's noted on Page 28 of the PSR.

23           **THE COURT:**  Mr. Orenberg, any objection to

24   inclusion of what really are fact statements included in the

25   government's Paragraph 13 revision or addition contained at

1    Page 28 of the PSR?

2           **MR. ORENBERG:**  I'm sorry.  To Paragraph 28 or to

3    Paragraph 13?

4           **THE COURT:**  I apologize.  I meant to say on

5    Page 28 as to Paragraph 13.

6           **MR. ORENBERG:**  As to paragraph -- no, Your Honor.

7           **THE COURT:**  All right.

8           I will include that paragraph in the PSR for

9    purposes of my considering an appropriate sentence in this

10   case.

11          Anything else from the government's perspective,

12   Ms. Kearney?

13          **MS. KEARNEY:**  I did just want to note that

14   Your Honor had agreed to excise Paragraph 21 as related to

15   Mr. Perkins.  It does contain the duration of time that

16   Mr. Doolin was at the Capitol grounds as well.

17          **THE COURT:**  Yes, that's fair.

18          I'll amend Paragraph 21 to excise just the Perkins

19   material.  Is that information not otherwise included in --

20   it seems to me that the PSR contains a number of time frames

21   related to Mr. Doolin such that we don't really need that

22   general statement.

23          **MS. KEARNEY:**  I think it's similar to the last

24   sentence of Paragraph 16, Your Honor.

25          **THE COURT:**  Right.

1          And, of course, there are more specific times and

2   timestamps including throughout the PSR.

3          **MS. KEARNEY:**  That's correct.

4          **THE COURT:**  So I'm just going to delete it.  It

5   seem to me redundant and/or otherwise included.  Anything

6   else, Ms. Kearney?

7          **MS. KEARNEY:**  No.  Thank you.

8          **THE COURT:**  Mr. Doolin, obviously, we've been

9   discussing the presentence investigation report.  Have you

10  had enough time to review that report and to discuss it with

11  Mr. Orenberg?

12         **THE DEFENDANT:**  Yes, Your Honor.

13         **THE COURT:**  And did you have enough time to talk

14  to him both about that report and the briefs that have been

15  submitted in this case?

16         **THE DEFENDANT:**  Yes, Your Honor.

17         **THE COURT:**  Are you satisfied with the services of

18  Mr. Orenberg?

19         **THE DEFENDANT:**  Yes, Your Honor.

20         **THE COURT:**  Thank you.

21         Pursuant to Rule -- Criminal Rule of Procedure 32,

22  I accept the factual findings contained in the PSR, except

23  those portions that, on the record today, I have determined

24  I either am not accepting or am accepting as modified.  And,

25  again, with respect to Paragraphs 30 to 33, I am reserving

1    judgment on at least the conclusions there.

2        I am also including the additions discussed with

3    government counsel and Mr. Orenberg as reflected in the end

4    of the document here.  And I accept the factual findings, as

5    amended, regarding the circumstances of the offenses here,

6    and I adopt them for the purpose of imposing a sentence.

7        Turning to the guidelines calculation, under the

8    Supreme Court's decision in *United States versus Booker*, as

9    everyone knows, the guidelines are not mandatory.  They're

10   advisory but I must, nevertheless, calculate them correctly.

11       Before hearing argument on certain issues related

12   to the guidelines calculation -- and I'll identify what

13   those are, one of which is the obstruction enhancement,

14   there will be one other -- I want to start with telling the

15   parties what I have already decided, and I do not want to

16   hear argument on these topics.

17       First, I've concluded that the correct guideline

18   for Counts 22 and 24 is Section 2A2.4.  In my view, for

19   Count 22, the entering or remaining count, this is the

20   correct guideline because that offense was committed with

21   the intent to commit another felony, in my view

22   specifically, civil disorder.

23       For Count 24, disorderly or disruptive conduct,

24   this is, in my view, the correct guideline because this, the

25   2A2.4, obstructing or impeding officers guideline is a

1    better fit with the conduct underlying that charge than the

2    trespass guideline.

3           Second, I've concluded that the physical contact

4    three-level enhancement applies to Count 18, civil disorder,

5    and Count 24, disorderly conduct, but not Count 22, entering

6    or remaining, because physical contact, in my view, is not

7    really related to any of the elements of Count 22.

8           As far as I can tell from the briefs, that leaves

9    two remaining issues and they're significant ones.  The

10   first, as I have already mentioned, is whether to apply the

11   obstruction of justice enhancement under Section 3C1.1,

12   which I'll hear argument on.

13          And the second is how to group the counts.  There

14   are -- especially if we include the argument made by

15   Mr. Perkins, which I know we don't have here, but the

16   argument by Mr. Perkins would have a single group, and there

17   are different ways that the parties in PSR propose grouping.

18          So with that, Ms. Kearney, will you be taking the

19   lead on the guidelines stuff for the government?

20          **MS. KEARNEY:**  Yes, Your Honor.

21          **THE COURT:**  All right.  I'd like to hear from you

22   on these two topics, please.

23          **MS. KEARNEY:**  I think I'll take the obstruction

24   count first, Your Honor.

25          **THE COURT:**  Sure.

1    **MS. KEARNEY:**  Simply because I think, in terms of

2    the procedure for calculation, that probably should come

3    first.

4         **THE COURT:**  Yes.

5    **MS. KEARNEY:**  The government's recommendation for

6    this enhancement is based on two things, first, the

7    defendant's concealment and then possible attempts to delete

8    photos and videos that he had taken from January 6th from

9    his phone when interviewed by the FBI and then subsequent to

10   his arrest, and, second, based on his testimony at trial,

11   which was false in several key respects.

12        Taking the deletion first, Your Honor, evidence at

13   trial established that Mr. Doolin moved evidence from

14   January 6th, that is photos and videos that he had taken

15   that day, into a separate area on his phone called the

16   Keepsafe application.  And that application permits users to

17   segregate and then password protect materials that are on

18   their phone.

19        We don't know when that movement occurred.  We

20   don't know if it was on January 7th.  We don't know if it

21   was on June 1st.  What we do know is that the FBI asked

22   Mr. Doolin if those images were still on his phone and he

23   replied, I don't think so.

24        The FBI then searched the phone and ultimately

25   found many of those images and videos.  Those were

1    government exhibits at trial.

2        Pardon me, Your Honor, I've just lost my place.

3      (Brief pause.)

4        However, because those images had been moved into

5    the Keepsafe account and because Mr. Doolin falsely told the

6    FBI that the images had been deleted from his phone, the FBI

7    didn't focus on that application, the Keepsafe application,

8    until much later.

9        And the FBI subsequently saw the warrant to

10   re-search the phone and obtain photos and did so.  But the

11   FBI also served a warrant on Keepsafe, the entity.  And what

12   Keepsafe does is, in addition to having this app that works

13   locally on the phone, it also maintains data in the cloud.

14       And evidence from Keepsafe produced as a result of

15   that warrant indicates that, on the evening of June 30th, so

16   the day of Mr. Doolin's arrest, a user performed functions

17   to delete and move to trash files from the application.

18       Now, this dovetails with our arguments about

19   Mr. Doolin's testimony at trial, Your Honor, because he

20   testified that maybe he forgot that the images were on his

21   phone or maybe, actually, someone moved those images into

22   his Keepsafe account and into that folder on his phone after

23   his phone had been seized by the FBI.

24       Now, on one hand, that second explanation defies

25   logic.  The FBI puts phones into airplane mode so that the

1    contents of them can't be updated from afar after they're

2    seized.  But it also defies what the Keepsafe returns

3    indicate, which is that, far from adding materials to the

4    Keepsafe account, someone attempted to delete them, which

5    leads me to the rest of his false testimony, unless

6    Your Honor has questions on that.

7              **THE COURT:**  No.

8              **MS. KEARNEY:**  Thank you.

9              I submit, Your Honor, that Mr. Doolin testified

10   truthfully with regard to general information about his day

11   on January 6th, arriving at the Stop the Steal Rally,

12   traveling to the Capitol.

13             But once we got to the topic of the restricted

14   perimeter, Your Honor, that's where the false statements

15   started.  He testified that he saw no signs.  He testified

16   that he saw no barriers.  And that's belied by his own

17   phone, Your Honor.

18             Your Honor relied, in your verdict, on videos he

19   had taken, which not only show fences but have Mr. Doolin's

20   voice narrating -- "There's the fences lying on the ground.

21   They haven't done much good so far."  Mr. Doolin's testimony

22   wasn't, I saw the fences and I thought they had been

23   removed.  It was, "I didn't see any barriers."

24             He also denied, I think incredibly, knowing what

25   many of his own statements meant on January 6th.  So the

1   government specifically asked him about several, like,

2   "We're taking the Capitol back."  It's something he yelled

3   multiple times that day.  He said he was just copying other

4   people in the crowd.

5           The government asked him about, "We never would

6   have gotten through that wall if there weren't so many of

7   us."  Again, he claimed he was just saying things.  He had

8   no idea what they meant.

9           Now, Your Honor, those are just examples that we

10  asked him about on cross-examination, but Mr. Doolin engaged

11  in many chants that day.  He led some of them.  I have some

12  citations for Your Honor.  But I think it is implausible,

13  incredible for Mr. Doolin to suggest -- in fact, flat out

14  state that he had no idea what any of those phrases meant.

15          He used many of them himself.  He had texted his

16  friends earlier in the day, "We're going to storm the

17  Capitol".  And then he testified that that was a joke but,

18  in Mr. Doolin's presentation of events, everything not

19  helpful to him was either a joke, he didn't know what it

20  meant or he couldn't remember.  And, Your Honor, taken

21  altogether, that is simply not credible.

22          He also testified falsely regarding his text

23  messages with his father regarding the AR-15.  Now, I'm not

24  going to recite the messages, Your Honor, but Mr. Doolin's

25  explanation, again that his dad was "goofing around", is yet

1    another instance of something not being serious when it's

2    not helpful to him.

3              Now, Mr. Doolin's father's reaction does not

4    support Mr. Doolin's explanation for that, that they were

5    going hunting or to a shooting range that day.  Mr. Doolin's

6    father's reaction is to "put it in a case and carry it with

7    the Proud Boys."  That makes no sense if what they're

8    talking about is going to a shooting range.

9              **THE COURT:**  What does it mean, in the government's

10   view, under 3C1.1 for a defendant to have to have acted

11   willfully?  That's the mens rea included in that guideline

12   provision.

13             **MS. KEARNEY:**  Meaning to have testified falsely

14   willfully, that Mr. Doolin knew that his testimony was

15   false.  And I submit, Your Honor, the number of lapses in

16   memory or brush-offs of things that have happened, that

17   Mr. Doolin had two and a half years to remember, is not

18   credible.

19             You know, you don't get to escape liability by

20   claiming not to remember.  You don't get to escape liability

21   by claiming that nothing means anything.  So Mr. Doolin's

22   explanations are not credible, given the circumstances that

23   the statements were made in.

24             So, for example, "I am going to bring my AR" and

25   his father's response is "Put it in a case so you can open

1   carry with the Proud Boys," his explanation of what he meant

2   by, "I am going to bring my AR," defies logic.

3            When he testifies under oath that "What I meant

4   was we were going hunting," that is a willful false

5   statement, and it was done for the purpose of minimizing his

6   conduct.

7            This is not an immaterial issue for the Court.

8   The government introduced these text messages as evidence of

9   Mr. Doolin's intent in going to the Capitol on January 6th

10  and that he anticipated that violence would occur.  He was

11  not someone who wandered into a swirl of a riot.  He was

12  someone who expected that this could happen.  So an attempt

13  to minimize or negate that, a false attempt, is a willful

14  misrepresentation.

15           **THE COURT:**  Is there any evidence that -- let's

16  just assume that you're 100 percent right about -- this is a

17  small point -- that Mr. Doolin testified falsely about the

18  AR exchange.  Is there any evidence that, before

19  January 6th, Mr. Doolin had any knowledge, let alone intent,

20  to go to the Capitol?  Which is what I think you just --

21           **MS. KEARNEY:**  You mean prior to the --

22           **THE COURT:**  Yeah, because the exchange with the --

23           **MS. KEARNEY:**  Prior to the morning of?

24           **THE COURT:**  Right.

25           When was he exchanging the text messages with his

1    father?

2              **MS. KEARNEY:**  The day before, January 5th.

3              **THE COURT:**  So is there any evidence that, on

4    January 5th, he knew or intended to arrive at the Capitol on

5    January 6th?

6              **MS. KEARNEY:**  As opposed to the National Mall you

7    mean?

8              **THE COURT:**  Yeah.

9              **MS. KEARNEY:**  No, Your Honor, I don't think we

10   have that.  But the point here is that he anticipated that

11   this event that he was attending had the very real

12   possibility of an eruption into violence.  Right?  It

13   involved --

14             **THE COURT:**  So.  Right.

15             When you say "this event," you mean generally, not

16   things at the Capitol?

17             **MS. KEARNEY:**  I mean the rally.

18             **THE COURT:**  The rally.  Okay.

19             **MS. KEARNEY:**  So in going to the rally, he

20   anticipated a possibility of violence.  And so then the

21   morning of the rally, when he is texting, "We are waiting on

22   the word to go to the Capitol," I think all of those

23   intentions come with it.  But I think, you know, the path I

24   am going down now is maybe more of a 3553(a) argument.

25             **THE COURT:**  I understand.  I just wanted to make

1    sure I wasn't misremembering something about the evidence,

2    about what the evidence reflected Mr. Doolin might have

3    known when he sent the text messages about rally versus Mall

4    versus Capitol.

5            Because my recollection is that in this case, as

6    in many others, the idea that someone might find themselves

7    at the Capitol really isn't a thing or an intent or a

8    possibility until the day of January 6th.

9            **MS. KEARNEY:**  I think that's fair in this case,

10   Your Honor.  But I think that the falsity of the statement

11   is the same.  Right?  Whether he anticipated bringing an AR

12   to the Washington Monument or to the Capitol, the falsity of

13   the explanation after the fact.

14           **THE COURT:**  I'm not suggesting this is outcome

15   determinative, but I just wanted to make sure I wasn't

16   missing something.

17           **MS. KEARNEY:**  Yeah.

18           **THE COURT:**  And I think your point still stands,

19   which is that, if this or any of the other testimony was

20   false, there was a reason for someone to testify falsely,

21   which is to shade the evidence in the light most favorable

22   to Mr. Doolin.

23           And that, from the government's perspective, is

24   true whether we're talking about the AR-15 exchange or any

25   of the other testimony that we already discussed.  Fair?

1          **MS. KEARNEY:**  That's correct.

2          **THE COURT:**  Okay.

3          **MS. KEARNEY:**  So there are kind of several other

4     specific examples of false testimony that we laid out in the

5     memo.

6          **THE COURT:**  Yes.

7          **MS. KEARNEY:**  For example, Mr. Doolin's assertion

8     about why he was attempting to breach the tunnel.  I think

9     it was laid bare on cross-examination, Your Honor, that this

10    kind of after-the-fact explanation that he was attempting to

11    find a wounded person somewhere in the building is just

12    that.  It's an after-the-fact explanation for his actions

13    that day.

14         First, he made no mention of that explanation to

15    the FBI when they interviewed him, even though he was happy

16    to volunteer other information to them, such as trying to

17    assist a police officer and other individuals.  The FBI

18    specifically asked him what he was doing in the tunnel

19    entrance and he said, "We are trying to get inside."

20         He didn't say, I was trying to get inside to help

21    someone or I heard there was someone in need of assistance.

22    And that's a glaring omission when he's interviewed, because

23    then when he testifies on the stand, "I was trying to get

24    inside because I thought someone needed help," that's a

25    recent fabrication.

1          And that too, is willful, Your Honor, because it

2     is meant to shade his intent here.  Right?  He meant to say,

3     I wasn't trying to interfere.  I wasn't trying to obstruct.

4     I was merely trying to help.

5          Now, I'm not sure that those two motivations are

6     mutually exclusive, but he's attempting to gloss his

7     culpability.

8          **THE COURT:**  Okay.  And I understand there are

9     other specific examples.  Let's talk about the grouping

10    here.

11         **MS. KEARNEY:**  Sure.

12         **THE COURT:**  One thing that has seemed anomalous to

13    me in some positions that have been taken in the January 6th

14    cases is that there are often references or enhancements

15    that, for a particular count, drive a higher offense level.

16    And that reference is often to conduct that really is the

17    violation of another count.

18         And so you have both a count, say, civil disorder.

19    And then you have another count where the question is,

20    What's the offense level for that other count?  And one of

21    the things we do, and as I've done here, is I say, well, I

22    look at what's, relevant to thinking about the offense level

23    there, is that there was an intent to commit a civil

24    disorder.

25         So there is a link in the way that we think about

1    the base offense levels, the offense levels, that links, in

2    a way, the counts.  But then those counts aren't, at least

3    sometimes in probation's view and sometimes in the

4    government's view, grouped together.  And so they are linked

5    in the way I've just described.

6          I know that there may be technical reasons why --

7    and I understand that that's not enough to group them, but

8    that, as a result, you have a higher offense level for a

9    particular count based on, again, conduct that constituted

10   the violation and actually the violation of another count

11   but then no grouping.  And then the result of that is

12   sometimes to drive the overall -- just because of the way

13   the guidelines work -- overall offense level higher.

14         As a general proposition, it has seemed to me that

15   those two things are in some tension.  It seems to me that

16   you could have a world where, if, for example, a particular

17   offense level doesn't really refer to some other count or

18   violation of some other count, then it's perfectly

19   appropriate not to group them.

20         Or if you do and the offense level goes up as a

21   result, as I basically decided here, that you do group them,

22   and that what's anomalous -- and I know I am speaking

23   generally because this is an issue that has reoccurred and

24   it will be discussed again tomorrow -- is it seems to be

25   sort of double counting to both increase the offense level

1    for a non-grouped count with a count that's not in its group

2    and then to have the resulting fact that they're not grouped

3    add, as here, another level or two.

4            That is a very, very general way of putting the

5    concern.  And we can talk about the specific counts and the

6    like here, but I take it the government doesn't share that

7    concern at least as a general proposition?

8            **MS. KEARNEY:**  No, Your Honor.

9            And I think it kind of requires a twofold answer.

10   I think the shortest answer is, as a mathematical concept,

11   that doesn't matter.  The rules are written how the rules

12   are written, and cross-references are specifically excluded

13   from, you know, conduct that is an enhancement for another

14   count.

15           **THE COURT:**  But in terms of grouping, there are

16   four ways of thinking about grouping, and there's a fair

17   amount of play in those joints.  And once you've

18   cross-referenced or increased the offense level for a count

19   because of, basically, conduct that constitutes a violation

20   of another count, it seems that you're at least possibly

21   triggering one or more of the factors for purposes of

22   grouping.

23           **MS. KEARNEY:**  Which one are you thinking of,

24   Your Honor?  Because they certainly don't have the same

25   victim in this case.  If you are thinking of --

1          **THE COURT:**  So it depends on what you think of.  I

2     mean, if the reason that you get an enhancement or an

3     increase in the offense level is by referring to civil

4     disorder, well, civil disorder has a particular victim and

5     so you're almost importing that victim into your thinking

6     about the other count.

7          **MS. KEARNEY:**  Which completely eliminates the

8     victim of the actual count of conviction.

9          **THE COURT:**  No, it just means there are multiple

10    ones.

11         **MS. KEARNEY:**  But then the two counts don't have

12    the same victim.

13         **THE COURT:**  Well, do they have to have the same?

14    I mean, they do have the same victim, they just might have

15    an additional victim.

16         **MS. KEARNEY:**  Right, which effectively negates

17    that second or third victim.  Right?  It's effectively

18    eliminating them from the calculation.  And so, you know,

19    in -- as we'll probably discuss tomorrow, in the event of an

20    assault in a civil disorder where the civil disorder has

21    other identifiable victims, to simply group those two

22    together because one of them is the same ignores the other

23    victims.

24         I could also see, Your Honor, if the civil

25    disorder was charged as everything except that 10-second act

1    of the assault, it would then require them to group

2    separately.

3              THE COURT:  Yes.

4              MS. KEARNEY:  So I think it's a -- while I see the

5    Court's point that it seems numerically to drive the

6    numbers, the concept behind the grouping I think is honest

7    to count them separately because they, in fact, are separate

8    acts performed against separate victims.

9              THE COURT:  Or at least not fully overlapping

10   victims.

11             MS. KEARNEY:  Correct.  And so to take today's

12   example of a restricted area offense versus a civil disorder

13   offense --

14             THE COURT:  Right.  Exactly.  Yes.

15             MS. KEARNEY:  -- by virtue of the cross-reference,

16   the offense level for the civil disorder defense effectively

17   becomes the offense level for the restricted perimeter

18   offenses.

19             THE COURT:  Right.

20             MS. KEARNEY:  With varying adjustments.

21             THE COURT:  Yes.

22             MS. KEARNEY:  But what grouping them all together

23   as one course of conduct or one transaction does is

24   eliminates the nature of those restricted perimeter

25   offenses, which is that you were performing these in a --

1   these acts, whatever they are, in a sensitive space that was

2   specifically protected for a particular reason.

3               You know, it's possible to have a civil disorder

4   in a non-restricted area.  I can't come up with one now.

5               **THE COURT:**  Right.  And it's possible to enter a

6   restricted area without engaging in a civil disorder.

7               **MS. KEARNEY:**  Correct.  And so these are attempts

8   to kind of --

9               **THE COURT:**  Right.  But in those circumstances,

10  what doesn't happen -- so for example, just to use my

11  example, clearly you can enter or remain in a restricted --

12  engage in a restricted-area-related violation without

13  engaging in a civil disorder.  But if that's the case, then

14  you don't get an enhancement to the offense level for that

15  restricted area violation.

16              **MS. KEARNEY:**  Well, unless you're committing

17  another felony.

18              **THE COURT:**  Unless you're committing another

19  felony, correct.  But if we're just talking about a world

20  where you have -- so I agree with that point.

21              But here, the reason that the base offense or the

22  offense level gets increased for the restricted

23  perimeter-related offenses is because of a civil disorder.

24  And it is that increase where you're essentially importing

25  the fact that it was done with the intent to commit a civil

1    disorder.

2          And I recognize that there's an argument that you

3    don't necessarily group as a result of that, but what about

4    the argument that, perhaps, if you are not going to group --

5    if you are going to not group, then there's an argument that

6    you shouldn't increase the offense level.

7          **MS. KEARNEY:**  I think the better adjustment,

8    Your Honor, would be that you should vary from the properly

9    calculated offense level.  Right?

10         I think there is no give in, basically, the math

11   of grouping.  Right?  You can't say, This doesn't really

12   count as X levels.

13         **THE COURT:**  Right.

14         **MS. KEARNEY:**  What I think it sounds like the

15   Court is contemplating is saying, I find the offense level

16   to be whatever it is but I find that that overstates it and

17   I am going to vary.

18         **THE COURT:**  Maybe.  I don't know yet.  Yeah.

19         **MS. KEARNEY:**  Right.  Depending on the outcome

20   here.

21         **THE COURT:**  Yeah.

22         **MS. KEARNEY:**  But kind of to draw out what you

23   seem to be at least considering is that perhaps the math, as

24   the government calculates it, is too high.  It feels too

25   high, given the nature of these offenses and how they

1    intersect with each other.  But I think the response to that

2    is a variance, not a deduction of the offense level.

3                **THE COURT:**  Right.  Fair enough.  Okay.

4                **MS. KEARNEY:**  Anything else on the --

5                **THE COURT:**  No.  Thank you.

6                Anything you'd like to add on the guidelines

7    issues before I turn to Mr. Orenberg on these two in

8    particular?

9                **MS. KEARNEY:**  Your Honor, to circle back to the

10   obstruction offenses and just to kind of take -- and again,

11   this is also a 3553(a) factor that I intend to get to, but

12   to take the defendant's testimony as a whole, his statements

13   to the FBI, his statements on January 6th in his videos,

14   what strikes me is that he seems to be under the impression

15   that, if he repeats something enough, that makes it true.

16   Right?

17               So if, no matter how many times he repeats in his

18   videos, Nobody here was violent, We weren't violent, The

19   cops were violent, Nobody here was aggressive, which he does

20   on January 6th, and no matter how many times he tells the

21   FBI, I didn't see any violence, no matter how many times he

22   watches videos on that stand and says, I can't tell if

23   that's violent, that doesn't mean he didn't witness

24   violence.

25               He clearly witnessed violence, Your Honor.  And

1    the fact that he cannot bring himself to admit that and, in

2    fact, testified that he did not is a false statement.

3            **THE COURT:**  Thank you, Ms. Kearney.

4            Mr. Orenberg?

5            **MR. ORENBERG:**  Court's indulgence.  Thank you,

6    Judge.

7            As a preliminary matter, I'm sort of between a

8    rock and a hard place because Mr. Doolin is -- he plans to

9    speak to the Court at the appropriate time.  But he wants to

10   address some of the issues that Ms. Kearney has brought up

11   concerning her interpretation of how he testified at trial.

12           If I understood the Court correctly, it intends to

13   make a ruling on the request for the obstruction

14   enhancement, which is also contained in the presentence

15   report, in the typical sentencing or perhaps in this

16   sentencing, before the Court invites Mr. Doolin to address

17   the Court, and perhaps the Court would have questions for

18   Mr. Doolin at that time.

19           So I'm asking the Court, I guess, for some

20   guidance if maybe now might be the time that Mr. Doolin

21   could address the Court --

22           **THE COURT:**  I'd be happy to hear from Mr. Doolin

23   if he'd like to address either just the argument by the

24   government that he -- you know, his conduct rose to the

25   level of an obstruction enhancement or on all topics.

1    If he would like to speak just once and just

2    basically hear from him and consider what he says in

3    connection with my determination around the guidelines, and

4    then, you know, capable of keeping it in my head for

5    purposes of thinking about an appropriate sentence at the

6    end.

7    **MR. ORENBERG:**  Right.

8    **THE COURT:**  How could he do it that way?

9    **MR. ORENBERG:**  May I speak to my client for a

10   second?

11   **THE COURT:**  Yes.

12   (Discussion off the record between Mr. Orenberg and

13   Mr. Doolin.)

14   **MR. ORENBERG:**  If the Court is inviting

15   Mr. Doolin, I guess, to do a bifurcated presentation, that's

16   what he would prefer to do.  He'd rather just address --

17   **THE COURT:**  I'm not inviting it.  I am saying that

18   I am happy to do it either way you and he would prefer.

19   **MR. ORENBERG:**  Okay.

20   He would like to have the opportunity now, before

21   the Court rules on the obstruction enhancement, to address

22   the Court.

23   **THE COURT:**  Yes.  Sure.  Please.

24   Why don't you come to the podium.

25   **MR. ORENBERG:**  Not the witness stand.

1        **THE COURT:**  Were you intending to ask him

2   questions as a witness?

3        **MR. ORENBERG:**  No, Your Honor, I wasn't.  Thank

4   you.

5        **THE COURT:**  Okay.

6        **THE DEFENDANT:**  All right.

7        Your Honor, I'd like to take on a lot -- so

8   several of the topics that Ms. Kearney brought up, starting

9   with the fact that she mentioned -- I mean, she said I've

10  had two and a half years, right, to remember, I don't know

11  how most people's memory works.  But I've had two and a half

12  years to forget.

13       I mean, this wasn't like a week-long event.  This

14  was over a few hours two and a half years ago.  When you

15  think about how your memory works over two and a half years,

16  I mean, it's jumbled.  You remember a little bit here and a

17  little bit there.

18       And, I mean, I have a pretty good memory.  But, I

19  mean, when you're talking about so much happened in a

20  two-hour window, as it did, enough that we -- it's been a

21  year's worth of court cases, a lot happened in that two-hour

22  window, two and a half years later and me saying, Oh, I

23  don't remember and I am purposely trying not to lie to the

24  Court.  I don't want to try and make up memories, that those

25  were honest answers when I said I didn't remember.

1        To bring up where I've said, when I talked to the

2   FBI when they first arrested me, I don't believe anybody

3   else talked to the FBI when they were arrested.  I didn't

4   have to talk to the FBI.  I could have absolutely told them,

5   like, Hey, don't talk to me or leave me alone, take me to

6   jail.

7        I openly talked to them, and I gave them the best

8   recollection that I could of the day because I was trying to

9   be open and honest.  I wasn't having any intention to lie to

10  the FBI.  I believe I didn't lie to the FBI.  I gave them my

11  phone codes both times they took my phone.  I didn't have to

12  do that.  I could have said, Hey, figure it out yourself,

13  You're the FBI, You can open my phone if you want to, but I

14  didn't.  I gave them the pass code both times.

15       They talked about the Keepsafe.  Like, this is the

16  FBI we're talking about.  The Keepsafe was on my phone.

17  It's not a secret app.  It says Keepsafe right on the front

18  of it.  Like, you know what it is.  And the same code, I

19  believe, for the Keepsafe app is the phone code I gave them

20  for my phone.

21       So they would have had immediate access to that.

22  I don't know why they needed to pull warrants.  I hope they

23  would have been able to figure out that they could just at

24  least try the same code that's for my phone.  Like, I don't

25  have 40 different codes for 40 different things.  Like, I

1        tried to be honest and forward with everything I talked with

2        the FBI agent.

3              But I was picked up first thing in the morning.  I

4        had already been on a 48-hour shift at the fire department,

5        and they called and asked me to work overtime.  So they

6        would know where I was to pick me up.  So I'm 47 hours into

7        the shift.  I wake up.  I'm thinking I'm going home.  Tones

8        go off, I throw my clothes on, open the bedroom door

9        thinking I'm jumping into the ambulance, and the FBI is at

10       my door.

11             So from there, I am taken to a field.  I'm being

12       asked questions in the back of a car, handcuffed.  Like, to

13       say, Oh, I didn't mention it then so it didn't happen, as

14       regards to the young lady that was shot in the building,

15       there was a lot going through my mind, as well as two men

16       standing outside of the car with a folder with my name on it

17       so I'm stressed out.  Like, am I about to lose this job that

18       has taken so much to get?

19             Like, I'm trying to be open and honest, but I'm

20       also -- I'm thinking about that.  That's pretty much the

21       main thing on my mind that I don't want to lose this job.

22       But to say, like, Oh, you didn't bring it up then, so it

23       didn't happen, is I feel a ridiculous statement.  I mean,

24       that takes the human factor out of it.

25             Like I said, it had been -- a lot of time had gone

1     by.  Even at that point, it had been months, and I had been

2     working at the fire department, working on my training.  I

3     had a lot going on.

4          So to say that, again, Hey, if he didn't mention

5     it then, so, you know, it's just he brought it up on the

6     fly, I stand by that is an absolutely true statement.  I

7     think, if you check the timelines from when -- I passed that

8     tunnel many times that day and at no point did I try and go

9     into the tunnel until --

10          I assure you, if you check the timelines, that is

11    at the point where it echoed through the crowd, and I was

12    told by several members, Hey -- at the time, it was a little

13    girl that had been shot, but now I know, you know, it was a

14    grown woman but not that it matters.

15          Ms. Kearney brought up that I, you know, why -- I

16    don't know how many floors are on the Capitol.  Why did I

17    think that door would get me there?  That's not what you

18    think.  Like, let me see if I can figure out the layout of

19    this building.  Like, that's the first -- that's the only

20    door I remember seeing.  That was the closest door I had

21    seen.

22          And I think, even to further it, like, I am not

23    saying the videos I made were in good taste, but I will

24    stick to that a lot of my videos were satire for people that

25    didn't make it.  Like, Oh, all of this is going on.  At one

1    point in the video, you see me, and she even questioned me,

2    she's like, Well, you say in this video, There's the door,

3    Here's the door.

4           By their own show of what the Capitol layout --

5    there is no door in that area.  There is no door that leads

6    anywhere.  There was not a door.  I just -- that was me

7    being satire, like hyping up those videos to people.  Like,

8    a few people I had sent it back home to that were, like, Oh

9    my gosh, what's going on?  That is so crazy.

10          So, I mean, again, stupid of me, I admit, but it

11   was not -- it was not my intention to deceive the Court.

12   And like I said, that further kind of pushes the point that

13   those videos were satire because why am I saying that you

14   could clearly see in the video and you can see in my

15   location there is no door, but I'm talking about this door

16   that doesn't exist.  And I believe the prosecution knows

17   there's no door in that area, but that was my intention

18   going below.

19          And back to the text with my father, I know no

20   members of the Proud Boys.  I think that even further pushes

21   the fact that those were satire texts.  I don't know any of

22   the Proud Boys, and that's the relationship me and my father

23   have.  We joke.  Like, he says -- he likes to get under my

24   skin.  But to say, Yeah, put your gun in the case and maybe

25   you can carry it with the Proud Boys, I don't know the Proud

1    Boys.

2              I'm not going to D.C. to meet up with the Proud

3    Boys.  Like, other members, you know, other people were

4    going up, talked about, Hey, you know, maybe we'll take

5    guns.  I don't know exactly what happened.  I know somebody

6    at some point said, Hey, like you can't take guns into D.C.,

7    and that was that.  We didn't take guns.  We're not charged

8    with taking guns.

9              Like, I surely didn't have any intention on taking

10   a gun to the Capitol.  I'm not stupid.  Like, if I had

11   thought there would be violence, my first thought was not to

12   bring a gun.  Like, that's not -- you de-escalate, not

13   escalate.

14             So I mean, let me see if I've covered most of the

15   things I want to talk about.

16             Well, my text -- my text to my buddy Chappell --

17   like, Chappell is one of my best friends but he is a

18   worrier.  Through the EMT, through fire, like, the littlest

19   thing, it gets under his skin.  So that's to when I said, I

20   mean --

21             I understand it's a stretch to say, like, Oh, when

22   I sent a text, such as, Oh, I'm going down to the Capitol

23   and we're going to storm the Capitol and then I was at the

24   Capitol, I grasp that that's a stretch to say, Oh, you

25   didn't know about it, but you talked about it and then you

1    were there.  That is my luck.

2            When I talked about going to the Capitol, I was in

3    the crowd at the speech of the President.  There was people

4    talking about, Oh, afterwards, he's going to invite us.

5    We're going to the Capitol and all this.  I didn't think I

6    was going.  It was my birthday.  I thought we were going to

7    a birthday steak dinner after this.

8            Like, I'm just thinking, after he sent me the

9    text, like, you know, Don't die on your birthday, I'm

10   thinking, Oh, what's a crazy response back to that?  People

11   are talking about going to the Capitol.  I'll send him that.

12           I didn't, at the time, think I was or any of my

13   group were going to the Capitol because we never mentioned

14   it, nobody talked about it.  It wasn't until after the

15   speech where the President said, you know, We're going to

16   the Capitol.  I'll be down there with you.  So you know, we

17   all agreed.  Like, Okay, let's go hear him give one last

18   speech down at the Capitol building.

19           Never thought of anything of it before that.  Then

20   the texts were sent.  No intention of going down there,

21   surely no intention of violence.

22           Several of my videos, you know, like -- and I feel

23   like you can hear the satire in them.  Again, I know it's

24   stupid.  A lot of things were going on.  My attention

25   probably should have been in other places, but, I mean,

1    that's, you know -- I was being -- like I said, I was being

2    dumb.  I was making dumb videos, but that's -- 'cause that's

3    what the atmosphere around me was.  Like, when I say in one

4    of the videos, Oh, look at these bike racks are down, there

5    was literally bikes chained to one of the bike racks in the

6    video.  They were just bike racks at the time of the video.

7            So, I mean, to say, like, Oh, I don't remember

8    things, it's a lot to remember a long time ago.  And I tried

9    my best not to say anything that I could get caught up in or

10   that could seem dishonest.  So I don't want to give an

11   answer that I don't know.  So if I didn't know, I would say

12   I didn't know.  And that's -- that is the truth.

13           I mean, to say humor is not okay to try and play

14   things on -- I mean, these things are humor.  Like, for my

15   father to say, you know, Meet up with the Proud Boys, he

16   wasn't serious.  I don't know the Proud Boys.  My father

17   doesn't know the Proud Boys.  Like, it's -- these are satire

18   statements in themselves, and there's nothing to push that

19   they would be anything other than satire statements,

20   Your Honor.

21           All I can do is tell my truth, but I mean I

22   believe a lot of the human aspect is being taken out of --

23   like, as far as the prosecution trying to push, like, the

24   timelines to remember or if you didn't say it didn't happen,

25   but if you did say it, you said it too many times, so now it

1      didn't happen, I just -- I don't appreciate.

2            So I just want to, you know, come to my own aid

3      that I do make satire, I do make jokes and I don't remember

4      everything that happened that day.  That's my truth as I can

5      speak it, Your Honor.  I appreciate you letting me talk.

6            **THE COURT:**  Yes.  Thank you, Mr. Doolin.

7            Anything you'd like to add, Mr. Orenberg, on the

8      obstruction question?

9            **MR. ORENBERG:**  Well, Your Honor, I know the Court

10     is aware of the language, and it's already been discussed

11     that the willful -- willfulness, the willful intent, I would

12     say to the Court -- this Court, Your Honor, is in a very

13     unusual situation because this was a bench trial.  Okay?  It

14     was not a jury trial.

15           I say it was an unusual situation because, not

16     only did Mr. Doolin take -- I think he sat over there that

17     day, right, and he took the oath and he swore an oath before

18     Your Honor.  But Your Honor had an opportunity to interact,

19     to speak with Mr. Doolin six, eight, maybe ten times prior

20     to the trial, all of the status hearings we had, all of

21     the -- when we had the dust-up about the weapons found in

22     his home in December of that year, all of that.

23           I think the Court has had more than ample

24     opportunity to evaluate and to assess his credibility,

25     unlike a jury who would have only heard him, you know, for

1    those 20 minutes that he was on the stand or so.

2              So I think the Court should be able to conclude

3    that Mr. Doolin -- and again today, he has spoken from his

4    heart.  He has spoken responsibly today as he has -- and

5    truthfully on all other occasions.  And he tells the Court

6    he did not willfully intend to obstruct or impede or

7    attempted to obstruct or impede the administration of

8    justice that would support the assigning of the enhancement

9    under the guidelines.

10         **THE COURT:**  What about the one -- well, I

11   understand the issues obviously.

12             What about the grouping question?

13         **MS. KEARNEY:**  Well, that's a little bit more

14   interesting.  And I guess, you know, what I would say, as

15   the Court knows from my papers, I was first looking at the

16   misdemeanor counts and saying that there wasn't willful

17   intent to support all that, but I think the Court has

18   already ruled on that.

19             I agree with what the probation officer in this

20   case wrote, that there's only two groups that the Court

21   needs to or should, you know, base --

22         **THE COURT:**  Should there only be one group?

23         **MR. ORENBERG:**  Well, that was something I think

24   you brought up today.  That's even more interesting.  I

25   really haven't had a lot of time to think about that.  But

1    given what the Court has, you know, I guess, mused or

2    thought about and discussed with Ms. Kearney, I would say

3    yes also, but very, at the most, only two groups, not three

4    groups as the government suggests in this case.

5           And it makes a big difference obviously in the

6    guidelines where the Court comes out on this.  I'm just

7    wondering if this is a matter that the Court is ready to

8    resolve today or would like further briefing on it.  As I

9    said, I really hadn't thought about the one grouping or just

10   the one group situation as the Court has related to us.

11          Of course, Mr. Doolin is here today.  He would

12   like to move on with his life.  He was a little concerned

13   that his sentencing was delayed approximately a month --

14          **THE COURT:**  I know.

15          **MR. ORENBERG:**  -- because he would like to, you

16   know, move on.  Whatever the Court decides to do today, he

17   would like to start this next phase of his life but --

18          **THE COURT:**  That's very likely why, one of the

19   reasons why I will take a recess probably in a minute, just

20   to think about where I am on these questions and if I feel

21   comfortable resolving, in particular, the grouping issue.

22   Is there anything argumentative you'd like to add?

23          **MR. ORENBERG:**  Not at this time.

24          No.  Not at this time.

25          **THE COURT:**  Okay.  Thank you, Mr. Orenberg.

1          Ms. Kearney, would you like to respond?

2          **MS. KEARNEY:**  Actually, I just neglected to

3     actually address one of the grouping issues.  So I think

4     Your Honor was focusing on the grouping between Counts 18

5     and 22 and 24 --

6          **THE COURT:**  Sort of a general, yes.

7          **MS. KEARNEY:**  But Count 17 really doesn't fall

8     under that argument.

9          Count 17 is the theft of the riot shield.  And the

10    dispute between the government and Mr. Orenberg and the

11    Probation Department is whether or not the Capitol Police,

12    as an entity, is the same victim as the officers in the

13    tunnel who were obstructed by Mr. Doolin's conduct.

14         So I think that that is not part and parcel of the

15    same issue as does the cross-reference to the restricted

16    area counts, you know, inappropriately bump the offense

17    level such that it no longer reflects what the guidelines

18    intended.

19         **THE COURT:**  Yeah.

20         **MS. KEARNEY:**  And I submit, Your Honor, that the

21    individual officers who, as a side note to our conversation

22    about overlapping groups of victims, also include MPD

23    officers, in fact, at that point in time, were mostly MPD

24    officers, are very, very different victims from the entity

25    that owns the riot shield.  So those groups should be

1   counted separately.

2          And frankly, the harms encompassed in each

3   calculation, in each counted offense are very, very

4   different in a way that the trespass offenses and the civil

5   disorder offenses are not so cleanly separated.

6          **THE COURT:**  Anything you'd like to respond to on

7   any of the other points that Mr. Doolin or Mr. Orenberg

8   raised?

9          **MS. KEARNEY:**  I think I'll address Mr. Doolin's

10  points in my second presentation.

11         **THE COURT:**  Very well.

12         **MS. KEARNEY:**  Nothing in response to Mr. Orenberg.

13         **THE COURT:**  Okay.  Thank you.

14         So here's what we're going to do.  We'll take a

15  recess.  I probably need, I'll call it, 10 minutes to

16  collect my thoughts.

17         The plan is that I'm going to -- at least what I'd

18  like to do is to come back and do the guidelines calculation

19  from my perspective, resolve these issues and do the

20  guidelines calculations, then move directly into argument

21  about appropriate sentences.

22         And then, when we're done with that, possibly take

23  a break or not.  And then, as appropriate, pronounce the

24  sentence.  Okay?

25         Thank you.  I'll be back.

1          (Recess from 3:05 p.m. to 3:34 p.m.)

2              **DEPUTY CLERK:**  Your Honor, we are back on the

3     record.

4              **THE COURT:**  Thank you, Ms. Moore.

5              My apologies.  That took a little bit longer than

6     I had anticipated, because I think the guidelines issues

7     here are, in my view, at least close and complicated at

8     least as to grouping.

9              So this is my guidelines calculation.

10             I, of course, begin in Section 2 of the guidelines

11    to determine the correct offense level for each count. The

12    guideline that applies for Count 17 is 2B1.1.  That

13    guideline provides a baseline of 7.  Because there are no

14    applicable enhancements for Count 17, the offense level for

15    Count 17 is 7.

16             In my view, the guideline for Count 18 is 2A2.4.

17    Section 231 does not have a specific corresponding

18    guideline.  So 2X5.1 directs the Court to apply the closest

19    applicable guideline.  That guideline is 2A2.2, obstructing

20    or impeding officers.  2A2.4 has a baseline level of 10.

21    Because the offense involved physical contact, a three-level

22    enhancement applies, and therefore the offense level for

23    Count 18 is 13.

24             In my view, the guideline for Count 22 is 2A2.4.

25    Although the trespass guideline, 2B2.3, is the most obvious

1    guideline for Count 22, standing alone, I conclude that

2    Count 22 was committed with the intent to commit a felony,

3    civil disorder.  So I applied Guideline 2A2.4.  As

4    previously stated, 2A2.4 has a baseline level of 10.

5    Because there is no applicable enhancements for Count 22,

6    the offense level for Count 22 is 10.

7         In my view, the guideline for Count 24 is 2A2.4.

8    The baseline level for this guideline is 10.  Because the

9    offense involved physical contact, a three-level enhancement

10   applies, and therefore the offense level for Count 24 is 13.

11        That then leads us to the question of obstruction

12   of justice.  I am going to apply the two-level enhancement

13   for obstruction of justice under Section 3C1.1.

14        In my view, the combination of Mr. Doolin's

15   actions or at least the actions that were very likely taken

16   by Mr. Doolin, or someone acting on his behalf with respect

17   to the Keepsafe documents, plus what I viewed as, at least

18   in certain circumstances, highly incredible testimony leads

19   me to believe that beyond a reasonable -- excuse me, that by

20   a preponderance of the evidence, the government has

21   established that this enhancement applies.

22        As a result, we look to Section 3C1.1 and apply

23   the two-level obstruction of justice enhancement to each of

24   the charges.  I'm not going to go through those calculations

25   again.

1          To be very clear here, as Mr. Orenberg indicated,

2    I did sit through the trial.  I have observed Mr. Doolin on

3    a number of occasions.  I am incorporating the entire record

4    in this case in reaching this conclusion.

5          I am not -- I have not decided that certainly

6    everything Mr. Doolin said was untrue.  I do believe that,

7    in a number of circumstances, he testified incredibly and,

8    when combined with the Keepsafe step, seems to me that

9    Mr. Doolin took at least certain steps that run the real

10   risk of having impeded justice in this case, which is

11   something, not surprisingly, I care very much about.

12         We then have to group the offenses.  Section 3D1.2

13   instructs that all counts involving substantially the same

14   harm shall be grouped together into a single group.  3D1.2

15   provides for reasons why counts may involve substantially

16   the same harm.  I am not going to repeat them.

17         Here, in particular, in the very unique

18   circumstances of this case, I am going to treat all of the

19   offenses as a single group because, in the unique

20   circumstances here, the primary shared victim for all of the

21   offenses is Congress or Congress plus the law enforcement

22   officials attempting to protect the orderly function of

23   Congress.

24         As we discussed earlier, one of the reasons that I

25   am doing this grouping is because of the common intent for

1      some of the non-civil disorders, that those actions were

2      taken with the intent to commit a civil disorder.

3              And as to Count 17, while, of course, normally the

4      theft of government property would not be considered in the

5      same group with other offenses of the kind we have here, it

6      seems to me that the way I believe the evidence reflects

7      what happened is that Mr. Doolin took that shield and then

8      used it as a portion of how he engaged in civil disorder.

9              If he had taken it and if the proof established

10     that he had just taken it, not to do so and also just to

11     take it home to Florida and we knew that that had happened,

12     I think I probably wouldn't group it.  But in this

13     circumstance, it seems to me that the common objective of

14     all four counts was to engage with the law enforcement

15     officers there who were there to protect the orderly

16     function of Congress.

17             So in these unique circumstances, I do not believe

18     we should separate the counts into two groups or three

19     groups.  So as a result, we then turn to Sections 3D1.3 and

20     3D1.4 to calculate the combined offense level.  The offense

21     level for the group is 15, because that is the highest

22     offense level of the counts in the group.  That's 13 plus 2.

23     As a result, the total offense level is 15.

24             Section 3E1.1, acceptance of responsibility,

25     doesn't apply.  Mr. Doolin has zero criminal history points

1    and therefore falls within Criminal History Category I.

2         As a result, my guidelines calculation is that the

3    relevant guidelines is 18 to 24 months with an applicable

4    fine range of 7500 to $75,000.  Because Counts 17, 22 and 24

5    have statutory maximums of one year, the guideline for those

6    counts is 12 months, and the guideline range for supervised

7    release is one to three years for Count 18 and one year for

8    Counts 17, 22 and 24.

9         Now, I recognize that my guidelines calculation is

10   not the guidelines calculation proposed by PSR and probation

11   or the government for Mr. Doolin.  I think everybody's

12   positions are well reflected in their various briefs and

13   objections to the PSR.

14        Recognizing that I have decided the guidelines

15   calculation here, taking into account those arguments and,

16   where appropriate, rejecting them, does anyone want to state

17   any additional objections for the record?

18        **MS. KEARNEY:**  Yes, Your Honor.  And I think this

19   doesn't affect your calculation, but I think the proper

20   calculation for Count 17 is six because it's a misdemeanor

21   and therefore 2B1.1(a)(2) applies.

22        **MR. ORENBERG:**  I'm sorry?  Which count?

23        **MS. KEARNEY:**  The riot shield, 17.

24        **MR. ORENBERG:**  Oh, 17 is six.

25        **MS. KEARNEY:**  It doesn't affect the ultimate math

1    because of your grouping.

2            **THE COURT:**  No, it doesn't because, obviously, 15

3    is the highest level within the group.  I just want to make

4    sure I understand it.  So as to Count 17, obviously, the PSR

5    does not address that count because the PSR groups before

6    doing individual counts.

7            Ms. Kearney, can you just walk me through why, in

8    the government's view, it's six?

9            **MS. KEARNEY:**  So the base offense level was seven

10   under 2B1.1, if it's an offense referenced in that guideline

11   and the offense of conviction has a statutory maximum of 20

12   years or more, and that's not the case for a misdemeanor.

13   So then it's six otherwise.

14           **THE COURT:**  Very well.  Thank you.

15           So let me amend my guidelines calculation to

16   reflect that, as to Count 17, obviously pre-grouping for the

17   reasons just stated by Ms. Kearney, the offense level is

18   six.  That doesn't change my guidelines calculation, the

19   ultimate guidelines range calculation, because I still

20   believe it's appropriate to group Count 17 together with the

21   other counts.

22           Two of the other counts drive the offense level to

23   15 and, under the provisions I've already relied on, it is

24   that offense level of 15 from which I calculate the

25   guidelines range.  So thank you for that.

1              Anything else from the government?

2         **MS. KEARNEY:**  No, considering all of our

3    disagreements, objections that are preserved.

4         **THE COURT:**  Mr. Orenberg?

5         **MR. ORENBERG:**  No, Your Honor.

6         **THE COURT:**  Okay.

7         Thank you for that.

8         So now I would like to turn to the parties'

9    arguments about why their recommended sentences are the

10   appropriate ones.  Ms. Kearney?

11        **MS. KEARNEY:**  Thank you, Your Honor.

12        At the outset, Your Honor, I know that you've sat

13   through more than a week of the videos and have since

14   re-reviewed them.  So unless there is a particular point,

15   I'm not going to replay them for the Court.

16        **THE COURT:**  I don't think you need to, but thank

17   you for asking.

18        **MS. KEARNEY:**  Your Honor is aware of our

19   recommendation that obviously falls outside of the

20   guidelines range.

21        I am not going to request a variance, Your Honor.

22   I would request the top of the recalculated guidelines range

23   of 24 months, and that recommendation is based on several

24   factors.

25        First, the seriousness of the offense, as with all

1    of these cases, January 6th was a violent attack on the

2    peaceful transfer of power in this country.  That attack was

3    made possible, and it was as successful as it was because of

4    every single rioter there but, in particular, because of

5    those who actively attempted to obstruct and interfere with

6    law enforcement in the way that Mr. Doolin did in the

7    tunnel.

8           Again, we've seen that video, and that conduct

9    occurred over the course of more than five minutes.  He

10   pushes with the stolen riot shield into the line of rioters

11   in front of him, driving their collective force into the

12   officers in the tunnel in an attempt to push them back or to

13   break through that line and gain entry into the building.

14          As he told the FBI, they were trying to get

15   inside.  And as he said in another video that he narrated

16   from the Upper West Terrace, There is just one line of cops

17   holding us back.  Mr. Doolin was trying to get into the

18   building.

19          And the word on the riot shield, Your Honor, it's

20   a misdemeanor offense here by virtue of its value, but the

21   utility of that shield to the officers who were defending

22   the Capitol that day was far more valuable.  I'm sure the

23   officers in the tunnel, when Mr. Doolin was obstructing and

24   interfering with them, would have found it very helpful to

25   have another shield to use, rather than to have it used

1    against them.

2         But even prior to engaging in that conduct,

3    Your Honor, Mr. Doolin was on the Capitol grounds for a

4    significant period of time.  And to borrow from his words

5    earlier in the day, he did not de-escalate.  He constantly

6    sought to put himself at the front of the mob in the center

7    of the action.

8         And he filmed and watched as other rioters

9    attacked police.  He cheered them on as they surged up the

10   platform, climbing onto the Inaugural stage and getting

11   closer and closer to the Capitol building.

12        And he did so with great enthusiasm.  I think it's

13   clear from the videos he filmed, the chants that he's

14   engaging in, he not only was proud of what they had done.

15   He said things, like, "This was all taken by the government,

16   now it's ours.  We are taking the Capitol back."  And he

17   literally said, "I could not be more proud of my country

18   right now."

19        It's clear that he's not only proud, but he's

20   enjoying himself.  This is fun for him.  He is filming

21   videos to send to his friends back home to brag about

22   storming the Capitol, and that's incredibly concerning,

23   Your Honor.

24        Given this delight, this kind of glee that he

25   takes in what is happening, it's no wonder that he wanted

1    trophies of that day.  It's no wonder that he carried that

2    shield around, that he autographed it.  It's no wonder that

3    he took that MK-46.  I understand, for various reasons, he's

4    not convicted on that count, but they don't have to do with

5    whether or not he carried it off the Capitol grounds with

6    him.  It had to do with his knowledge of the ownership of

7    that item.

8            As we discussed in connection with Mr. Doolin's

9    testimony, Your Honor, he anticipated the violence and

10   potentially the chaos that would occur in D.C. that day.

11   This is not someone who went unaware.  Several members of

12   the group that he was with were also wearing body armor, and

13   he announced his desire to storm the Capitol.

14           Now, we discussed this at length, Your Honor.

15   Mr. Doolin discussed it in his remarks to the Court, said it

16   was satire.  But unprompted, he's the one who texts "We're

17   waiting on word to go to the Capitol."  He knew what he was

18   doing.  He was not swept up in a mob that he couldn't get

19   out of, and he was excited about the possibility of what he

20   was doing.

21           **THE COURT:**  Whose conduct of all of the defendants

22   who have been sentenced, including those I have sentenced,

23   does the government believe Mr. Doolin's conduct is closest

24   to?  And I realize that different defendants are in

25   different circumstances because the procedural posture of

1    their cases, their criminal histories and the like.

2         I just want to focus very specifically on the

3    conduct of Mr. Doolin on January 6th.

4         **MS. KEARNEY:**  I think, Your Honor, Mr. Price is

5    very similar in that he led a small group to the Capitol

6    grounds.  He engaged for a brief period of time with

7    officers, although he was not, kind of, the "front row" as

8    we called it.

9         While we don't have social media from Mr. Doolin,

10   we have similar prideful statements in his videos that he

11   made while on the Capitol grounds.

12        Mr. Orenberg cites to Aaron Mostofsky --

13        **THE COURT:**  So let me just go back to Mr. Price.

14   So I sentenced Mr. Price to 12 months and a day,

15   procedurally, a different context, a guilty plea, one count

16   on the one hand; on the other, a defendant with a more

17   significant criminal history.

18        One could argue those things sort of tend to

19   balance out.  Why wouldn't -- at least if we're talking

20   about conduct that day of January 6th, why wouldn't that

21   suggest a similar sentence for Mr. Doolin?

22        **MS. KEARNEY:**  Mr. Doolin has the added obstruction

23   factor, Your Honor, which I think is a significant one.  We

24   talk a lot about defendants' remorse.  I'd like to talk

25   about that more fully at the end of my comments.

1          But one way of showing remorse is accepting

2     responsibility.  One way of not accepting responsibility or

3     not grappling with what you did is by continuing to

4     obstruct.

5          And the concern for folks who don't demonstrate an

6     understanding -- understanding is the wrong word -- who

7     don't acknowledge what was wrong with their conduct on

8     January 6th, is that it creates -- they pose a greater risk

9     of engaging in this conduct again.

10          And I'll speak to this a little more fully at the

11     end, Your Honor but, with Mr. Doolin, he was proud of his

12     conduct.  It seems he continues to be proud of his conduct.

13     He, when he speaks of it, minimizes still.  And that

14     suggests to me someone who feels justified in what they did,

15     someone who feels -- continues to feel proud in what they

16     did, and someone who feels wronged by being held accountable

17     for what they did.

18          **THE COURT:**  Thank you.

19          **MS. KEARNEY:**  Mr. Orenberg cited the case of

20     Mr. Mostofsky.  And I think, on the surface, they are

21     remarkably similar, both in terms of charges and -- the

22     locations are different and the items stolen are different,

23     but the general tenor of their conduct.

24          Again, Mr. Mostofsky was in a very different

25     posture when he was sentenced and I think had a significant

1    number of underlying, kind of, mental health issues to be

2    grappling with.  So I don't think that he's the right

3    comparator as a defendant, as a whole.  Perhaps his conduct

4    is, but his sentence is not.

5         So, Your Honor, I talked about three of the

6    factors that support the government's recommendation, the

7    seriousness of the offense, Mr. Doolin's anticipation of

8    violence, his eagerness to participate in the storming of

9    the Capitol and his pride in having done so.

10        And I think all of those factors warrant the

11   significant sentence that we recommended.  And they

12   certainly don't warrant what would amount to basically an

13   almost 100 percent variance if the Court were to adopt

14   Mr. Orenberg's recommendation.  Someone like Price or

15   perhaps someone like Baquero in our memo should be the floor

16   here.

17        But lastly, Your Honor, I'll talk about the lack

18   of remorse now.  I think that this lack of remorse, in

19   addition to what I said before, also mandates the

20   significant sentence.  We have heard a lot about how this

21   case has affected Mr. Doolin.  I've watched the videos from

22   his family and friends.  I've watched his own statements.

23        We've heard how he's lost his job, how he's

24   embarrassed about his ankle monitor because it gives him a

25   bad reputation.  And he has said that he regrets going to

1      the Capitol.

2             But what I did not hear, Your Honor, was any sort

3      of remorse for what he actually did at the Capitol.  He said

4      it was stupid.  He says it was, in hindsight, inadvisable.

5      But I do not hear any remorse for trying to break through a

6      police line, through actual people who put their bodies

7      between him and the Capitol building and for putting those

8      people in danger.

9             Your Honor, Mr. Doolin was an EMT.  He should be

10     well aware of the danger posed by a mob storming the

11     Capitol, from the deployment of pepper spray, from

12     everything that he observed being done and that he

13     contributed to at the Capitol that day.  And I have heard no

14     acknowledgment of that.

15            I have heard no acknowledgment of the injuries and

16     the trauma that those officers suffered. I've heard no

17     acknowledgment of the peril that he and his fellow rioters

18     put Congress people, their staffs and the people who work in

19     the Capitol building in.  I've heard no acknowledgment in

20     any way of how he contributed to those harms.

21            Your Honor, this is not a defendant who has

22     grappled with the gravity of his crime.  And his submission

23     wants you to believe that he is an entirely different person

24     than he was two and a half years ago.

25            I think what they suggest is that he has matured

1    since then and in some ways perhaps he has, Your Honor.  But

2    the regrets that he has expressed is for the consequences of

3    his crimes only to himself.  They are not for the very real

4    harms that he contributed to.

5             And in that respect, this defendant is the very

6    same man that he was on January 6th.  He was motivated by

7    his excitement to storm the Capitol, by his indignance that

8    the police officers wouldn't step aside.  And he is still

9    beholden to the falsehoods that he repeats, that he and the

10   other rioters were not violent and were not aggressive.

11            And so, for that reason, Your Honor, we recommend

12   a 24-month sentence.

13            **THE COURT:**  Thank you, Ms. Kearney.

14            **MS. KEARNEY:**  Any questions?

15            **THE COURT:**  No.  Thank you.

16            As you know, I know the case well.  Mr. Orenberg.

17            **MR. ORENBERG:**  Yes, Your Honor.  Thank you.

18            9,300 days, approximately, Mr. Doolin has been

19   alive, Your Honor.  He is 25-plus years old.

20            One day, one day out of those 9,300 days,

21   Mr. Doolin did something foolish, in his own words "Stupid."

22   As the Court is aware from my papers, I am calling it -- I

23   am asking the Court to consider it aberrant behavior.

24            We have ample -- in our submissions and from the

25   testimony of Mr. Chappell and from the videos, we have

1    ample -- the Court has ample information about Mr. Doolin

2    before January 6th, 2021, and after January 6th, 2021.  He

3    has no criminal history.  Okay?

4            He's a remarkable young man.  I mean, he is 25

5    now.  He was 23 back in 2021.  I've spent the better part of

6    the last two years getting to know Mr. Doolin and so has the

7    Court.  Unfortunately, you know, the government only has

8    their view based on the evidence, based on the CCTV and the

9    body-worn cameras and the testimony of the officers that

10   day.

11           But I have come to know Mr. Doolin, and I've come

12   to understand that he is an exceptional young man in many

13   ways, and those ways I have presented to the Court in my

14   papers.  I am not going to belabor those points.

15           The Court is in an unenviable position because, as

16   I said, they have to use the prism, to some extent, of that

17   singular day, those six, seven, eight hours that occurred

18   over here, close to here, outside the U.S. Capitol.

19           It was a terrible day.  There is no question about

20   it.  No question about it, Your Honor.  Shocking.  Shocking

21   when it happened on January 6th, when I saw it on TV at

22   approximately 2:30 in the afternoon that day and I dare say

23   the Court did too.

24           And it continues to be shocking in many respects,

25   perhaps more so for myself and for the Court and for the

1    government, because we're living with the evidence every day

2    as we -- as I defend these cases, as Ms. Kearney, Mr. Ballou

3    prosecutes these cases and, as the Court has referred to,

4    Has sat in judgment on many of these cases.  So we're living

5    it every day.  We're continuously seeing it.

6         What I say to the Court is -- and I know the

7    Court -- and I know Your Honor is exceptional at doing this

8    -- is not to let everything from January 6th bleed into or

9    permeate what we're doing here today or what the Court is

10   doing here today.  And I see the Court nodding his head in

11   agreement with me.

12        Mr. Doolin, as I said and the Court is aware, grew

13   up in a very stable home, a very stable environment, was

14   making progressions in his life as any young man would do.

15   He had a career.  He strived desperately, earnestly to

16   become an EMT firefighter.  Unfortunately, that was taken

17   way from him when he was arrested.

18        Since that time, he has continued to strive to

19   provide for his young family soon after he was arrested.  I

20   think he was -- he might have been engaged at the time or

21   became engaged soon thereafter.  He married Ms. Morgan as

22   the Court is aware of.  You've seen the videos.  They had a

23   child.  The child's birthday was one year ago yesterday.

24        By all accounts, Mr. Doolin is an exceptional

25   husband, a devoted husband and father and, as the Court has

1    learned through my submissions, a family man.  He has the

2    love and care and support of his family, including the

3    gentleman who I introduced to the Court who came all the way

4    up from Alabama today to be with Mr. Doolin.

5         Unfortunately, his immediate family could not be

6    here and that's why they submitted the videos.  They

7    couldn't be here because of practicalities, because of the

8    expense.  The government refers to the GoFundMe page but, as

9    I've represented and Mr. Doolin can tell the Court or he

10   might have already, those funds were used to pay for his

11   expenses associated with being here, getting here --

12        **THE COURT:**  Here's the thing.  I've now had a lot

13   of January 6th cases.  Many defendants have had similarly

14   modest or no prior involvement with law enforcement,

15   Criminal History Categories 1 and the like, different but

16   similar stories about being a good husband, a good wife, a

17   good mom, a good father, a good person, a good member of the

18   community.  And I've never really discounted any of that.

19        But the thing is that, for better or worse, in the

20   context of January 6th, we have both a sentencing factor

21   that requires me to ensure that I don't create unwarranted

22   sentence disparities and a lot of people who have been

23   sentenced.  So the one constant comparator that I can look

24   to is conduct on January 6th.

25        **MR. ORENBERG:**  Okay.

1          **THE COURT:**  And there are people who engaged in

2     much, much, much worse conduct than Mr. Doolin and I have

3     sentenced them.  But there are people who engaged in much

4     less serious conduct than Mr. Doolin, and I've sentenced

5     them and some of them I have sentenced to periods of

6     incarceration.  Not years, but for pure misdemeanor guilty

7     pleas, to periods of incarceration.

8          And so I basically hear everything you're saying,

9     but it doesn't change the fact that Mr. Doolin did what he

10    did on January 6th.  And when we compare his conduct to

11    others on January 6th, he is both not nearly as serious as

12    some and much more serious than others.

13         I don't really know how I can do anything other

14    than look very seriously at that reality.  So I asked

15    Ms. Kearney this question, which is, you know, from the

16    government's perspective, what defendant's conduct on

17    January 6th was most similar to Mr. Doolin's.

18         So I'll ask you the same question:  Who do you

19    think, of the people you're aware of's conduct that day was

20    most similar to Mr. Doolin's?

21         **MR. ORENBERG:**  Your Honor, I've spent a lot of

22    time looking at the sentencing table that I'm sure the Court

23    and counsel are all aware of and then doing some deeper

24    dives into other cases, and the case I found was the *Aaron*

25    *Mostofsky* case.  Now, I know it's not completely identical.

1              **THE COURT:**  They never are.

2              **MR. ORENBERG:**  They never are.

3              **THE COURT:**  Yes.

4              **MR. ORENBERG:**  But that was the case that I've

5      cited in my submission.

6              **THE COURT:**  Yes.

7              **MR. ORENBERG:**  And I think that is the closest

8      case factually to that, although the difference, as I

9      pointed out, Mr. Doolin did not go into the building.

10     Mr. Mostofsky did, and that's where he took the items from,

11     from within building.  That was the difference.

12              In the *Mostofsky* case, sure, the conduct that

13     occurred for Mr. Mostofsky, as I understand it reading the

14     plea agreement and statement of facts, was not the same as

15     Mr. Doolin's conduct on the outside.

16              But nevertheless, it's my view, it's my opinion

17     that Mr. Doolin's conduct was less than the conduct that

18     Mr. Mostofsky --

19              **THE COURT:**  Because of the entry or not?

20              **MR. ORENBERG:**  Because of the entry.

21     Notwithstanding, and she properly pointed out that he had

22     other mental health factors, criminal history, whatever

23     else.  But that's the closest case that I could find.  If

24     the Court has another case, I would love to hear about it.

25              **THE COURT:**  I have my own list.  Unfortunately, I

1  have a spreadsheet of cases that I have personally handled.

2           **MR. ORENBERG:**  Right.

3           **THE COURT:**  It's clear that no case looks exactly

4  like another.

5           In fact, even if all one focuses on strictly is

6  the conduct on January 6th, of course, the conduct is on a

7  spectrum from least to serious to most.  But it has

8  become -- I think it's important to everyone in this court,

9  but it's very important to me that I consider the relative

10 seriousness of different defendants' conduct in how I

11 sentence them.

12          And that's, in part, though not entirely, because

13 often defendants have, again, similar but different

14 situations with their personal lives that, you know, are

15 true.  But I have landed lots of cases on particular

16 sentences often because of what happened -- not even what

17 happened -- what that particular defendant did on

18 January 6th.

19          So I understand your argument.  I mean, I think

20 that case is a relevant case in thinking about Mr. Doolin's

21 conduct.

22          **MR. ORENBERG:**  Okay.

23          Just so the record is clear, in case someone

24 behind me comes to review this case, the *Mostofsky* case is

25 21-CR-138-JEB.

1        Your Honor, as you can see, I am asking for a

2    variance based on two prongs.  The first prong is the

3    situation at the Bureau of Prisons.  As I pointed out to the

4    Court, it's my understanding that, at least as of 10, 11

5    days ago, for the most part, the Bureau of Prisons is still

6    on modified operations because of the COVID pandemic,

7    restricted movement within the various facilities,

8    restricted visiting and so forth.

9        So I've asked for the Court to consider a variance

10   based on those grounds, that the conditions of confinement

11   are going to be harsher than otherwise would have been prior

12   to the commencement of the pandemic.

13       And then the second reason for a variance is

14   because, under U.S. Sentencing Guidelines 5K2.20(b) in the

15   policy statement, it provides guidance to the Court that, if

16   it concludes that what happened was aberrant behavior -- and

17   for the various reasons that I've pointed out in my papers,

18   I say to the Court that what Mr. Doolin did that day was an

19   act of aberrant behavior.  For example, he had no

20   significant pre-planning to, you know, go to the Capitol and

21   commit criminal acts that day.  That's one of the prongs of

22   aberrant behavior.

23       It was of limited duration.  I guess minds could

24   quibble on that.  I mean, Mr. Doolin was up there for a

25   limited period of time, in my view, just during the

1    afternoon.  It did not go on for a protracted period of

2    time.

3              And, three, represents a marked deviation by the

4    defendant from an otherwise law-abiding life, which I've

5    already discussed with the Court -- you know, his life

6    before January 6th and his life after January 6th, 2021.

7              But the application note under 3C also lets the

8    Court consider his record of prior good works, which I

9    submitted to the Court is evidenced by his employment as a

10   firefighter/EMT before January 6th or before he was arrested

11   in the case.

12             The letters submitted by his aunt, Sarah Doolin,

13   the video statements of Will Chappell, his employer,

14   Mr. Huss -- I hope I am saying that right -- and his wife

15   and his mother and so forth.  And the Court had the benefit

16   of seeing some of those witnesses here who came in support

17   of Mr. Doolin.

18             Also, I think the Court needs to credit or should

19   credit Mr. Doolin's testimony.  I haven't heard otherwise

20   that, while he was there on the West Front of the Capitol

21   that day, he was assisting a police officer.  We had some

22   testimony in the trial about that, although the officer

23   could not remember clearly who it was.

24             But nevertheless, Mr. Doolin, in his bones as an

25   EMT firefighter, kicked in and he was trying to assist

1    others throughout that horrible afternoon.  So I submit to

2    the Court that a downward variance is appropriate under the

3    rubric of aberrant behavior.

4           And I will tell the Court that, at least one other

5    January 6th sentencing -- I forgot to put this in my papers

6    that I had with Chief Judge Boasberg, at the time he was

7    just Judge Boasberg -- that Judge Boasberg in that case did

8    apply this type of policy statement and went below the

9    recommended guidelines case in the case of Robert Dennis.

10           Unfortunately, the case number escapes me at the

11    moment but it was back in January.  The trial was in January

12    and the sentencing was in May of this year.  So it is

13    something that I know your colleagues have taken a look at,

14    and perhaps there are others who have employed and applied

15    in this case the aberrant behavior.

16           So for those reasons, I am asking the Court to go

17    below the established guidelines range now.  I think the

18    Court, with Ms. Kearney, with myself, we've had a colloquy

19    about what is the appropriate sentence based on other cases

20    and conduct.  Mr. Doolin, obviously, would like a sentence

21    that would allow him to remain with his family, his young

22    family because, without him being present in their lives, is

23    going to be a tremendous financial hardship.

24           I'm not saying they're alone in the world.  They

25    have support, you know, his family, her family and all of

1    that.  But still a young -- his young son Maverick and his

2    young wife Morgan would sorely miss him, not only for

3    emotional reasons and everyday reasons, but for the

4    financial reasons.

5           As the Court knows, he's a hard worker.

6    Notwithstanding the fact he was fired by the Polk County

7    Fire Department, he went right out and got another job.  And

8    it's a job -- it's a grueling job.  He gets up at 2 or 3:00

9    in the morning to deliver bread for the bread company, as

10   the Court knows from the video submission.

11          And then he comes home in the early afternoon and

12   he spends, as I understand it in talking with him and

13   talking with his wife, the rest of the day into the evening

14   with his son and his family.  He gets very little sleep is

15   what I am saying here so he can provide for his family.

16          But if there's going to be a significant period of

17   time that he's not with his family, it's going to work an

18   extreme undue hardship on his immediate young family.

19          Your Honor, Mr. Doolin does want to talk to the

20   Court again --

21          **THE COURT:**  Yes.

22          **MR. ORENBERG:**  -- about matters other than what we

23   talked about an hour or so, Mr. Doolin.

24          **THE COURT:**  Yes.  I am happy to hear from him.

25   Mr. Doolin?

1          **THE DEFENDANT:**  Can you hear me?

2          **THE COURT:**  I can.

3          **THE DEFENDANT:**  Yeah, I mean, there's so much to

4     go through but, at the same time, I don't want to just hit

5     on topics that have already been hit on over and over and

6     just be redundant.

7          But, I mean, I understand that you, as the Court,

8     have the -- the word I am looking for -- as your job, like

9     you said, you've had a lot of January 6th cases, and I know

10    they tumble on top of each other.  I know they rely on,

11    like, carry over, so to speak.  I'm not sure what the word I

12    am trying to use here.

13         But I understand what happened that day on

14    January 6th, Your Honor.  I understand the unnecessariness

15    of it.  I don't want to come across in the courtroom as if,

16    like, you know -- I know that I could have left.  And I

17    know -- and there's reasons that I don't want to say

18    completely that, you know, I wish I had never been there.

19    Because, of course, with everything that was going on, if I

20    could do it again, I'd stay home.  I'd continue working at

21    my job.  I would have never gone to D.C. in the first place.

22         But also, aspects of being there, I do feel like

23    there were moments where, if I weren't there, things could

24    have gotten more out of hand.  And I understand that my part

25    played as well, that me being there also contributed so I --

1     it's a hard factor to say, like, I know -- I'm not sure

2     whether I had been better off being there or not being

3     there, Your Honor.

4           But I do understand the seriousness of that day.

5     I understand that nothing like that -- I have any interest

6     in taking part of anything like that again, Your Honor.

7           I know you said you've had a lot of January 6th

8     people with family, Your Honor.  And I assure you, if I had

9     had my family, if I had been married, if I had Maverick -- I

10    was married at the courthouse or in a garden with an

11    officiator about 30 days, something like that, before my

12    arrest, not before January 6th but before my arrest on June

13    30th.

14          And I assure you, if that had been the case, if I

15    had already been married, if I already had my son, I would

16    have no interest in being there, and I have no interest to

17    be there again, Your Honor.

18          But I would ask you to, you know, take it into

19    consideration.  I wish my wife and son could have been here

20    but just the time.  She had already taken a lot of time off

21    of work and then the trial getting pushed back and

22    sentencing a month, it would have been a large

23    inconvenience, as well as, when I fly now, there's pretty

24    rigorous security when I go or anybody that comes with me.

25    We've already experienced that once.  So I didn't want to

1    put my family through that again.  I thought it was best

2    just to let them stay home and let me come and deal with

3    this.

4            The biggest thing I would ask, I know it's your

5    call, Your Honor.  I just ask that you to take any

6    consideration, any leniency, I'd -- the most important thing

7    in this world to me is my baby and my wife.  He literally

8    just turned one yesterday and it's like in a blink of an

9    eye.

10           And I can't imagine, you know, going really any

11   period of time without seeing my son.  But just seeing how

12   fast it goes by, just the smallest amount of time would be,

13   I mean, 12 months has already been like it was yesterday.  I

14   couldn't imagine like leaving a one-year-old and coming back

15   to a two-year-old.

16           But I just would ask for your consideration,

17   Your Honor, and taking my family into aspect.  You know I

18   know -- I do understand the seriousness of these charges,

19   and I just ask that you would -- if there is some way in

20   sentencing that I could still be there to take care of my

21   wife, take care of my family, whatever the fine is, I'll

22   figure out a way to pay it, whatever it comes to.

23           But I just -- I'd ask that you would -- if

24   there's -- you take that into consideration and my family,

25   that I could be there to take care of them and support them,

1    Your Honor.

2             Thank you for everything you have done with the

3    court so far.

4             **THE COURT:**  Thank you, Mr. Doolin.

5             Mr. Orenberg, anything you would like to add?

6             **MR. ORENBERG:**  No.  Thank you, Your Honor.

7             **THE COURT:**  Okay.

8             Ms. Kearney, anything you would like to add?

9             **MS. KEARNEY:**  No, thank you.

10            **THE COURT:**  I'm going to take another recess,

11   reflect on the discussion we've had, and then I will come

12   back and pronounce the sentence.  I'll call it five or ten

13   minutes.  Okay?

14        (Recess taken from 4:19 p.m. to 4:33 p.m.)

15            **DEPUTY CLERK:**  Your Honor, we are now back on the

16   record.

17            **THE COURT:**  Thank you, Ms. Moore.

18            So I'm going to walk through my thinking and

19   analysis of the 3553 factors and then pronounce the

20   sentence.

21            I start, as I often do, with summarizing the

22   positions of the parties.  The government, in its papers of

23   course, and based on its guidelines calculation of 27 to 23

24   months, had requested an in-guidelines sentence, again, as

25   calculated based on its guidelines calculation of 30 months'

1    incarceration, 3 years' supervised release, a $4,052 fine

2    and $2,256.65 in restitution.

3           As we discussed earlier, in light of my own

4    guidelines calculation, the government advocates for a

5    24-month period of incarceration, which is at the top of my

6    guidelines calculation.

7           Mr. Doolin, based on what was his guidelines

8    calculation of 15 to 21 months, argued in his papers for a

9    downward variance to a probationary sentence, including six

10   months of home detention with work release privileges, 150

11   hours of community service and neither a fine nor

12   restitution.

13          I think it's fair to say his position is the same

14   today, notwithstanding the fact that my guidelines

15   calculation is slightly higher than that one.

16          And then probation, based on its guidelines

17   calculation of 24 to 30 months, recommended 24 months of

18   incarceration, followed by 36 months of supervised release,

19   a $4,000 fine and $2,256.65 in restitution.

20          Again, I've concluded that none of those

21   guidelines calculations is correct and, instead, that the

22   correct guidelines calculation is 18 to 24 months'

23   incarceration.  And that, of course, is one factor I must

24   consider here in deciding on an appropriate sentence.

25          The other factors I have to consider include,

1          first, the nature and seriousness of the offense.  As I've

2          said before, now many, many, many times, the events of

3          January 6th were unquestionably serious.  Doolin and others

4          entered the United States Capitol and its grounds while a

5          joint session of Congress was meeting to certify the results

6          of the presidential election.

7                    Many rioters planned to come to the Capitol for

8          the express purpose of interrupting those proceedings.  Many

9          used violence against law enforcement officers or engaged in

10         vandalism.  Many engaged in planning efforts before

11         January 6th, suggesting that they intended to engage in

12         violence.

13                   But importantly, as I've said in every case I've

14         had, every participant in the riots made an impact, as one

15         of the primary strengths of the rioters on that day was

16         their sheer number leading to many circumstances in which

17         law enforcement was overwhelmed.

18                   As to Mr. Doolin, in my view, his personal conduct

19         on January 6th was serious.  His actions around the tunnel,

20         in particular, were quite serious.  Using the stolen Capitol

21         Police riot shield, he knowingly attempted to overtake the

22         rows of police protecting this entrance to the Capitol with

23         the crowd around him.

24                   His actions were directly antagonistic to the goal

25         of the law enforcement officers to protect this entrance to

1    the Capitol and had the potential to result in harm to those

2    officers.  In my view, the seriousness and intentional

3    nature of Mr. Doolin's actions weigh in favor of an

4    in-guidelines sentence.

5            As to Mr. Doolin's history and characteristics,

6    I'm not going to summarize all of them.  And I've reviewed

7    the videos.  I saw Mr. Doolin's testimony.  We've heard a

8    lot about Mr. Doolin this morning.  He's 25 years old.  He

9    lives with his wife Morgan and their young son Maverick who

10   turned one yesterday.  He is employed.

11           And, based on all of the evidence before me,

12   including the testimony of his employer, but also prior

13   history I've had in this case as we reviewed the conditions

14   of his release to allow him to work, in my view, he is a

15   hard worker.  Before his arrest, he worked as a firefighter

16   and EMT, but he lost that job due to this case.

17           He has no previous criminal convictions or history

18   of substance abuse.  He also has a supportive family and

19   community.  In my view, Mr. Doolin's history and

20   characteristics weigh significantly in his favor.

21           As to protecting the public respect for law and

22   deterrence, I have to ensure, of course, the sentence I

23   impose promotes respect for the law, particularly important

24   in this case.  I must ensure that the sentence I impose is

25   calibrated to deter both Mr. Doolin and others from engaging

1    in criminal conduct.

2              In my view, Mr. Doolin poses a low risk of

3    recidivism.  He has no previous convictions.  His trip to

4    Washington, D.C. involved little planning in contrast to

5    many other rioters.

6              Although text messages, of course, show that there

7    was a discussion about whether to bring a firearm to D.C.,

8    there is no evidence that he did so.  And I believe it

9    unlikely that the precise circumstances that led to

10   Mr. Doolin protesting around the Capitol and otherwise

11   engaging in his conduct on January 6th will recur.

12             But there's at least some reason to think

13   recidivism at some level could be a problem.  After all,

14   Mr. Doolin knowingly remained on Capitol grounds in a

15   restricted area for several hours despite clear evidence of

16   chaos and violence occurring around him.

17             Considering all of these factors, I think it very

18   unlikely that Mr. Doolin will re-offend.  But at the same

19   time, others must be sufficiently deterred from engaging in

20   similar actions.  Being around and within a violent riot

21   prevents police from dealing with those who are violent.

22             January 6th wasn't an ordinary violent riot, if

23   there is such a thing, but one interfering with the counting

24   of electoral votes and the peaceful transition of power,

25   those transitions of power, as I've said, many times are

1    critical to our having the democracy we have.

2         That's not to say that people aren't allowed to

3    question election integrity or fairness.  People can.  But

4    being part of a violent riot is always unacceptable, and

5    especially at the time presented on January 6th, 2021.

6         In my view, an exceedingly light sentence might

7    not sufficiently deter other would-be rioters.  Overall, the

8    need for specific deterrence on one hand and general

9    deterrence on the other tend to weigh in favor of an

10   in-guidelines sentence.

11        We discussed a lot earlier this next factor which

12   is avoiding unwarranted sentence disparities.  I've said

13   this repeatedly, but I care a lot about this, here, as in

14   all January 6th cases.  Mr. Doolin and the government have

15   provided the Court with comparator cases to consider.  The

16   government points, in particular, to the cases like *Miller*,

17   *Price*, *Hammer* and *Baquero*.  Mr. Doolin asked the Court to

18   consider, for example, the *Mostofsky* case.

19        Based on my review of the evidence in this case,

20   which, of course, I heard during the multi-day trial, the

21   information that we discussed today and the entire record

22   here, and also reviewing the reasons other judges on this

23   court have given for the sentences imposed in their cases

24   and the sentences I have imposed in my cases, in my view,

25   Mr. Doolin's actions were somewhat in the middle in severity

1    and culpability with respect to his crimes at the Capitol,

2    as compared to others who have been sentenced to the similar

3    charge or charges thus far.

4            As I've described, his conduct the day of was

5    serious and intentional.  His actions at the tunnel were

6    particularly serious as they impeded law enforcement

7    officers from protecting the Capitol and could have resulted

8    in harm to those officers.

9            He also stole government property which he then

10   used in connection with his actions in the tunnel.  That

11   makes his actions more severe, in my view, than that of

12   *Mostofsky*.  On the other hand, he never assaulted an

13   officer.  He didn't enter the Capitol or employ a dangerous

14   weapon.  He didn't take down any barricades or barriers.  In

15   those respects, his actions may be less serious, at least in

16   certain ways, than those of Miller, Hammer and Baquero.

17           Having said all that, I think his conduct, again,

18   on the day of January 6th places him in sort of the

19   mid-point of seriousness compared to other rioters who have

20   faced similar charges.

21           Unlike at least some other defendants, however, I

22   concluded earlier that Mr. Doolin did engage in certain

23   actions that constituted obstruction, in particular, his

24   conduct as to the Keepsafe materials and at least certain of

25   his testimony in court here and testimony that I think, at a

minimum, was untruthful in part.  That conduct, while not

conduct on January 6th, I do think is conduct that

distinguishes him, to some extent, from some other

January 6th defendants.

Another thing I have to consider is the need to

provide restitution to any victims of the offense,

restitution may be imposed in criminal proceedings only when

authorized by statute.  The government has probably heard

this many times now.  I've mentioned in other cases the

statutory basis for a restitution order is not at all

obvious to me.

Because the restitution here has not been agreed

to, because I'm not yet convinced there is a legal basis for

restitution, I am not going to order it.

For all these reasons, you, Joshua Doolin -- well,

let me just say one more word about why I'm going to arrive

where I am.  In my view, Mr. Doolin's conduct is somewhat

more serious than that of Mr. Price, who the government

referred to earlier.  Mr. Price was sentenced to 12 months

and a day.

Imagine, hypothetically, that Mr. Doolin's conduct

would, on January 6th, would therefore warrant a prison term

of incarceration of 15 months.  In my view, Mr. Doolin,

however, he also engaged in obstructive conduct, which

requires a six-month enhancement, in my view, based on my

1    review of the evidence.  That gets us to, let's call it, 21

2    months, which is a mid-guidelines range sentence.

3              But I think two things warrant a low-end of the

4    guidelines sentence here.  The first is that, in my view,

5    that evidence of obstructive conduct was not overwhelming as

6    it can be in other cases.  And the second is that,

7    Mr. Doolin, I think, does have a particularly strong

8    argument about the current circumstances that he and his

9    family are in.

10             For that reason, and taking into account the

11   entire record and all of the findings I've made and

12   everything I've said today, you, Joshua Doolin, are hereby

13   committed to the custody of the Bureau of Prisons for a term

14   of imprisonment for a term of 18 months, the low end of the

15   guidelines on Count 18, and concurrent terms of 12 months on

16   Counts 17, 22 and 24.  You are further sentenced to serve a

17   term of 36 months of supervised release on Count 18 and 12

18   months of concurrent supervised release on Counts 17, 22 and

19   24.

20             You are ordered to pay a special assessment of

21   $175.  I am not going to order a fine, because I've

22   determined you do not have the ability to pay one.  And I'm

23   not ordering restitution, as I have concluded there is not a

24   legal basis for doing so.  You are, as I said, required to

25   pay a special assessment of $175.

1              While on supervised release, you are required to

2     abide by several mandatory conditions which are imposed to

3     establish the basic expectations for your conduct while on

4     supervision.  You must not commit another federal, state or

5     local crime.  You must not unlawfully possess a controlled

6     substance.  You must refrain from any unlawful use of a

7     controlled substance.

8              I'm going to waive, based on your personal -- what

9     I know about, the lack of any history of drug use, I am

10    going to waive the requirement to submit to drug testing.

11    You must cooperate in the collection of DNA as directed by

12    the probation officer.

13             You shall comply with the discretionary conditions

14    outlined in Pages 23 to 24 of the final presentence report,

15    including reporting to the probation office in the federal

16    judicial district where you are authorized to reside within

17    72 hours of the time you are sentenced or within 72 hours of

18    release from imprisonment.

19             You must not knowingly leave the federal judicial

20    district where you are authorized to reside without first

21    getting permission from the Court or the probation officer.

22    You must answer truthfully to questions asked by your

23    probation officer.  You must live in a place that the

24    probation officer approves.  You must allow the probation

25    officer to visit you at any time in your home or elsewhere

1    and to take any items prohibited by the conditions of your

2    supervision that he or she observes in plain view.

3          You must seek to work full time at a lawful type

4    of employment, unless excused by the probation officer from

5    doing so.  You must not communicate or interact with someone

6    you know who is engaged in criminal activity.  If you know

7    someone has been convicted of a felony, you must not

8    knowingly communicate or interact with that person without

9    first getting the permission of the probation officer.  If

10   you are arrested or questioned by a law enforcement officer,

11   you must notify your probation officer within 72 hours.

12         I find that all of the conditions I've just

13   articulated are reasonably related to the relevant

14   sentencing factors set forth in 18 U.S. Code, Section

15   3553(a), and involve no greater deprivation of liberty than

16   reasonably necessary to achieve the purposes of sentencing.

17         These conditions establish the basic expectations

18   for an individual under supervision and identify the minimum

19   tools needed by probation officers to administer the

20   supervision that are therefore appropriate here.

21         Pursuant to 18 U.S. Code, Section 3742, you have a

22   right to appeal the sentence and judgment that I have

23   imposed.  If you were to choose to do so, you must file any

24   appeal within 14 days after the entry of judgment.  If you

25   are unable to afford the cost of an appeal, you may request

1    permission to file an appeal without cost to you.

2            You also have certain rights under 28 U.S. Code,

3    Section 2255, in particular, to challenge the conviction or

4    sentence if new and currently unavailable information

5    becomes available or on a claim that you received

6    ineffective assistance of counsel.  You may also request

7    permission from the Court to file such proceedings without

8    cost to you.

9            With all of that, why don't I ask probation first,

10   if there are any details, qualifications, notes that I got

11   wrong?

12           **PROBATION:**  No, Your Honor.

13           **THE COURT:**  Thank you.

14           Any questions or objections from the government,

15   Ms. Kearney?

16           **MS. KEARNEY:**  No, Your Honor.

17           **THE COURT:**  Mr. Orenberg, questions or objections

18   or, I suppose, requests from you?

19           **MR. ORENBERG:**  No objection.

20           I do have a request or a question concerning the

21   amended presentence report.

22           We went through a number of issues concerning the

23   presentence report.  There's going to be an amended

24   presentence report.  I just want to make sure we have an

25   opportunity to review it before it's sent to the Bureau of

1  Prisons.

2  **THE COURT:** Is that the plan, would we do, create

3  a new presentence report reflecting my oral decisions today?

4  **PROBATION:** Your Honor, we can certainly provide

5  it to defense --

6  **THE COURT:** Okay. Let's do that.

7  **MR. ORENBERG:** Okay.

8  **THE COURT:** If an amended presentence report could

9  be prepared and allow Mr. Orenberg to review it before its

10  submission to other agencies, I would appreciate that.

11  Thank you.

12  **MR. ORENBERG:** Your Honor, one further request --

13  well, there are some requests in my memorandum. One is that

14  a judicial recommendation for placement within the

15  Tampa/Orlando/Jacksonville, Florida area.

16  **THE COURT:** Yes. I will make that recommendation.

17  **MR. ORENBERG:** Okay.

18  And number two, and I discussed this with

19  Ms. Kearney yesterday, we are asking the Court's permission

20  to authorize self-surrender.

21  **THE COURT:** Ms. Kearney, what is the government's

22  view on that?

23  **MS. KEARNEY:** We don't object, Your Honor.

24  **THE COURT:** I agree that self-surrender is

25  appropriate. So I will permit Mr. Doolin to self-surrender.

1    I will recommend in the judgment that he be housed at a BOP

2    facility in those geographic areas.  If there is a

3    particular facility you have in mind, you could email it to

4    Ms. Moore.  I am happy to make either that general

5    recommendation or even a specific one, but that would be

6    included.

7              We will have an amended presentence report that

8    you will have an opportunity to review before it goes out to

9    anyone else.  And then, of course, as I said, Mr. Doolin

10   will be permitted to self-surrender.

11             Okay?  Anything else?

12             Oh, yeah.

13        (Discussion off the record between the Judge and

14   Ms. Moore.)

15             **THE COURT:**  Ms. Moore raised the question whether

16   there are any counts --

17             **MS. KEARNEY:**  We were just discussing and I said,

18   no, but there actually is an underlying indictment.  So on

19   the S-0, the government moves to dismiss those counts.

20             **THE COURT:**  Yes.

21             I assume, Mr. Orenberg, you have no objection to

22   granting that motion.

23             **MR. ORENBERG:**  No objection.  That's correct, no

24   objection.

25             **THE COURT:**  That motion is granted.

1    **MS. KEARNEY:**  Thank you, Ms. Moore.

2    **THE COURT:**  Anything else then, Counsel?

3    **MR. ORENBERG:**  No, Your Honor.

4    **THE COURT:**  Okay.  Thank you all.

5    **MR. ORENBERG:**  Thank you, Your Honor.

6    (Proceedings concluded at 4:52 p.m.)

1                    **C E R T I F I C A T E**

2

3           I, **Lorraine T. Herman, Official Court Reporter,**

4     certify that the foregoing is a true and correct transcript

5     of the record of proceedings in the above-entitled matter.

6

7

8

9      ___September 23, 2023___        ___/s/ Lorraine T. Herman___
                    **DATE**                      **Lorraine T. Herman**
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**DEPUTY CLERK: [3]**
2/2 49/2 77/15
**MR. ORENBERG: [51]**
2/13 2/16 2/18 3/2 3/15
9/10 9/14 9/18 10/2
10/5 10/7 10/17 10/25
11/19 12/2 12/5 12/14
13/2 13/6 34/5 35/7
35/9 35/14 35/19 35/25
36/3 44/9 45/23 46/15
46/23 53/22 53/24 55/5
63/17 66/25 67/21 68/2
68/4 68/7 68/20 69/2
69/22 73/22 77/6 88/19
89/7 89/12 89/17 90/23
91/3 91/5
**MS. KEARNEY: [73]**
2/9 3/1 3/14 6/23 7/4
7/8 8/12 10/12 11/3
12/17 13/13 13/23 14/3
14/7 16/20 16/23 17/1
17/5 19/8 21/13 22/21
22/23 23/2 23/6 23/9
23/17 23/19 24/9 24/17
25/1 25/3 25/7 26/11
28/8 28/23 29/7 29/11
29/16 30/4 30/11 30/15
30/20 30/22 31/7 31/16
32/7 32/14 32/19 32/22
33/4 33/9 45/13 47/2
47/7 47/20 48/9 48/12
53/18 53/23 53/25 54/9
55/2 55/11 55/18 59/4
59/22 60/19 63/14 77/9
88/16 89/23 90/17 91/1
**PROBATION: [2]**
88/12 89/4
**THE COURT: [128]**
**THE DEFENDANT: [6]**
14/12 14/16 14/19 36/6
74/1 74/3

**$**

**$175 [2]** 85/21 85/25
**$2,256.65 [2]** 78/2
78/19
**$4,000 [1]** 78/19
**$4,052 [1]** 78/1
**$75,000 [1]** 53/4

**'**

**'cause [1]** 43/2

**/**

**/s [1]** 92/9

**1**

**10 [8]** 10/2 10/13 48/15
49/20 50/4 50/6 50/8
70/4
**10-second [1]** 29/25
**100 percent [2]** 22/16
61/13
**10007 [1]** 1/13
**11 [2]** 9/20 70/4
**110 [4]** 9/25 10/4 10/14
10/18
**12 [6]** 53/6 59/14 76/13
84/19 85/15 85/17
**12505 [1]** 1/19
**13 [8]** 4/21 12/18 12/25
13/3 13/5 49/23 50/10
52/22
**14 [1]** 87/24
**15 [10]** 12/21 20/23
24/24 52/21 52/23 54/2
54/23 54/24 78/8 84/23
**150 [1]** 78/10
**16 [4]** 1/5 5/6 5/13
13/24
**17 [16]** 47/7 47/9 49/12
49/14 49/15 52/3 53/4
53/8 53/20 53/23 53/24
54/4 54/16 54/20 85/16
85/18
**18 [13]** 5/15 16/4 47/4
49/16 49/23 53/3 53/7
78/22 85/14 85/15
85/17 87/14 87/21
**1:21-447 [1]** 1/3
**1st [1]** 17/21

**2**

**20 [3]** 4/16 45/1 54/11
**20001 [1]** 1/25
**2021 [7]** 4/18 10/9 64/2
64/2 64/5 71/6 82/5
**2021-447 [1]** 2/3
**2023 [3]** 1/5 11/12 92/9
**20530 [1]** 1/16
**20854 [1]** 1/19
**21 [4]** 13/14 13/18 78/8
85/1
**21-CR-138-JEB [1]**
69/25
**22 [14]** 15/18 15/19
16/5 16/7 47/5 49/24

50/1 50/2 50/5 50/6
53/4 53/8 85/16 85/18
**2255 [1]** 88/3
**23 [4]** 64/5 77/23 86/14
92/9
**231 [1]** 49/17
**24 [16]** 15/18 15/23
16/5 47/5 50/7 50/10
50/3 53/4 53/8 55/23
78/17 78/17 78/22
85/16 85/19 86/14
**24-month [2]** 63/12
78/5
**25 [4]** 4/16 7/9 64/4
80/8
**25-plus [1]** 63/19
**26 [1]** 7/9
**27 [1]** 77/23
**28 [6]** 6/4 12/22 13/1
13/2 13/5 88/2
**2:02 [1]** 1/6
**2:30 [1]** 64/22
**2A2.2 [1]** 49/19
**2A2.4 [8]** 15/18 15/25
49/16 49/20 49/24 50/3
50/4 50/7
**2B1.1 [3]** 49/12 53/21
54/10
**2B2.3 [1]** 49/25
**2X5.1 [1]** 49/18

**3**

**30 [7]** 8/14 9/1 9/5
14/25 75/11 77/25
78/17
**30th [2]** 18/15 75/13
**32 [1]** 14/21
**33 [4]** 8/14 9/1 9/5
14/25
**333 [1]** 1/24
**3553 [4]** 23/24 33/11
77/19 87/15
**36 [2]** 78/18 85/17
**3742 [1]** 87/21
**39 [1]** 4/21
**3:00 [1]** 73/8
**3:05 [1]** 49/1
**3:34 [1]** 49/1
**3C [1]** 71/7
**3C1.1 [4]** 16/11 21/10
50/13 50/22
**3D1.2 [2]** 51/12 51/14
**3D1.3 [1]** 52/19
**3D1.4 [1]** 52/20

**3E1.1 [1]** 52/24

**4**

**40 [2]** 37/25 37/25
**42 [1]** 9/15
**447 [2]** 1/3 2/3
**46 [1]** 58/3
**47 [1]** 38/6
**48-hour [1]** 38/4
**4:19 [1]** 77/14
**4:33 [1]** 77/14
**4:52 p.m [1]** 91/6

**5**

**5K2.20 [1]** 70/14
**5th [2]** 23/2 23/4

**6**

**67 [1]** 9/15
**6th [52]** 1/19 4/18 6/12
6/14 7/25 17/8 17/14
19/11 19/25 22/9 23/19
23/5 24/8 26/13 33/13
33/20 56/1 59/3 59/20
60/8 63/6 64/2 64/2
64/21 65/8 66/13 66/20
66/24 67/10 67/11
67/17 69/6 69/18 71/6
71/6 71/10 72/5 74/9
74/14 75/7 75/12 79/3
79/11 79/19 81/11
81/22 82/5 82/14 83/18
84/2 84/4 84/22

**7**

**72 [3]** 86/17 86/17
87/11
**7500 [1]** 53/4
**7th [1]** 17/20

**8**

**8th [1]** 10/9

**9**

**9,300 [2]** 63/18 63/20
**950 [1]** 1/16

**A**

**Aaron [2]** 59/12 67/24
**aberrant [6]** 63/23
70/16 70/19 70/22 72/3
72/15
**abide [1]** 86/2
**abiding [1]** 71/4
**ability [1]** 85/22

able [2] 37/23 45/2
about [81] 7/17 9/11
9/12 11/15 11/22 12/9
14/14 18/18 19/10 20/1
20/5 20/10 21/8 22/16
22/17 24/1 24/2 24/3
24/24 25/8 26/9 26/22
26/25 28/5 28/16 29/6
31/19 32/3 35/5 36/15
36/19 37/15 37/16
38/17 38/20 40/15 41/4
41/15 41/25 41/25 42/2
42/4 42/11 42/14 44/21
45/10 45/12 45/25 46/2
46/9 46/20 47/22 48/21
51/11 55/9 57/21 58/19
59/20 59/24 59/25 61/5
61/17 61/20 61/24 64/1
64/19 64/20 66/16
68/24 69/20 71/22
72/19 73/22 73/23
75/11 80/8 81/7 82/13
84/16 85/8 86/9
above [1] 92/5
above-entitled [1]
92/5
absolutely [2] 37/4
39/6
abuse [1] 80/18
accept [2] 14/22 15/4
acceptance [1] 52/24
accepting [5] 9/1
14/24 14/24 60/1 60/2
access [1] 37/21
accompanying [1]
2/18
account [5] 18/5 18/22
19/4 53/15 85/10
accountable [1] 60/16
accounts [1] 65/24
accurate [1] 12/19
achieve [1] 87/16
acknowledge [1] 60/7
acknowledgment [4]
62/14 62/15 62/17
62/19
across [1] 74/15
act [2] 29/25 70/19
acted [1] 21/10
acting [1] 50/16
action [2] 1/3 57/7
actions [14] 25/12
50/15 50/15 52/1 79/19

79/24 80/3 81/20 82/25
83/5 83/10 83/11 83/15
83/23
actively [2] 5/22 56/5
activity [1] 87/6
acts [3] 30/8 31/1
70/21
actual [2] 29/8 62/6
actually [7] 10/2 18/21
27/10 47/2 47/3 62/3
90/18
add [8] 3/11 7/23 28/3
33/6 44/7 46/22 77/5
77/8
added [1] 59/22
adding [1] 19/3
addition [4] 10/19
12/25 18/12 61/19
additional [5] 7/5 7/6
12/18 29/15 53/17
additions [2] 10/14
15/2
address [11] 4/4 9/22
34/10 34/16 34/21
34/23 35/16 35/21 47/3
48/9 54/5
addressed [2] 6/24
9/24
adjustment [1] 32/7
adjustments [1] 30/20
administer [1] 87/19
administration [1]
45/7
admit [2] 34/1 40/10
adopt [2] 15/6 61/13
advisory [1] 15/10
advocates [1] 78/4
afar [1] 19/1
affect [2] 53/19 53/25
affected [1] 61/21
afford [1] 87/25
after [15] 4/3 4/6 18/22
19/1 24/13 25/10 25/12
42/7 42/8 42/14 64/2
65/19 71/6 81/13 87/24
afternoon [9] 2/2 2/9
2/13 2/15 2/19 64/22
71/1 72/1 73/11
afterwards [1] 42/4
again [26] 4/6 8/8 9/3
14/25 20/7 20/25 27/9
27/24 33/10 39/4 40/10
42/23 45/3 50/25 56/8
60/9 60/24 69/13 73/20

74/20 75/6 75/17 76/4
77/24 78/20 83/17
against [3] 30/8 57/1
79/9
agencies [1] 89/10
agent [1] 38/2
aggressive [2] 33/19
63/10
ago [5] 36/14 43/8
62/24 65/23 70/5
agree [8] 4/17 4/23 5/7
5/17 6/10 31/20 45/19
89/24
agreed [4] 9/17 13/14
42/17 84/12
agreement [2] 65/11
68/14
aid [1] 44/2
airplane [1] 18/25
Alabama [2] 2/20 66/4
alive [1] 63/19
all [43] 11/10 12/5 13/7
16/21 23/22 30/22
34/25 36/6 39/25 42/5
42/17 43/21 44/20
44/20 44/22 45/5 45/17
51/13 51/18 51/20
52/14 55/2 55/25 57/15
58/21 61/10 65/24 66/3
67/23 69/5 72/25 80/6
80/11 81/13 81/17
82/14 83/17 84/10
84/15 85/11 87/12 88/9
91/4
allegations [1] 6/8
alleged [1] 6/10
Allen [2] 1/18 2/14
allow [5] 11/7 72/21
80/14 86/24 89/9
allowed [1] 82/2
almost [2] 29/5 61/13
alone [4] 22/19 37/5
50/1 72/24
already [16] 9/24
15/15 16/10 24/25 38/4
44/10 45/18 54/23
66/10 71/5 74/5 75/15
75/15 75/20 75/25
76/13
also [29] 2/18 3/4 6/11
15/2 18/11 18/13 19/2
19/24 20/22 29/24
33/11 34/14 38/20 46/3
47/22 52/10 58/12

although [7] 4/23 5/10
49/25 59/7 68/8 71/22
81/6
altogether [1] 20/21
always [1] 82/4
am [44] 4/12 7/16 8/20
9/1 9/3 14/24 14/24
14/25 15/2 21/24 22/2
23/24 27/22 32/17
35/17 35/18 36/23
38/11 38/17 39/22
40/13 46/20 50/12 51/3
51/5 51/16 51/18 51/25
55/21 63/22 63/23
64/14 70/1 71/14 72/16
73/15 73/24 74/8 74/12
84/14 84/17 85/21 86/9
90/4
ambulance [1] 38/9
amend [2] 13/18 54/15
amended [6] 10/8 15/5
88/21 88/23 89/8 90/7
AMERICA [2] 1/2 2/4
amount [3] 28/17
61/12 76/12
ample [4] 44/23 63/24
64/1 64/1
analysis [1] 77/19
Andrew's [1] 1/13
ankle [2] 10/9 61/24
announced [1] 58/13
anomalous [2] 26/12
27/22
another [18] 15/21
21/1 26/17 26/19 27/10
28/3 28/13 28/20 31/17
31/18 56/15 56/25
68/24 69/4 73/7 77/10
84/5 86/4
answer [4] 28/9 28/10
43/11 86/22
answers [1] 36/25
antagonistic [1] 79/24
anticipated [6] 22/10
23/10 23/20 24/11 49/6
58/9
anticipation [1] 61/7
Antitrust [1] 1/15
any [43] 8/21 9/5 10/10
11/18 12/12 12/15

## A

any... [37]  12/23 16/7 19/23 20/14 22/15 22/18 22/19 23/3 24/19 24/24 33/21 37/9 40/21 41/9 42/12 48/7 53/17 62/2 62/5 62/20 63/14 65/14 66/18 75/5 76/5 76/6 76/10 83/14 84/6 86/6 86/9 86/25 87/1 87/23 88/10 88/14 90/16

anybody [2]  37/2 75/24

anyone [3]  3/11 53/16 90/9

anything [20]  3/11 3/12 13/11 14/5 21/21 33/4 33/6 42/19 43/9 43/19 44/7 46/22 48/6 55/1 67/13 75/6 77/5 77/8 90/11 91/2

anywhere [1]  40/6

aorenberg [1]  1/20

apologies [1]  49/5

apologize [1]  13/4

app [3]  18/12 37/17 37/19

appeal [4]  87/22 87/24 87/25 88/1

APPEARANCES [1]  1/11

appears [1]  4/9

applicable [4]  49/14 49/19 50/5 53/3

application [6]  17/16 17/16 18/7 18/7 18/17 71/7

applied [2]  50/3 72/14

applies [7]  9/5 16/4 49/12 49/22 50/10 50/21 53/21

apply [6]  16/10 49/18 50/12 50/22 52/25 72/8

appreciate [3]  44/1 44/5 89/10

approached [1]  5/9

appropriate [14]  13/9 27/19 34/9 35/5 48/21 48/23 53/16 54/20 55/10 72/2 72/19 78/24 87/20 89/25

approves [1]  86/24

approximately [4]

72/24 46/19 68/18 64/22

AR [6]  20/23 21/24 22/2 22/18 24/11 24/24

AR-15 [2]  20/23 24/24

are [88]  2/23 2/25 4/9 4/13 7/3 9/16 10/14 11/9 12/12 12/24 14/1 14/17 15/9 15/13 16/14 16/17 17/17 20/9 21/22 23/21 25/3 25/19 26/5 26/8 26/14 27/4 27/15 28/11 28/12 28/12 28/15 28/23 28/25 29/9 30/7 31/1 31/7 32/4 32/5 39/16 42/11 43/4 43/14 43/17 47/24 48/3 48/5 49/2 49/7 49/13 53/12 55/3 55/9 57/16 58/24 60/20 60/22 60/22 63/3 67/1 67/3 67/23 68/1 68/2 69/14 70/11 72/14 77/15 81/21 81/25 85/9 85/12 85/16 85/20 85/24 86/1 86/2 86/16 86/17 86/20 87/10 87/13 87/20 87/25 88/10 89/13 89/19 90/16

area [12]  5/25 17/15 30/12 31/4 31/6 31/12 31/15 40/5 40/17 47/16 81/15 89/15

areas [1]  90/2

aren't [3]  10/15 27/2 82/2

argue [1]  59/18

argued [1]  78/8

argues [2]  6/6 8/17

argument [26]  3/22 3/23 3/24 4/14 7/16 8/22 9/12 9/16 10/22 11/3 11/15 12/1 15/11 15/16 16/12 16/14 16/16 23/24 32/2 32/4 32/5 34/23 47/8 48/20 69/19 85/8

argumentative [1]  46/22

arguments [5]  12/10 12/10 18/18 53/15 55/9

armor [1]  58/12

around [9]  20/25 35/3 43/3 58/2 79/19 79/23

arrest [5]  17/10 18/16 75/12 75/12 80/15

arrested [6]  37/2 37/3 65/17 65/19 71/10 87/10

arrive [2]  23/4 84/16

arriving [1]  19/11

articulated [1]  87/13

as [141]

aside [1]  63/8

ask [9]  36/1 67/18 75/18 76/4 76/5 76/6 76/19 76/23 88/9

asked [11]  17/21 20/1 20/5 20/10 25/18 38/5 38/12 67/14 70/9 82/17 86/22

asking [6]  34/19 55/17 63/23 70/1 72/16 89/19

aspect [2]  43/22 76/17

aspects [1]  74/22

assault [2]  29/20 30/1

assaulted [1]  83/12

assertion [1]  25/7

assess [2]  8/20 44/24

assessment [2]  85/20 85/25

assigning [1]  45/8

assist [2]  25/17 71/25

assistance [2]  25/21 88/6

assisting [1]  71/21

associated [1]  66/11

assume [3]  11/1 22/16 90/21

assure [3]  39/10 75/8 75/14

atmosphere [1]  43/3

attack [4]  4/22 5/1 56/1 56/2

attacked [1]  57/9

attempt [3]  22/12 22/13 56/12

attempted [4]  19/4 45/7 56/5 79/21

attempting [4]  25/8 25/10 26/6 51/22

attempts [2]  17/7 31/7

attending [1]  23/11

attention [1]  42/24

August [1]  1/5

aunt [1]  71/12

authorize [1]  89/20

authorized [3]  84/8 86/16 86/20

autographed [1]  58/2

available [1]  88/5

Avenue [3]  1/16 1/19 1/24

avoiding [1]  82/12

aware [13]  3/13 5/11 5/16 5/21 7/16 44/10 55/18 62/10 63/22 65/12 65/22 67/19 67/23

## B

baby [1]  76/7

back [28]  2/20 2/22 6/15 6/22 7/22 8/2 8/5 8/9 20/2 33/9 38/12 40/8 40/19 42/10 48/18 48/25 49/2 56/12 56/17 57/16 57/21 59/13 64/5 72/11 75/21 76/14 77/12 77/15

bad [1]  61/25

Baker [1]  2/6

balance [1]  59/19

Ballou [4]  1/15 2/10 2/11 65/2

Bankruptcy [1]  1/24

Baquero [3]  61/15 82/17 83/16

bare [1]  25/9

barricades [1]  83/14

barriers [5]  5/8 5/20 19/16 19/23 83/14

base [4]  27/1 31/21 45/21 54/9

based [19]  8/18 8/24 17/6 17/10 27/9 55/23 64/8 64/8 70/2 70/10 72/19 77/23 77/25 78/7 78/16 80/11 82/19 84/25 86/8

baseline [4]  49/13 49/20 50/4 50/8

basic [2]  86/3 87/17

basically [7]  12/20 27/21 28/19 32/10 35/2 61/12 67/8

basis [4]  4/19 84/10 84/13 85/24

be [65]  3/13 3/21 4/5 4/12 6/11 6/23 7/8 8/23 10/7 10/23 11/7 11/16

**B**

be... **[53]**  15/14 16/18
19/1 27/6 27/24 27/24
32/8 32/16 32/23 33/14
34/20 34/22 37/9 38/1
38/19 41/11 42/16
43/19 45/2 45/22 47/25
48/25 51/1 51/14 52/4
57/17 60/12 61/1 61/15
62/9 64/24 66/4 66/5
66/7 70/11 72/23 73/16
74/6 75/17 76/12 76/20
76/25 81/13 81/19 82/7
83/15 84/7 85/6 88/23
89/9 90/1 90/5 90/10
**became [1]**  65/21
**because [59]**  15/20
15/24 16/6 17/1 18/4
18/5 18/19 22/22 24/5
25/22 25/24 26/1 27/12
27/23 28/19 28/24
29/22 30/7 31/23 34/8
37/8 40/13 42/13 44/13
44/15 46/15 49/6 49/13
49/21 50/5 50/8 51/19
51/25 52/21 53/4 53/20
54/1 54/2 54/5 54/19
56/3 56/4 58/25 61/24
64/15 65/1 66/7 66/7
68/19 68/20 69/12
69/16 70/6 70/14 72/22
74/19 84/12 84/13
85/21
**become [2]**  65/16 69/8
**becomes [2]**  30/17
88/5
**bedroom [1]**  38/8
**been [36]**  5/9 5/20
10/8 14/8 14/14 18/4
18/6 18/23 19/22 26/13
36/20 37/23 38/4 38/25
39/1 39/1 39/13 42/25
44/10 58/22 63/18
65/20 66/12 67/11 74/5
74/18 75/2 75/9 75/14
75/15 75/19 75/22
76/13 83/2 84/12 87/7
**before [26]**  1/9 3/11
15/11 22/18 23/2 33/7
34/16 35/20 42/19
44/17 54/5 61/19 64/2
71/6 71/10 71/10 75/11
75/12 75/12 79/2 79/10
80/11 80/15 88/25 89/9

908

**begin [2]**  3/11 49/10
**beginning [1]**  2/8
**behalf [2]**  2/14 50/16
**behavior [6]**  63/23
70/16 70/19 70/22 72/3
72/15
**behind [2]**  30/6 69/24
**beholden [1]**  63/9
**being [19]**  9/25 21/1
38/11 40/7 43/1 43/1
43/22 60/16 62/12
66/11 66/16 72/22
74/22 74/25 75/2 75/2
75/16 81/20 82/4
**belabor [1]**  64/14
**belied [1]**  19/16
**believe [14]**  4/5 37/2
37/10 37/19 40/16
43/22 50/19 51/6 52/6
52/17 54/20 58/23
62/23 81/8
**below [3]**  40/18 72/8
72/17
**bench [1]**  44/13
**benefit [2]**  9/9 71/15
**Benet [2]**  1/12 2/9
**benet.kearney [1]**  1/14
**best [6]**  6/8 8/20 37/7
41/17 43/9 76/1
**better [5]**  16/1 32/7
64/5 66/19 75/2
**between [7]**  4/24 34/7
35/12 47/4 47/10 62/7
90/13
**beyond [3]**  5/25 7/19
50/19
**bifurcated [1]**  35/15
**big [1]**  46/5
**biggest [1]**  76/4
**bike [7]**  5/6 5/11 5/21
6/1 43/4 43/5 43/6
**bikes [1]**  43/5
**birthday [4]**  42/6 42/7
42/9 65/23
**bit [4]**  36/16 36/17
45/13 49/5
**bleed [1]**  65/8
**blink [1]**  76/8
**Boasberg [3]**  72/6
72/7 72/7
**bodies [1]**  62/6
**body [2]**  58/12 64/9
**body-worn [1]**  64/9

**bones [1]**  62/6
**Booker [1]**  15/8
**BOP [1]**  90/1
**borrow [1]**  57/4
**both [12]**  2/25 3/8 7/11
14/14 26/14 27/25
37/11 37/14 60/21
66/20 67/11 80/25
**Bowl [1]**  2/19
**Boys [10]**  21/7 22/1
40/20 40/22 40/25 41/1
41/3 43/15 43/16 43/17
**bracelet [1]**  10/9
**brag [1]**  57/21
**breach [1]**  25/8
**bread [2]**  73/9 73/9
**break [3]**  48/23 56/13
62/5
**Brendan [2]**  1/15 2/10
**brendan.ballou [1]**
1/17
**brendan.ballou-kelley
[1]**  1/17
**brief [2]**  18/3 59/6
**briefing [1]**  46/8
**briefs [3]**  14/14 16/8
53/12
**bring [7]**  21/24 22/2
34/1 37/1 38/22 41/12
81/7
**bringing [1]**  24/11
**brought [7]**  6/15 7/14
34/10 36/8 39/5 39/15
45/24
**brush [1]**  21/16
**brush-offs [1]**  21/16
**buddy [1]**  41/16
**building [11]**  25/11
38/14 39/19 42/18
56/13 56/18 57/11 62/7
62/19 68/9 68/11
**bump [1]**  47/16
**Bureau [4]**  70/3 70/5
85/13 88/25

**C**

**calculate [3]**  15/10
52/20 54/24
**calculated [2]**  32/9
77/25
**calculates [1]**  32/24
**calculation [27]**  3/24
4/2 9/2 15/7 15/12 17/2
29/18 48/3 48/18 49/9

53/2 53/6 53/10 53/15
53/19 53/20 54/15
54/18 54/19 77/23
77/25 78/4 78/6 78/8
78/15 78/17 78/22
**calculations [3]**  48/20
50/24 78/21
**calibrated [1]**  80/25
**call [5]**  4/25 48/15 76/5
77/12 85/1
**called [3]**  17/15 38/5
59/8
**calling [1]**  63/22
**came [3]**  6/11 66/3
71/16
**cameras [1]**  64/9
**can [25]**  10/23 11/15
12/9 16/8 21/25 28/5
31/11 37/13 39/18
40/14 40/25 42/23
43/21 44/4 54/7 66/9
66/23 67/13 70/1 73/15
74/1 74/2 82/3 85/6
89/4
**can't [6]**  19/1 31/4
32/11 33/22 41/6 76/10
**canister [1]**  6/19
**cannot [1]**  34/1
**capable [1]**  35/4
**Capitol [61]**  4/24 5/7
5/24 6/4 7/12 13/16
19/12 20/2 20/17 22/9
22/20 23/4 23/16 23/22
24/4 24/7 24/12 39/16
40/4 41/10 41/22 41/23
41/24 42/2 42/5 42/11
42/13 42/16 42/18
47/11 56/22 57/3 57/11
57/16 57/22 58/5 58/13
58/17 59/5 59/11 61/9
62/1 62/3 62/7 62/11
62/13 62/19 63/7 64/18
70/20 71/20 79/4 79/7
79/20 79/22 80/1 81/10
81/14 83/1 83/7 83/13
**car [3]**  6/18 38/12
38/16
**care [6]**  51/11 66/2
76/20 76/21 76/25
82/13
**career [1]**  65/15
**CARL [1]**  1/9
**carried [2]**  58/1 58/5
**carry [4]**  21/6 22/1

# C

carry... [2] 40/25 74/11
case [47] 2/3 6/10 11/22 13/10 14/15 21/6 21/25 24/5 24/9 28/25 31/13 40/24 45/20 46/4 51/4 51/10 51/18 54/12 60/19 61/21 63/16 67/24 67/25 68/4 68/8 68/12 68/23 68/24 69/3 69/20 69/20 69/23 69/24 69/24 71/11 72/7 72/9 72/9 72/10 72/15 75/14 79/13 80/13 80/16 80/24 82/18 82/19
cases [20] 26/14 36/21 56/1 59/1 65/2 65/3 65/4 66/13 67/24 69/1 69/15 72/19 74/9 82/14 82/15 82/16 82/23 82/24 84/9 85/6
Categories [1] 66/15
Category [1] 53/1
caught [1] 43/9
CCTV [1] 64/8
celebration [2] 8/1 8/9
center [1] 57/6
certain [8] 4/20 15/11 50/18 51/9 83/16 83/22 83/24 88/2
certainly [7] 5/11 5/21 6/13 28/24 51/5 61/12 89/4
certify [2] 79/5 92/4
chained [1] 43/5
challenge [1] 88/3
change [2] 54/18 67/9
chants [2] 20/11 57/13
chaos [2] 58/10 81/16
Chappell [4] 41/16 41/17 63/25 71/13
characteristics [2] 80/5 80/20
charge [2] 16/1 83/3
charged [2] 29/25 41/7
charges [5] 50/24 60/21 76/18 83/3 83/20
check [2] 39/7 39/10
checking [1] 9/18
cheered [1] 57/9
Chief [1] 72/6
child [1] 65/23
child's [1] 65/23

choose [1] 87/23
CHRISTOPHER [2] 1/5 2/4
circle [1] 33/9
circumstance [1] 52/13
circumstances [12] 15/5 21/22 31/9 50/18 51/7 51/18 51/20 52/17 58/25 79/16 81/9 85/8
circumstantial [1] 6/9
citations [1] 20/12
cited [2] 60/19 68/5
cites [1] 59/12
civil [21] 15/22 16/4 26/18 26/23 29/3 29/4 29/20 29/20 29/24 30/12 30/16 31/3 31/6 31/13 31/23 31/25 48/4 50/3 52/1 52/2 52/8
claim [1] 88/5
claimed [1] 20/7
claiming [2] 21/20 21/21
cleanly [1] 48/5
clear [8] 3/21 7/24 51/1 57/13 57/19 69/3 69/23 81/15
clearly [6] 5/24 8/7 31/11 33/25 40/14 71/23
client [1] 35/9
climbing [1] 57/10
close [2] 49/7 64/18
closer [2] 57/11 57/11
closest [1] 39/20 49/18 58/23 68/7 68/23
clothes [1] 38/8
cloud [1] 18/13
co [2] 4/25 6/6
co-defendants [2] 4/25 6/6
code [7] 37/14 37/18 37/19 37/24 87/14 87/21 88/2
codefendants [1] 4/21
codes [2] 37/11 37/25
colleagues [1] 72/13
collect [1] 48/16
collection [1] 86/11
collective [1] 56/11
colloquy [1] 72/18
COLUMBIA [1] 1/1
combination [1] 50/14

combined [2] 25/8 52/20
come [13] 2/7 17/2 23/23 31/4 35/24 44/2 48/18 64/11 64/11 74/15 76/2 77/11 79/7
comes [5] 46/6 69/24 73/11 75/24 76/22
comfortable [1] 46/21
coming [1] 76/14
commencement [1] 70/12
comments [1] 59/25
commit [7] 15/21 26/23 31/25 50/2 52/2 70/21 86/4
committed [3] 15/20 50/2 85/13
committing [2] 31/16 31/18
common [2] 51/25 52/13
communicate [2] 87/5 87/8
communicated [1] 5/25
community [3] 66/18 78/11 80/19
company [1] 73/9
comparator [3] 61/3 66/23 82/15
compare [1] 67/10
compared [2] 83/2 83/19
completely [3] 29/7 67/25 74/18
complicated [1] 49/7
comply [1] 86/13
component [1] 12/9
concealment [1] 77/7
concept [2] 28/10 30/6
concern [3] 28/5 28/7 60/5
concerned [1] 46/12
concerning [4] 34/11 57/22 88/20 88/22
conclude [2] 45/2 50/1
concluded [6] 15/17 16/3 78/20 83/22 85/23 91/6
concludes [1] 70/16
conclusion [1] 51/4
conclusions [2] 9/1 15/1

concurrent [2] 85/15 85/18
conditions [7] 70/10 80/13 86/2 86/13 87/1 87/12 87/17
conduct [54] 4/16 4/18 15/23 16/1 16/5 22/6 26/16 27/9 28/13 28/19 30/23 34/24 47/13 56/8 57/2 58/21 58/23 59/3 59/20 60/7 60/9 60/12 60/12 60/23 61/3 66/24 67/2 67/4 67/10 67/16 67/19 68/12 68/15 68/17 68/17 69/6 69/6 69/10 69/21 72/20 79/18 81/1 81/11 83/4 83/17 83/24 84/1 84/2 84/2 84/17 84/21 84/24 85/5 86/3
confinement [1] 70/10
Congress [6] 51/21 51/21 51/23 52/16 62/18 79/5
connection [5] 10/20 11/12 35/3 58/8 83/10
consequences [1] 63/2
consider [11] 3/18 35/2 63/23 69/9 70/9 71/8 78/24 78/25 82/15 82/18 84/5
consideration [6] 5/4 5/13 75/19 76/6 76/16 76/24
considered [3] 10/23 11/8 52/4
considering [5] 6/20 13/9 32/23 55/2 81/17
constant [1] 66/23
constantly [1] 57/5
constituted [2] 27/9 83/23
constitutes [1] 28/19
Constitution [2] 1/16 1/24
contact [4] 16/3 16/6 49/21 50/9
contain [1] 13/15
contained [3] 12/25 14/22 34/14
contains [2] 8/18 13/20
contemplating [1]

**C**

contemplating... [1]
32/15

contents [1] 19/1

context [2] 59/15
66/20

continue [1] 74/20

continued [1] 65/18

continues [3] 60/12
60/15 64/24

continuing [1] 60/3

continuously [2] 10/8
65/5

contrast [1] 81/4

contributed [4] 62/13
62/20 63/4 74/25

controlled [2] 86/5
86/7

conversation [1]
47/21

convicted [5] 2/24 6/5
6/13 58/4 87/7

conviction [3] 29/8
54/11 88/3

convictions [2] 80/17
81/3

convinced [1] 84/13

cooperate [1] 86/11

coordinated [2] 4/22
5/1

cops [2] 33/19 56/16

copying [1] 20/3

correct [16] 10/1 10/17
10/24 14/3 15/17 15/20
15/24 25/1 30/11 31/7
31/19 49/11 78/21
78/22 90/23 92/4

correctly [3] 9/11
15/10 34/12

corresponding [1]
49/17

cost [3] 87/25 88/1
88/8

could [29] 11/17 22/12
27/16 29/24 34/21 35/8
37/4 37/8 37/12 37/23
40/14 43/9 43/10 57/17
59/18 66/5 68/23 70/23
71/23 74/16 74/20
74/23 75/19 76/20
76/25 81/13 83/7 89/8
90/3

couldn't [4] 20/20
58/18 66/7 76/14

counsel [7] 2/4 4/3
11/5 15/3 67/23 88/6
91/2

count [53] 15/19 15/19
15/23 16/4 16/5 16/5
16/7 16/24 26/15 26/17
26/18 26/19 26/20 27/9
27/10 27/17 27/18 28/1
28/1 28/14 28/18 28/20
29/6 29/8 30/7 32/12
47/7 47/9 49/11 49/12
49/14 49/15 49/16
49/23 49/24 50/1 50/2
50/5 50/6 50/7 50/10
52/3 53/7 53/20 53/22
54/4 54/5 54/16 54/20
58/4 59/15 85/15 85/17

counted [2] 48/1 48/3

counting [2] 27/25
81/23

country [2] 56/2 57/17

counts [25] 2/24 15/18
16/13 27/2 27/2 28/5
29/11 45/16 47/4 47/16
51/13 51/15 52/14
52/18 52/22 53/4 53/6
53/8 54/6 54/21 54/22
85/16 85/18 90/16
90/19

County [1] 73/6

couple [2] 3/23 4/13

course [15] 9/24 14/1
30/23 46/11 49/10 52/3
56/9 69/6 74/19 77/23
78/23 80/22 81/6 82/20
90/9

court [86] 1/1 1/23 4/4
9/9 9/10 9/11 9/22 22/7
32/15 34/9 34/12 34/16
34/17 34/17 34/19
34/21 35/14 35/21
35/22 36/21 36/24
40/11 44/9 44/12 44/12
44/23 45/2 45/5 45/15
45/17 45/20 46/1 46/6
46/7 46/10 46/16 49/18
55/15 58/15 61/13
63/22 63/23 64/1 64/7
64/13 64/15 64/23
64/25 65/3 65/6 65/7
65/9 65/10 65/12 65/22
65/25 66/3 66/9 67/22
68/24 69/8 70/4 70/9
70/15 70/18 71/5 71/8

72/4 72/16 72/18 73/5
73/10 73/20 74/7 77/3
82/15 82/17 82/23
83/25 86/21 88/7 92/3

Court's [4] 15/8 30/5
34/5 89/19

courthouse [1] 75/10

courtroom [1] 74/15

Courts [1] 1/24

cousin [1] 2/19

covered [2] 9/6 41/14

COVID [1] 70/6

CR [1] 69/25

crazy [2] 40/9 42/10

CRC [1] 1/23

create [2] 66/21 89/2

creates [1] 60/8

credibility [2] 8/21
44/24

credible [3] 20/21
21/18 21/22

credit [2] 71/18 71/19

crime [2] 62/22 86/5

crimes [2] 63/3 83/1

criminal [15] 1/3 2/3
14/21 52/25 53/1 59/1
59/17 64/3 66/15 68/22
70/21 80/17 81/1 84/7
87/6

critical [1] 82/1

cross [6] 20/10 25/9
28/12 28/18 30/15
47/15

cross-examination [2]
20/10 25/9

cross-reference [2]
30/15 47/15

cross-referenced [1]
28/18

cross-references [1]
28/12

crowd [4] 20/4 39/11
42/3 79/23

culpability [2] 26/7
83/1

current [1] 85/8

currently [1] 88/4

custody [1] 85/13

**D**

D.C [8] 7/10 12/21 41/2
41/6 58/10 74/21 81/4
81/7

dad [1] 20/25

danger [2] 62/8 62/10

dangerous [1] 83/13

dare [1] 64/22

data [1] 18/13

DATE [1] 92/9

day [41] 17/15 18/16
19/10 20/3 20/11 20/16
21/5 23/2 24/8 25/13
37/8 39/8 44/4 44/17
56/22 57/5 58/1 58/10
59/14 59/20 62/13
63/20 63/20 64/10
64/17 64/19 64/22 65/1
65/5 67/19 70/18 70/21
71/21 73/13 74/13 75/4
79/15 82/20 83/4 83/18
84/20

days [5] 63/18 63/20
70/5 75/11 87/24

DC [3] 1/4 1/16 1/25

dcd.uscourts.gov [1]
1/25

de [2] 41/12 57/5

de-escalate [2] 41/12
57/5

deal [1] 76/2

dealing [1] 81/21

deceive [1] 40/11

December [1] 44/22

decided [4] 15/15
27/21 51/5 53/14

decides [1] 46/16

deciding [1] 78/24

decision [2] 4/19 15/8

decisions [1] 89/3

deduction [1] 33/2

deeper [1] 67/23

defend [1] 65/2

defendant [14] 1/6
1/18 2/4 4/10 5/15 8/15
12/20 21/10 59/16 61/3
62/21 63/5 69/17 71/4

defendant's [3] 17/7
33/12 67/16

defendants [8] 4/25
6/6 58/21 58/24 66/13
69/13 83/21 84/4

defendants' [2] 59/24
69/10

defending [1] 56/21

defense [2] 30/16 89/5

defies [3] 18/24 19/2
22/2

**D**

delayed [1] 46/13
delete [4] 14/4 17/7
18/17 19/4
deleted [1] 18/6
deletion [1] 17/12
delight [1] 57/24
deliver [1] 73/9
democracy [1] 82/1
demonstrate [1] 60/5
denied [1] 19/24
denies [1] 11/23
Dennis [1] 72/9
department [4] 38/4
39/2 47/11 73/7
Depending [2] 3/24
32/19
depends [1] 29/1
deployment [1] 62/11
deprivation [1] 87/15
described [2] 27/5
83/4
desire [1] 58/13
desperately [1] 65/15
despite [1] 81/15
details [1] 88/10
detention [1] 78/10
deter [2] 80/25 82/7
determination [1] 35/3
determinations [1]
8/21
determinative [1]
24/15
determine [3] 10/23
11/16 49/11
determined [2] 14/23
85/22
deterred [1] 81/19
deterrence [3] 80/22
82/8 82/9
developed [1] 12/19
deviation [1] 71/3
devoted [1] 65/25
did [34] 6/14 7/18
13/13 14/13 18/10 34/2
36/20 39/8 39/16 43/25
44/16 45/6 51/2 56/6
57/5 57/12 60/3 60/14
60/16 60/17 62/2 62/3
63/21 64/23 67/9 67/10
68/9 68/10 69/17 70/18
71/1 72/7 81/8 83/22
didn't [30] 18/7 19/23
20/19 25/20 33/21

37/11 37/14 38/13
38/13 38/22 38/23 39/4
39/25 41/7 41/9 41/25
42/5 42/12 43/11 43/12
43/24 43/24 44/1 75/25
83/13 83/14
die [1] 42/9
difference [3] 46/5
68/8 68/11
different [15] 16/17
37/25 37/25 47/24 48/4
58/24 58/25 59/15
60/22 60/22 60/24
62/23 66/15 69/10
69/13
dinner [1] 42/7
direct [1] 6/7
directed [1] 86/11
directly [2] 48/20
79/24
directs [1] 49/18
disagreements [1]
55/3
discounted [1] 66/18
discretionary [1]
86/13
discuss [2] 14/10
29/19
discussed [14] 15/2
24/25 27/24 44/10 46/2
51/24 58/8 58/14 58/15
71/5 78/3 82/11 82/21
89/18
discussing [2] 14/9
90/17
discussion [4] 35/12
77/11 81/7 90/13
dishonest [1] 43/10
dismantled [1] 5/9
dismiss [1] 90/19
disorder [20] 15/22
16/4 26/18 26/24 29/4
29/4 29/20 29/20 29/25
30/12 30/16 31/3 31/6
31/13 31/23 32/1 48/5
50/3 52/2 52/8
disorderly [2] 15/23
16/5
disorders [1] 52/1
disparities [2] 66/22
82/12
dispute [1] 47/10
disputes [1] 4/11

disruptive [1] 15/23
distinguishes [1] 84/3
district [6] 1/1 1/1 1/9
1/24 86/16 86/20
dives [1] 67/24
Division [1] 1/15
DNA [1] 86/11
do [44] 4/17 9/2 9/5
12/7 15/15 17/21 26/21
27/20 27/21 29/13
29/14 35/8 35/15 35/16
35/18 37/12 43/21 44/3
44/3 46/16 48/14 48/18
48/18 48/19 51/6 52/10
52/17 58/4 58/6 62/5
65/14 67/13 67/18
74/20 74/22 75/4 76/18
77/21 84/2 85/22 87/23
88/20 89/2 89/6
document [1] 15/4
documents [2] 3/12
50/17
does [15] 3/11 9/22
13/15 18/12 21/3 21/9
30/23 33/19 47/15
49/17 53/16 54/5 58/23
73/19 85/7
doesn't [15] 27/17
28/6 28/11 31/10 32/11
33/23 40/16 43/17 47/7
52/25 53/19 53/25 54/2
54/18 67/9
doing [11] 25/18 51/25
54/6 58/18 58/20 65/7
65/9 65/10 67/23 85/24
87/5
DOJ [2] 1/12 1/15
DOJ-Antitrust [1] 1/15
DOJ-USAO [1] 1/12
don't [48] 13/21 16/15
17/19 17/20 17/20
17/23 21/19 21/20 23/9
28/24 29/11 31/14 32/3
32/18 35/24 36/10
36/23 36/24 37/2 37/5
37/22 37/24 38/21
39/16 40/21 40/25 41/5
42/9 43/7 43/10 43/11
43/16 44/1 44/3 55/16
58/4 59/9 60/5 60/7
61/2 61/12 66/21 67/13
74/4 74/15 74/17 88/9
89/23
done [10] 3/5 19/21

25/23 26/21 31/25 48/22
57/14 61/9 62/12 77/2
DOOLIN [128]
Doolin's [36] 4/17 4/18
8/15 8/20 8/24 18/16
18/19 19/19 19/21
20/18 20/24 21/3 21/4
21/5 21/21 22/9 25/7
47/13 48/9 50/14 58/8
58/23 61/7 67/17 67/20
68/15 68/17 69/20
71/19 80/3 80/5 80/7
80/19 82/25 84/17
84/21
door [13] 38/8 38/10
39/17 39/20 39/20 40/2
40/3 40/5 40/5 40/6
40/15 40/15 40/17
double [1] 27/25
doubt [1] 7/19
dovetails [1] 18/18
down [7] 23/24 41/22
42/16 42/18 42/20 43/4
83/14
downward [2] 72/2
78/9
draw [1] 32/22
drive [4] 26/15 27/12
30/5 54/22
driving [1] 56/11
drug [2] 86/9 86/10
due [1] 80/16
dumb [2] 43/2 43/2
duration [2] 13/15
70/23
during [2] 70/25 82/20
dust [1] 44/21
dust-up [1] 44/21

**E**

each [6] 33/1 48/2 48/3
49/11 50/23 74/10
eagerness [1] 61/8
earlier [7] 20/16 51/24
57/5 78/3 82/11 83/22
84/19
early [1] 73/11
earnestly [1] 65/15
echoed [1] 39/11
effectively [3] 29/16
29/17 30/16
effort [2] 4/22 5/1
efforts [1] 79/10
eight [2] 44/19 64/17

**E**

**either [6]** 11/6 14/24 20/19 34/23 35/18 90/4
**election [2]** 79/6 82/3
**electoral [1]** 81/24
**elements [1]** 16/7
**eliminates [2]** 29/7 30/24
**eliminating [1]** 29/18
**else [10]** 9/18 13/11 14/6 33/4 37/3 55/1 68/23 90/9 90/11 91/2
**elsewhere [1]** 86/25
**email [1]** 90/3
**embarrassed [1]** 61/24
**emotional [1]** 73/3
**employ [1]** 83/13
**employed [2]** 72/14 80/10
**employer [2]** 71/13 80/12
**employment [2]** 71/9 87/4
**EMT [6]** 41/18 62/9 65/16 71/10 71/25 80/16
**encompassed [1]** 48/2
**encroaching [1]** 5/23
**end [6]** 15/3 35/6 59/25 60/11 85/3 85/14
**enforcement [11]** 4/22 5/1 51/21 52/14 56/6 66/14 79/9 79/17 79/25 83/6 87/10
**engage [4]** 31/12 52/14 79/11 83/22
**engaged [12]** 4/21 20/10 52/8 59/6 65/20 65/21 67/1 67/3 79/9 79/10 84/24 87/6
**engaging [8]** 31/6 31/13 57/2 57/14 60/9 80/25 81/11 81/19
**enhancement [20]** 8/23 9/4 9/12 15/13 16/4 16/11 17/6 28/13 29/2 31/14 34/14 34/25 35/21 45/8 49/22 50/9 50/12 50/21 50/23 84/25
**enhancements [3]** 26/14 49/14 50/5
**enjoying [1]** 57/20
**enough [6]** 14/10 14/13 27/7 33/3 33/15 36/20
**ensure [3]** 66/21 80/22 80/24
**enter [3]** 31/5 31/11 83/13
**entered [1]** 79/4
**entering [2]** 15/19 16/5
**enthusiasm [1]** 57/12
**entire [3]** 51/3 82/21 85/11
**entirely [2]** 62/23 69/12
**entirety [1]** 6/3
**entitled [1]** 92/5
**entity [3]** 18/11 47/12 47/24
**entrance [3]** 25/19 79/22 79/25
**entry [5]** 5/16 56/13 68/19 68/20 87/24
**environment [1]** 65/13
**eruption [1]** 23/12
**escalate [3]** 41/12 41/13 57/5
**escape [2]** 21/19 21/20
**escapes [1]** 72/10
**especially [2]** 16/14 82/5
**essentially [1]** 31/24
**establish [4]** 6/15 7/18 86/3 87/17
**established [4]** 17/13 50/21 52/9 72/17
**evaluate [1]** 44/24
**even [11]** 5/20 25/15 39/1 39/22 40/1 40/20 45/24 57/2 69/5 69/16 90/5
**evening [2]** 18/15 73/13
**event [4]** 23/11 23/15 29/19 36/13
**events [2]** 20/18 79/2
**every [5]** 56/4 65/1 65/5 79/13 79/14
**everybody's [1]** 53/11
**everyday [1]** 73/3
**everyone [4]** 2/22 7/14 15/9 69/8
**everything [11]** 20/18 29/25 38/1 44/4 51/6 62/12 65/8 67/8 74/19
**evidence [24]** 6/7 6/17 7/24 8/19 17/12 17/13 18/14 22/8 22/15 22/18 23/3 24/1 24/2 24/21 50/20 52/6 64/8 65/1 80/11 81/8 81/15 82/19 85/1 85/5
**evidenced [1]** 71/9
**exactly [3]** 30/14 41/5 69/3
**examination [2]** 20/10 25/9
**example [8]** 21/24 25/7 27/16 30/12 31/10 31/11 70/19 82/18
**examples [3]** 20/9 25/4 26/9
**exceedingly [1]** 82/6
**except [2]** 14/22 29/25
**exceptional [2]** 64/12 65/7 65/24
**exchange [3]** 22/18 22/22 24/24
**exchanging [1]** 22/25
**excise [2]** 13/14 13/18
**excited [1]** 58/19
**excitement [1]** 63/7
**excluded [1]** 28/12
**exclusive [1]** 26/6
**excuse [1]** 50/19
**excused [1]** 87/4
**exhibits [3]** 3/8 3/9 18/1
**exist [1]** 40/16
**exists [1]** 10/16
**expectations [2]** 86/3 87/17
**expected [1]** 22/12
**expense [1]** 66/8
**expenses [4]** 10/1 10/19 11/11 66/11
**experienced [1]** 75/25
**explained [1]** 5/19
**explanation [8]** 18/24 20/25 21/4 22/1 24/13 25/10 25/12 25/14
**explanations [1]** 21/22
**explicitly [1]** 5/8
**express [1]** 79/8
**expressed [1]** 63/2
**extent [4]** 8/25 11/8 64/16 84/3
**extreme [1]** 73/18
**eye [1]** 76/9

**F**

**fabrication [1]** 25/25
**faced [1]** 83/20
**facilities [1]** 70/7
**facility [2]** 90/2 90/3
**fact [26]** 5/19 6/8 6/17 8/7 8/10 10/11 10/13 11/9 12/8 12/24 20/13 24/13 25/10 25/12 28/2 30/7 31/25 34/1 34/2 36/9 40/21 47/23 67/9 69/5 73/6 78/14
**fact-finding [1]** 12/8
**factfinder [1]** 8/20
**factor [7]** 33/11 38/24 59/23 66/20 75/1 78/23 82/11
**factors [9]** 28/21 55/24 61/6 61/10 68/22 77/19 78/25 81/17 87/14
**facts [3]** 7/2 12/19 68/14
**factual [9]** 3/18 3/19 4/10 8/21 9/7 12/13 12/16 14/22 15/4
**factually [1]** 68/8
**fair [6]** 13/17 24/9 24/25 28/16 33/3 78/13
**fairness [1]** 82/3
**fall [2]** 8/14 47/7
**falls [2]** 53/1 55/19
**false [10]** 8/15 17/11 19/5 19/14 21/15 22/4 22/13 24/20 25/4 34/2
**falsehoods [1]** 63/9
**falsely [5]** 18/5 20/22 21/13 22/17 24/20
**falsity [2]** 24/10 24/12
**family [21]** 61/22 65/19 66/1 66/2 66/5 72/21 72/22 72/25 72/25 73/14 73/15 73/17 73/18 75/8 75/9 76/1 76/17 76/21 76/24 80/18 85/9
**far [7]** 16/8 19/3 19/21 43/23 56/22 77/3 83/3
**fast [1]** 76/12
**father [8]** 20/23 23/1 40/19 40/22 43/15 43/16 65/25 66/17
**father's [3]** 21/3 21/6

# F

**father's...** [1] 21/25
**favor** [3] 80/3 80/20 82/9
**favorable** [1] 24/21
**FBI** [24] 7/9 17/9 17/21 17/24 18/6 18/6 18/9 18/11 18/23 18/25 25/15 25/17 33/13 33/21 37/2 37/3 37/4 37/10 37/10 37/13 37/16 38/2 38/9 56/14
**federal** [3] 86/4 86/15 86/19
**feel** [5] 38/23 42/22 46/20 60/15 74/22
**feels** [4] 32/24 60/14 60/15 60/16
**fees** [2] 10/21 11/13
**fellow** [1] 62/17
**felony** [5] 15/21 31/17 31/19 50/2 87/7
**fences** [3] 19/19 19/20 19/22
**fencing** [1] 5/6
**few** [2] 36/14 40/8
**field** [1] 38/11
**figure** [4] 37/12 37/23 39/18 76/22
**file** [3] 87/23 88/1 88/7
**files** [1] 18/17
**filmed** [2] 57/8 57/13
**filming** [1] 57/20
**final** [2] 4/1 86/14
**financial** [2] 72/23 73/4
**find** [7] 8/6 24/6 25/11 32/15 32/16 68/23 87/12
**finding** [1] 12/8
**findings** [4] 3/19 14/22 15/4 85/11
**fine** [10] 10/21 10/24 11/13 11/17 53/4 76/21 78/1 78/11 78/19 85/21
**fire** [4] 38/4 39/2 41/18 73/7
**firearm** [1] 81/7
**fired** [1] 73/6
**firefighter** [4] 65/16 71/10 71/25 80/15
**firefighter/EMT** [1] 71/10
**FIRM** [1] 1/18

**first** [22] 9/3 9/14 15/17 16/10 16/24 17/3 17/6 17/12 25/14 37/2 38/3 39/19 41/11 45/15 55/25 70/2 74/21 79/1 85/4 86/20 87/9 88/9
**fit** [1] 16/1
**five** [2] 56/9 77/12
**Fl** [1] 1/19
**flat** [1] 20/13
**floor** [1] 61/15
**floors** [1] 39/16
**Florida** [10] 6/5 6/16 6/22 7/22 8/3 8/5 8/9 11/11 52/11 89/15
**fly** [2] 39/6 75/23
**focus** [2] 18/7 59/2
**focuses** [1] 69/5
**focusing** [1] 47/4
**folder** [2] 18/22 38/16
**folks** [1] 60/5
**followed** [1] 78/18
**following** [1] 2/24
**foolish** [1] 63/21
**force** [1] 56/11
**foregoing** [1] 92/4
**forget** [1] 36/12
**forgot** [2] 18/20 72/5
**form** [1] 4/19
**forth** [3] 70/8 71/15 87/14
**forward** [2] 2/7 38/1
**found** [5] 5/8 17/25 44/21 56/24 67/24
**four** [3] 2/24 28/16 52/14
**frames** [1] 13/20
**frankly** [1] 48/2
**friends** [4] 20/16 41/17 57/21 61/22
**front** [8] 5/11 5/12 5/22 37/17 56/11 57/6 59/7 71/20
**full** [2] 11/14 87/3
**fully** [3] 30/9 59/25 60/10
**fun** [1] 57/20
**function** [2] 51/22 52/16
**functions** [1] 18/16
**funds** [6] 9/25 10/19 10/22 11/4 11/10 66/10
**further** [7] 5/23 39/22 40/12 40/20 46/8 85/16

# G

**gain** [1] 56/13
**garden** [1] 75/10
**gave** [4] 37/7 37/10 37/14 37/19
**general** [9] 13/22 19/10 27/14 28/4 28/7 47/6 60/23 82/8 90/4
**generally** [4] 6/11 12/11 23/15 27/23
**gentleman** [1] 66/3
**geographic** [1] 90/2
**get** [16] 12/9 21/19 21/20 25/19 25/20 25/23 29/2 31/14 33/11 38/18 39/17 40/23 43/9 56/14 56/17 58/18
**gets** [5] 31/22 41/19 73/8 73/14 85/1
**getting** [6] 57/10 64/6 66/11 75/21 86/21 87/9
**girl** [1] 39/13
**give** [3] 32/10 42/17 43/10
**given** [5] 21/22 32/25 46/1 57/24 82/23
**gives** [1] 61/24
**glaring** [1] 25/22
**glee** [1] 57/24
**gloss** [1] 26/6
**go** [17] 3/21 4/1 9/2 22/20 23/22 38/8 39/8 42/17 50/24 58/17 59/13 68/9 70/20 71/1 72/16 74/4 75/24
**goal** [1] 79/24
**goes** [3] 27/20 76/12 90/8
**GoFundMe** [1] 66/8
**going** [63] 4/11 4/12 7/23 9/11 14/4 20/16 20/24 21/5 21/8 21/24 22/2 22/4 22/9 23/19 23/24 32/4 32/5 32/17 38/7 38/15 39/3 39/25 40/9 40/18 41/2 41/4 41/22 41/23 42/2 42/4 42/5 42/6 42/6 42/11 42/13 42/15 42/20 42/24 48/14 48/17 50/12 50/24 51/16 51/18 55/15 55/21

**89/12**

**gone** [2] 38/25 74/21
**good** [15] 2/2 2/9 2/13 2/15 8/10 19/21 36/18 39/23 66/16 66/16 66/17 66/17 66/17 71/8
**goofing** [1] 20/25
**gosh** [1] 40/9
**got** [3] 19/13 73/7 88/10
**gotten** [2] 20/6 74/24
**government** [37] 2/8 3/8 3/14 6/10 6/14 6/24 7/18 11/21 15/3 16/19 18/1 20/1 20/5 22/8 28/6 32/24 34/24 46/4 47/10 50/20 52/4 53/11 55/1 57/15 58/23 64/7 65/1 66/8 77/22 78/4 82/14 82/16 83/9 84/8 84/18 88/14 90/19
**government's** [15] 7/5 8/18 8/19 11/20 12/16 12/25 13/11 17/5 21/9 24/23 27/4 54/8 61/6 67/16 89/21
**GPS** [1] 10/8
**granted** [1] 90/25
**granting** [1] 90/22
**grappled** [1] 62/22
**grappling** [2] 60/3 61/2
**grasp** [1] 41/24
**gravity** [1] 62/22
**great** [1] 57/12
**greater** [2] 60/8 87/15
**grew** [1] 65/12
**ground** [1] 19/20
**grounds** [11] 5/10 5/16 7/12 13/16 57/3 58/5 59/6 59/11 70/10 79/4 81/14
**group** [27] 7/10 12/21 16/13 16/16 27/7 27/19 27/21 28/1 29/21 30/1 32/3 32/4 32/5 42/13 45/22 46/10 51/12 51/14 51/19 52/5 52/12 52/21 52/22 54/3 54/20

# G

**group... [2]** 58/12 59/5
**grouped [4]** 27/4 28/1 28/2 51/14
**grouping [18]** 16/17 26/9 27/11 28/15 28/16 28/22 30/6 30/22 32/11 45/12 46/9 46/21 47/3 47/4 49/8 51/25 54/1 54/16
**groups [8]** 45/20 46/3 46/4 47/22 47/25 52/18 52/19 54/5
**grown [1]** 39/14
**grueling [1]** 73/8
**guess [7]** 7/1 9/15 34/19 35/15 45/14 46/1 70/23
**guidance [2]** 34/20 70/15
**guideline [21]** 15/17 15/20 15/24 15/25 16/2 21/11 49/12 49/13 49/16 49/18 49/19 49/19 49/24 49/25 50/1 50/3 50/7 50/8 53/5 53/6 54/10
**guidelines [50]** 3/24 4/2 9/2 9/20 9/21 12/10 15/7 15/9 15/12 16/19 46/6 47/17 48/18 48/20 49/6 49/9 49/10 53/2 53/3 53/9 53/10 53/14 54/15 54/18 54/19 54/25 55/20 55/22 70/14 72/9 72/17 77/23 77/24 77/25 78/4 78/6 78/7 78/14 78/16 78/21 78/22 80/4 82/10 85/2 85/4 85/15
**guilty [2]** 59/15 67/6
**gun [3]** 40/24 41/10 41/12
**guns [4]** 41/5 41/6 41/7 41/8

# H

**had [74]** 5/8 5/20 6/13 6/21 8/2 8/9 12/17 13/14 14/10 17/8 17/14 18/4 18/6 18/23 19/19 19/22 20/7 20/14 20/15 21/17 22/19 23/11
36/10 36/22 37/21 38/4 38/25 38/25 39/1 39/1 39/3 39/13 39/20 40/8 41/10 44/18 44/20 44/21 44/23 45/25 49/6 52/9 52/10 52/11 57/14 58/6 60/25 65/15 65/22 66/12 66/13 68/21 70/19 71/15 71/21 72/6 72/18 74/9 74/18 75/2 75/7 75/8 75/9 75/9 75/9 75/14 75/15 75/15 75/20 77/11 77/24 79/14 80/1 80/13
**hadn't [1]** 46/9
**half [7]** 21/17 36/10 36/11 36/14 36/15 36/22 62/24
**Hammer [2]** 82/17 83/16
**hand [5]** 18/24 59/16 74/24 82/8 83/12
**handcuffed [1]** 38/12
**handled [1]** 69/1
**happen [6]** 22/12 31/10 38/13 38/23 43/24 44/1
**happened [13]** 5/1 21/16 36/19 36/21 41/5 44/4 52/7 52/11 64/21 69/16 69/17 70/16 74/13
**happening [1]** 57/25
**happy [5]** 25/15 34/22 35/18 73/24 90/4
**hard [4]** 34/8 73/5 75/1 80/15
**hardship [2]** 72/23 73/18
**harm [4]** 51/14 51/16 80/1 83/8
**harms [3]** 48/2 62/20 63/4
**harsher [1]** 70/11
**has [48]** 6/10 10/8 19/6 26/12 27/14 27/23 29/4 29/20 34/10 38/18 44/23 45/3 45/4 45/4 45/17 46/1 46/10 49/20 50/4 50/20 52/25 54/11 59/22 61/21 61/25 62/21 62/25 63/1 63/2 63/18 64/1 64/3 64/6 64/7 65/3 65/4 65/18
65/25 66/1 68/24 69/9 76/13 80/17 80/18 81/3 84/8 84/12 87/7
**have [128]**
**haven't [4]** 9/24 19/21 45/25 71/19
**having [7]** 11/23 18/12 37/9 51/10 61/9 82/1 83/17
**he [212]**
**he'd [2]** 34/23 35/16
**he's [16]** 10/7 25/22 26/6 42/4 57/13 57/19 57/19 58/3 58/16 61/2 61/23 61/23 64/4 73/5 73/17 80/8
**head [2]** 35/4 65/10
**heading [1]** 8/15
**health [2]** 61/1 68/22
**hear [19]** 3/22 3/23 4/3 4/13 4/13 8/22 15/16 16/12 16/21 34/22 35/2 42/17 42/23 62/2 62/5 67/8 68/24 73/24 74/1
**heard [15]** 4/6 6/23 9/10 25/21 44/25 61/20 61/23 62/13 62/15 62/16 62/19 71/19 80/7 82/20 84/8
**hearing [1]** 15/11
**hearings [1]** 44/20
**heart [1]** 45/4
**held [1]** 60/16
**help [3]** 25/20 25/24 26/4
**helpful [3]** 20/19 21/2 56/24
**her [2]** 34/11 72/25
**here [46]** 2/23 5/18 9/5 15/4 15/5 16/15 23/10 26/2 26/10 26/21 27/21 28/3 28/6 31/21 32/20 33/18 33/19 36/16 46/11 49/7 51/1 51/17 51/20 52/5 53/15 56/20 61/16 64/18 64/18 65/9 65/10 66/6 66/7 66/11 66/11 71/16 73/15 74/12 75/19 78/24 82/13 82/22 83/25 84/12 85/4 87/20
**here's [4]** 3/17 40/3 48/14 66/12
**hereby [1]** 85/12
65/25 66/1 66/2 69/9 76/13 1/23 1/25 92/3 92/9 92/9
**Hey [6]** 37/5 37/12 39/4 39/12 41/4 41/6
**high [2]** 32/24 32/25
**higher [4]** 26/15 27/8 27/13 78/15
**highest [2]** 52/21 54/3
**highly [1]** 50/18
**him [29]** 14/14 20/1 20/5 20/10 20/19 21/2 25/15 25/18 35/2 36/1 42/11 42/17 44/25 56/11 57/20 58/6 61/24 62/7 65/17 72/21 72/22 73/2 73/12 73/24 79/23 80/14 81/16 83/18 84/3
**himself [5]** 20/15 34/1 57/6 57/20 63/3
**hindsight [1]** 62/4
**his [119]**
**histories [1]** 59/1
**history [11]** 52/25 53/1 59/17 64/3 66/15 68/22 80/5 80/13 80/17 80/19 86/9
**hit [2]** 74/4 74/5
**holding [1]** 56/17
**home [13]** 6/5 11/11 38/7 40/8 44/22 52/11 57/21 65/13 73/11 74/20 76/2 78/10 86/25
**honest [5]** 30/6 36/25 37/9 38/1 38/19
**Honor [98]**
**HONORABLE [1]** 1/9
**hope [2]** 37/22 71/14
**horrible [1]** 72/1
**hour [4]** 36/20 36/21 38/4 73/23
**hours [8]** 36/14 38/6 64/17 78/11 81/15 86/17 86/17 87/11
**housed [1]** 90/1
**how [20]** 3/17 16/13 28/11 32/25 33/17 33/20 33/21 34/11 35/8 36/11 36/15 39/16 52/8 61/20 61/23 61/23 62/20 67/13 69/10 76/11
**Howard [1]** 1/18
**however [3]** 18/4 83/21 84/24

## H

human [2] 38/24 43/22
humor [2] 43/13 43/14
hunting [2] 21/5 22/4
husband [3] 65/25 65/25 66/16
Huss [1] 71/14
hyping [1] 40/7
hypothetically [1] 84/21

## I

I try [1] 39/8
I'd [9] 16/21 34/22 36/7 48/17 59/24 74/20 74/20 76/6 76/23
I'll [15] 3/17 13/18 15/12 16/12 16/23 42/11 42/16 48/9 48/15 48/25 60/10 61/17 67/18 76/21 77/12
I'm [44] 4/11 9/18 9/20 12/7 13/2 14/4 20/23 24/14 26/5 34/7 34/19 35/17 38/6 38/7 38/7 38/9 38/11 38/17 38/19 38/19 38/20 40/15 41/2 41/10 41/22 42/8 42/9 46/6 48/17 50/24 53/22 55/15 56/22 67/22 72/24 74/11 75/1 77/10 77/18 80/6 84/13 84/16 85/22 86/8
I've [41] 3/5 4/6 15/17 16/3 18/2 26/21 27/5 36/9 36/11 37/1 41/14 54/23 61/21 61/22 62/16 62/19 64/5 64/11 66/9 66/12 66/18 67/4 67/21 68/4 70/9 70/17 71/4 78/20 79/1 79/13 79/13 80/6 80/13 81/25 82/12 83/4 84/9 85/11 85/12 85/21 87/12
idea [3] 20/8 20/14 24/6
identical [1] 67/25
identifiable [1] 29/21
identify [2] 15/12 87/18
identifying [1] 3/5
ignores [1] 29/22
images [6] 17/22 17/25 18/4 18/6 18/20

imagine [3] 76/10 76/14 84/21
immaterial [1] 22/7
immediate [3] 37/21 66/5 73/18
impact [1] 79/14
impede [2] 45/6 45/7
impeded [2] 51/10 83/6
impeding [2] 15/25 49/20
implausible [1] 20/12
important [4] 69/8 69/9 76/6 80/23
importantly [1] 79/13
importing [2] 29/5 31/24
impose [3] 4/5 80/23 80/24
imposed [5] 82/23 82/24 84/7 86/2 87/23
imposing [1] 15/6
impression [1] 33/14
imprisonment [2] 85/14 86/18
inadvisable [1] 62/4
inappropriately [1] 47/16
Inaugural [1] 57/10
incarceration [7] 67/6 67/7 78/1 78/5 78/18 78/23 84/23
incident [1] 6/20
include [5] 11/9 13/8 16/14 47/22 78/25
included [5] 12/24 13/19 14/5 21/11 90/6
includes [1] 3/9
including [7] 14/2 15/2 58/22 66/2 78/9 80/12 86/15
inclusion [4] 4/15 8/13 11/2 12/24
inconvenience [1] 75/23
incorporating [1] 51/3
increase [4] 27/25 29/3 31/24 32/6
increased [2] 28/18 31/22
incredible [2] 20/13 50/18
incredibly [3] 19/24

indeed [1] 6/13
indicate [1] 19/3
indicated [1] 51/1
indicates [1] 18/15
indictment [1] 90/18
indignance [1] 63/7
individual [3] 47/21 54/6 87/18
individuals [2] 7/13 25/17
indulgence [1] 34/5
ineffective [1] 88/6
information [8] 7/5 11/6 13/19 19/10 25/16 64/1 82/21 88/4
injuries [1] 62/15
inside [4] 25/19 25/20 25/24 56/15
insight [1] 11/4
instance [1] 21/1
instead [1] 78/21
instructs [1] 51/13
intact [1] 5/6
integrity [1] 82/3
intend [4] 3/17 8/22 33/11 45/6
intended [3] 23/4 47/18 79/11
intending [1] 36/1
intends [1] 34/12
intent [12] 15/21 22/9 22/19 24/7 26/2 26/23 31/25 44/11 45/17 50/2 51/25 52/2
intention [6] 37/9 40/11 40/17 41/9 42/20 42/21
intentional [2] 80/2 83/5
intentions [1] 23/23
interact [3] 44/18 87/5 87/8
interaction [1] 4/24
interest [3] 75/5 75/16 75/16
interesting [2] 45/14 45/24
interfere [2] 26/3 56/5
interfering [2] 56/24 81/23
interpretation [2] 8/19 34/11
interrupting [1] 79/8

intersect [1] 33/1
interviewed [4] 7/9 17/9 25/15 25/22
introduce [1] 2/7
introduced [3] 6/7 22/8 66/3
investigation [2] 3/6 14/9
invite [2] 9/11 42/4
invites [1] 34/16
inviting [2] 35/14 35/17
involve [2] 51/15 87/15
involved [4] 23/13 49/21 50/9 81/4
involvement [1] 66/14
involving [1] 51/13
is [241]
isn't [1] 24/7
issue [5] 6/24 22/7 27/23 46/21 47/15
issues [12] 3/22 3/24 15/11 16/9 33/7 34/10 45/11 47/3 48/19 49/6 61/1 88/22
it [170]
it's [50] 4/25 7/17 7/20 8/4 12/22 13/23 20/2 21/1 25/12 27/18 29/17 30/4 31/3 31/5 36/16 36/20 37/17 39/5 41/21 42/23 43/8 43/17 44/10 53/20 54/8 54/10 54/13 54/20 56/19 57/12 57/16 57/19 57/25 58/1 58/2 67/25 68/16 68/16 69/3 69/8 69/9 70/4 73/8 73/8 73/17 75/1 76/4 76/8 78/13 88/25
item [1] 58/7
items [3] 60/22 68/10 87/1
its [13] 6/25 7/22 8/2 8/5 8/9 28/1 56/20 77/22 77/23 77/25 78/16 79/4 89/9

## J

Jacksonville [1] 89/15
jail [1] 37/6
January [57] 4/18 6/12 6/14 6/22 7/25 17/8 17/14 17/20 19/11

**J**

**January... [48]** 19/25 22/9 22/19 23/2 23/4 23/5 24/8 26/13 33/13 33/20 56/1 59/3 59/20 60/8 63/6 64/2 64/2 64/21 65/8 66/13 66/20 66/24 67/10 67/11 67/17 69/6 69/18 71/6 71/6 71/10 72/5 72/11 72/11 74/9 74/14 75/7 75/12 79/3 79/11 79/19 81/11 81/22 82/5 82/14 83/18 84/2 84/4 84/22
**January 6th [50]** 4/18 6/12 6/14 7/25 17/8 17/14 19/11 19/25 22/9 22/19 23/5 24/8 26/13 33/13 33/20 56/1 59/3 59/20 60/8 63/6 64/2 64/2 64/21 65/8 66/13 66/20 66/24 67/10 67/11 67/17 69/6 69/18 71/6 71/6 71/10 72/5 74/9 74/14 75/7 75/12 79/3 79/11 79/19 81/11 82/5 82/14 83/18 84/2 84/4 84/22
**JEB [1]** 69/25
**job [9]** 38/17 38/21 61/23 73/7 73/8 73/8 74/8 74/21 80/16
**joint [1]** 79/5
**joints [1]** 28/17
**joke [3]** 20/17 20/19 40/23
**jokes [1]** 44/3
**Jonathan [1]** 6/11
**JOSHUA [4]** 1/5 2/4 84/15 85/12
**JUDGE [6]** 1/9 34/6 72/6 72/7 72/7 90/13
**judges [1]** 82/22
**judgment [6]** 8/25 15/1 65/4 87/22 87/24 90/1
**judicial [3]** 86/16 86/19 89/14
**July [1]** 10/9
**jumbled [1]** 36/16
**jumping [1]** 38/9
**June [3]** 17/21 18/15 75/12
**jury [2]** 44/14 44/25
**just [65]** 3/4 9/8 9/18

13/18 14/4 18/2 20/3 20/7 20/9 22/16 22/20 23/25 24/15 25/11 27/5 27/12 29/9 29/14 31/10 31/19 33/10 34/23 35/1 35/1 35/16 37/23 39/5 40/6 42/8 43/6 44/1 44/2 46/6 46/9 46/19 47/2 52/10 52/10 54/3 54/7 54/17 56/16 59/2 59/13 69/23 70/25 72/7 74/4 74/6 75/20 76/2 76/5 76/8 76/11 76/12 76/16 76/19 76/23 84/16 87/12 88/24 90/17
**justice [8]** 8/24 9/14 16/11 45/8 50/12 50/13 50/23 51/10
**justified [1]** 60/14

**K**

**Kearney [27]** 1/12 2/10 2/11 8/11 10/10 11/1 12/15 13/12 14/6 16/18 34/3 34/10 36/8 39/15 46/2 47/1 54/7 54/17 55/10 63/13 65/2 67/15 72/18 77/8 88/15 89/19 89/21
**keeping [1]** 35/4
**Keepsafe [16]** 17/16 18/5 18/7 18/11 18/12 18/14 18/22 19/2 19/4 37/15 37/16 37/17 37/19 50/17 51/8 83/24
**kelley [1]** 1/17
**key [1]** 17/11
**kicked [1]** 71/25
**kind [12]** 7/4 25/3 25/10 28/9 31/8 32/22 33/10 40/12 52/5 57/24 59/7 61/1
**knew [4]** 21/14 23/4 52/11 58/17
**know [88]** 7/2 7/19 16/15 17/19 17/20 17/20 17/21 20/19 21/19 23/23 27/6 27/22 28/13 29/18 31/3 32/18 34/24 35/4 36/10 37/18 37/22 38/6 39/5 39/13 39/13 39/15 39/16

40/19 40/21 40/25 41/3 41/4 41/5 41/5 41/25 42/9 42/15 42/16 42/22 42/23 43/1 43/11 43/11 43/12 43/15 43/16 43/17 44/2 44/9 44/25 45/14 45/21 46/1 46/14 46/16 47/16 55/12 63/16 63/16 64/6 64/7 64/11 65/6 65/7 67/13 67/15 67/25 69/14 70/20 71/5 72/13 72/25 74/9 74/10 74/16 74/16 74/17 74/18 75/1 75/7 75/18 76/4 76/10 76/17 76/18 86/9 87/6 87/6
**knowing [1]** 19/24
**knowingly [4]** 79/21 81/14 86/19 87/8
**knowledge [2]** 22/19 58/6
**known [1]** 24/3
**knows [5]** 15/9 40/16 45/15 73/5 73/10

**L**

**lack [3]** 61/17 61/18 86/9
**lady [1]** 38/14
**laid [2]** 25/4 25/9
**landed [1]** 69/15
**language [2]** 12/18 44/10
**lapses [1]** 21/15
**large [1]** 75/22
**largely [1]** 5/6
**last [3]** 13/23 42/17 64/6
**lastly [1]** 61/17
**later [3]** 12/6 18/8 36/22
**law [15]** 1/18 4/22 5/1 51/21 52/14 56/6 66/14 71/4 79/9 79/17 79/25 80/21 80/23 83/6 87/10
**law-abiding [1]** 71/4
**lawful [1]** 87/3
**layout [2]** 39/18 40/4
**lead [1]** 16/19
**leading [1]** 79/16
**leads [4]** 19/5 40/5 50/11 50/18
**learned [1]** 66/1
**least [27]** 4/23 5/2 5/25

9/7 9/9 12/8 15/1 27/2 28/7 28/20 30/9 32/23 37/24 48/17 49/7 49/8 50/15 50/17 51/9 59/19 69/7 70/4 72/4 81/12 83/15 83/21 83/24
**leave [2]** 37/5 86/19
**leaves [1]** 16/8
**leaving [1]** 76/14
**led [3]** 20/11 59/5 81/9
**left [2]** 7/12 74/16
**legal [5]** 10/21 11/5 11/13 84/13 85/24
**length [1]** 58/14
**leniency [1]** 76/6
**less [4]** 6/21 67/4 68/17 83/15
**let [9]** 22/19 39/18 41/14 54/15 59/13 65/8 76/2 76/2 84/16
**let's [6]** 9/23 22/15 26/9 42/17 85/1 89/6
**lets [1]** 71/7
**letter [1]** 11/20
**letters [1]** 71/12
**letting [1]** 44/5
**level [45]** 4/24 16/4 26/15 26/20 26/22 27/8 27/13 27/17 27/20 27/25 28/3 28/18 29/3 30/16 30/17 31/14 31/22 32/6 32/9 32/15 33/2 34/25 47/17 49/11 49/14 49/20 49/21 49/22 50/4 50/6 50/8 50/9 50/10 50/12 50/23 52/20 52/21 52/22 52/23 54/3 54/9 54/17 54/22 54/24 81/13
**levels [3]** 27/1 27/1 32/12
**liability [2]** 21/19 21/20
**liberty [1]** 87/15
**lie [3]** 36/23 37/9 37/10
**life [6]** 46/12 46/17 65/14 71/4 71/5 71/6
**light [5]** 7/6 12/9 24/21 78/3 82/6
**like [84]** 10/15 10/18 16/21 20/1 28/6 32/14 33/6 34/23 35/1 35/20 36/7 36/13 37/5 37/15 37/18 37/24 37/25

**L**

**like...** [67] 38/12 38/17 38/19 38/22 38/25 39/18 39/19 39/22 39/25 40/2 40/7 40/7 40/8 40/12 40/23 41/3 41/6 41/9 41/10 41/12 41/17 41/18 41/21 42/8 42/9 42/17 42/22 42/23 43/1 43/3 43/7 43/14 43/17 43/23 43/23 44/7 46/8 46/12 46/15 46/17 46/22 47/1 48/6 48/18 55/8 57/15 59/1 59/24 61/14 61/15 66/15 69/4 72/20 74/8 74/11 74/16 74/22 75/1 75/5 75/6 75/11 76/8 76/13 76/14 77/5 77/8 82/16
**likely** [4] 4/6 6/21 46/18 50/15
**likes** [1] 40/23
**limited** [2] 70/23 70/25
**limits** [1] 6/1
**line** [7] 5/12 5/22 6/1 56/10 56/13 56/16 62/6
**lines** [1] 5/3
**link** [1] 26/25
**linked** [1] 27/4
**links** [1] 27/1
**list** [1] 68/25
**literally** [3] 43/5 57/17 76/7
**little** [9] 36/16 36/17 39/12 45/13 46/12 49/5 60/10 73/14 81/4
**littlest** [1] 41/18
**live** [1] 86/23
**lives** [3] 69/14 72/22 80/9
**living** [2] 65/1 65/4
**loaded** [1] 7/11
**local** [1] 86/5
**locally** [1] 18/13
**location** [1] 40/15
**locations** [1] 60/22
**logic** [2] 18/25 22/2
**long** [2] 36/13 43/8
**longer** [2] 47/17 49/5
**look** [6] 26/22 43/4 50/22 66/23 67/14 72/13
**looking** [3] 45/15 67/22 74/8

**looks** [1] 69/8
**lorraine** [5] 1/23 1/25 92/3 92/9 92/9
**lose** [2] 38/17 38/21
**lost** [3] 18/2 61/23 80/16
**lot** [21] 36/7 36/21 38/15 38/25 39/3 39/24 42/24 43/8 43/22 45/25 59/24 61/20 66/12 66/22 67/21 74/9 75/7 75/20 80/8 82/11 82/13
**lots** [1] 69/15
**love** [2] 66/2 68/24
**low** [3] 81/2 85/3 85/14
**low-end** [1] 85/3
**luck** [1] 42/1
**lying** [1] 19/20

**M**

**made** [13] 5/15 7/21 8/2 8/5 8/9 16/14 21/23 25/14 39/23 56/3 59/11 79/14 85/11
**main** [1] 38/21
**maintains** [1] 18/13
**make** [13] 3/19 8/21 23/25 24/15 34/13 36/24 39/25 44/3 44/3 54/3 88/24 89/16 90/4
**makes** [5] 6/20 21/7 33/15 46/5 83/11
**making** [2] 43/2 65/14
**Mall** [2] 23/6 24/3
**man** [5] 63/6 64/4 64/12 65/14 66/1
**mandates** [1] 61/19
**mandatory** [2] 15/9 86/2
**many** [26] 17/25 19/25 20/6 20/11 20/15 24/6 33/17 33/20 33/21 39/8 39/16 43/25 64/12 64/24 65/4 66/13 79/2 79/2 79/2 79/7 79/8 79/10 79/16 81/5 81/25 84/9
**mapping** [1] 3/4
**March** [1] 11/12
**marked** [1] 71/3
**married** [4] 65/21 75/9 75/10 75/15
**material** [1] 13/19
**materials** [4] 3/12

**math** [3] 32/10 32/23 53/25
**mathematical** [1] 28/10
**matter** [7] 28/11 33/17 33/20 33/21 34/7 46/7 92/5
**matters** [2] 39/14 73/22
**matured** [1] 62/25
**Maverick** [3] 73/1 75/9 80/9
**maximum** [1] 54/11
**maximums** [1] 53/5
**may** [10] 3/25 6/23 27/6 35/9 51/15 72/12 83/15 84/7 87/25 88/6
**maybe** [8] 18/20 18/21 23/24 32/18 34/20 40/24 41/4 44/19
**MD** [1] 1/19
**me** [53] 3/9 7/24 8/1 8/8 12/1 13/20 14/5 18/2 19/5 26/13 27/14 27/15 33/14 36/22 37/2 37/5 37/5 37/5 38/5 38/6 39/17 39/18 40/1 40/1 40/6 40/10 40/22 41/14 42/8 43/3 44/5 50/19 50/19 51/8 52/6 52/13 54/7 54/15 59/13 60/14 65/11 66/21 69/9 69/24 72/10 74/1 74/25 75/24 76/2 76/7 80/11 84/11 84/16
**me to** [1] 38/5
**mean** [28] 21/9 22/21 23/7 23/15 23/17 29/2 29/14 33/23 36/9 36/13 36/16 36/18 36/19 38/23 40/10 41/14 41/20 42/25 43/7 43/13 43/14 43/21 64/4 69/19 70/24 74/3 74/7 76/13
**Meaning** [1] 21/13
**means** [3] 5/24 21/21 29/9
**meant** [9] 13/4 19/25 20/8 20/14 20/20 22/1 22/3 26/2 26/2
**media** [1] 59/9
**meet** [2] 41/2 43/15
**meeting** [1] 79/5

**member** [1] 66/17
**members** [5] 7/9 39/12 40/20 41/3 58/11
**memo** [3] 9/20 25/5 61/15
**memoranda** [1] 3/7
**memorandum** [1] 89/13
**memories** [1] 36/24
**memory** [4] 21/16 36/11 36/15 36/18
**men** [1] 38/15
**mens** [1] 21/11
**mental** [2] 61/1 68/22
**mention** [3] 25/14 38/13 39/4
**mentioned** [4] 16/10 36/9 42/13 84/9
**merely** [1] 26/4
**messages** [6] 20/23 20/24 22/8 22/25 24/3 81/6
**microphone** [1] 9/8
**mid** [2] 83/19 85/2
**mid-guidelines** [1] 85/2
**mid-point** [1] 83/19
**middle** [1] 82/25
**might** [7] 24/2 24/6 29/14 34/20 65/20 66/10 82/6
**Miller** [2] 82/16 83/16
**mind** [3] 38/15 38/21 90/3
**minds** [1] 70/23
**mine** [1] 9/9
**minimize** [1] 22/13
**minimizes** [1] 60/13
**minimizing** [1] 22/5
**minimum** [3] 7/23 84/1 87/18
**minute** [1] 46/19
**minutes** [4] 45/1 48/15 56/9 77/13
**misdemeanor** [5] 45/16 53/20 54/12 56/20 67/6
**misremembering** [1] 24/1
**misrepresentation** [1] 22/14
**miss** [1] 73/2
**missing** [1] 24/16
**MK** [1] 58/3

**M**

MK-46 [1] 58/3
mob [3] 57/6 58/18 62/10
mode [1] 18/25
modest [1] 66/14
modified [2] 14/24 70/6
mom [1] 66/17
moment [1] 72/11
memento [1] 8/9
moments [1] 74/23
money [2] 10/20 11/12
monitor [1] 61/24
monitored [1] 10/8
month [5] 46/13 63/12 75/22 78/5 84/25
months [19] 39/1 53/3 53/6 55/23 59/14 76/13 77/24 78/8 78/10 78/17 78/17 78/18 84/19 84/23 85/2 85/14 85/15 85/17 85/18
months' [2] 77/25 78/22
Monument [1] 24/12
Moore [6] 49/4 77/17 90/4 90/14 90/15 91/1
more [22] 12/10 12/18 14/1 23/24 28/21 44/23 45/13 45/24 54/12 55/13 56/9 56/22 57/17 59/16 59/25 60/10 64/25 67/12 74/24 83/11 84/16 84/18
Morgan [3] 65/21 73/2 80/9
morning [5] 22/23 23/21 38/3 73/9 80/8
most [10] 24/21 36/11 41/14 46/3 49/25 67/17 67/20 69/7 70/5 76/6
mostly [1] 47/23
Mostofsky [11] 59/12 60/20 60/24 67/25 68/10 68/12 68/13 68/18 69/24 82/18 83/12
mother [1] 71/15
motion [2] 90/22 90/25
motivated [1] 63/6
motivations [1] 26/5
move [4] 18/17 46/12 46/16 48/20

moved [4] 9/9 17/13 18/4 18/21
movement [2] 17/19 70/7
moves [1] 90/19
MPD [2] 47/22 47/23
Mr [10] 2/14 2/17 5/5 11/21 17/13 20/24 51/1 67/9 73/23 82/17
Mr. [178]
Mr. Ballou [2] 2/11 65/2
Mr. Chappell [1] 63/25
Mr. Doolin [103]
Mr. Doolin's [33] 4/17 4/18 8/24 18/16 18/19 19/19 19/21 20/18 21/3 21/4 21/5 21/21 22/9 25/7 47/13 48/9 50/14 58/8 58/23 61/7 67/17 67/20 68/15 68/17 69/20 71/19 80/3 80/5 80/7 80/19 82/25 84/17 84/21
Mr. Huss [1] 71/14
Mr. Mostofsky [5] 60/20 60/24 68/10 68/13 68/18
Mr. Orenberg [23] 2/12 9/6 11/18 12/23 14/11 14/18 15/3 33/7 34/4 35/12 44/7 46/25 47/10 48/7 48/12 55/4 59/12 60/19 63/16 77/5 88/17 89/9 90/21
Mr. Orenberg's [1] 61/14
Mr. Perkins [3] 13/15 16/15 16/16
Mr. Perkins' [1] 4/16
Mr. Price [5] 59/4 59/13 59/14 84/18 84/19
Ms. [32] 2/11 8/11 10/10 11/1 12/15 13/12 14/6 16/18 34/3 34/10 36/8 39/15 46/2 47/1 49/4 54/7 54/17 55/10 63/13 65/2 65/21 67/15 72/18 77/8 77/17 88/15 89/19 89/21 90/4 90/14 90/15 91/1
Ms. Kearney [25] 2/11 8/11 10/10 11/1 12/15

13/12 14/6 16/18 34/3 34/10 36/8 39/15 46/2 47/1 54/7 54/17 55/10 63/13 65/2 67/15 72/18 77/8 88/15 89/19 89/21
Ms. Moore [6] 49/4 77/17 90/4 90/14 90/15 91/1
Ms. Morgan [1] 65/21
much [12] 18/8 19/21 36/19 38/18 38/20 51/11 67/2 67/2 67/2 67/3 67/12 74/3
multi [1] 82/20
multi-day [1] 82/20
multiple [2] 20/3 29/9
mused [1] 46/1
must [17] 15/10 78/23 80/24 81/19 86/4 86/5 86/6 86/11 86/19 86/22 86/23 86/24 87/3 87/5 87/7 87/11 87/23
mutually [1] 26/6
my [125]
myself [2] 64/25 72/18

**N**

name [1] 38/16
narrated [1] 56/15
narrating [1] 19/20
National [1] 23/6
nature [5] 12/13 30/24 32/25 79/1 80/3
near [1] 9/8
nearly [1] 67/11
necessarily [1] 32/3
necessary [1] 87/16
need [6] 13/21 25/21 48/15 55/16 82/8 84/5
needed [3] 25/24 37/22 87/19
needs [2] 45/21 71/18
negate [1] 22/13
negates [1] 29/16
neglected [1] 47/2
neither [1] 78/11
never [9] 20/5 42/13 42/19 66/18 68/1 68/2 74/18 74/21 83/12
nevertheless [3] 15/10 68/16 71/24
new [3] 1/13 88/4 89/3
next [2] 46/17 82/11
NICHOLS [1] 1/9

no [73] 1/3 2/4 3/14 3/15 6/7 10/12 11/4 11/5 12/14 13/6 14/7 19/7 19/15 19/16 20/8 20/14 21/7 23/9 25/14 27/11 28/8 29/9 32/10 33/5 33/17 33/20 33/21 36/3 39/8 40/5 40/5 40/15 40/17 40/19 42/20 42/21 46/24 47/17 49/13 50/5 54/2 55/2 55/5 57/25 58/1 58/2 62/13 62/15 62/16 62/19 63/15 64/3 64/19 64/20 66/14 69/3 70/19 75/16 75/16 77/6 77/9 80/17 81/3 81/8 87/15 88/12 88/16 88/19 90/18 90/21 90/23 90/23 91/3
nobody [3] 33/18 33/19 42/14
nodding [1] 65/10
non [3] 28/1 31/4 52/1
non-civil [1] 52/1
non-grouped [1] 28/1
non-restricted [1] 31/4
none [1] 78/20
normally [1] 52/3
not [147]
note [4] 11/20 13/13 47/21 71/7
noted [2] 10/13 12/22
notes [1] 88/10
nothing [5] 3/14 21/21 43/18 48/12 75/5
notify [1] 87/11
noting [1] 10/10
notwithstanding [3] 68/21 73/6 78/14
now [30] 4/12 7/20 9/22 10/16 18/18 18/24 20/9 20/23 21/3 23/24 26/5 31/4 34/20 35/20 39/13 43/25 53/9 55/8 57/16 57/18 58/14 61/18 64/5 66/12 67/25 72/17 75/23 77/15 79/2 84/9
number [10] 4/12 13/20 21/15 51/3 51/7 61/1 72/10 79/16 88/22 89/18
numbers [1] 30/6

# N

numerically [1] 30/5
NW [2] 1/16 1/24
NY [1] 1/13

# O

oath [3] 22/3 44/17
44/17
object [4] 11/1 11/3
11/20 89/23
objection [8] 5/17
10/10 12/3 12/23 88/19
90/21 90/23 90/24
objections [16] 3/18
3/19 4/10 9/6 9/15 9/19
10/15 11/18 12/8 12/12
12/15 53/13 53/17 55/3
88/14 88/17
objective [1] 52/13
objects [6] 4/15 4/20
5/5 5/14 6/3 8/13
observed [2] 51/2
62/12
observes [1] 87/2
obstruct [5] 26/3 45/6
45/7 56/5 60/4
obstructed [1] 47/13
obstructing [3] 15/25
49/19 56/23
obstruction [15] 8/24
9/14 15/13 16/11 16/23
33/10 34/13 34/25
35/21 44/8 50/11 50/13
50/23 59/22 83/23
obstructive [2] 84/24
85/5
obtain [1] 18/10
obvious [2] 49/25
84/11
obviously [9] 2/23
14/8 45/11 46/5 54/2
54/4 54/16 55/19 72/20
occasions [2] 45/5
51/3
occur [2] 22/10 58/10
occurred [4] 17/19
56/9 64/17 68/13
occurring [1] 81/16
of's [1] 67/19
off [7] 6/1 35/12 38/8
58/5 75/2 75/20 90/13
offend [1] 81/18
offense [48] 15/20
26/15 26/20 26/22 27/1

27/11 27/8 27/13 27/17
27/20 27/25 28/18 29/3
30/12 30/13 30/16
30/17 31/14 31/21
31/22 32/6 32/9 32/15
33/2 47/16 48/3 49/11
49/14 49/21 49/22 50/6
50/9 50/10 52/20 52/20
52/22 52/23 54/9 54/10
54/11 54/17 54/22
54/24 55/25 56/20 61/7
79/1 84/6
offenses [12] 15/5
30/18 30/25 31/23
32/25 33/10 48/4 48/5
51/12 51/19 51/21 52/5
office [1] 86/15
officer [15] 2/6 25/17
45/19 71/21 71/22
83/13 86/12 86/21
86/23 86/24 86/25 87/4
87/9 87/10 87/11
Officer is [1] 2/6
officers [21] 4/22
15/25 47/12 47/21
47/23 47/24 49/20
52/15 56/12 56/21
56/23 59/7 62/16 63/8
64/9 79/9 79/25 80/2
83/7 83/8 87/19
Official [2] 1/23 92/3
officials [1] 51/22
officiator [1] 75/11
offs [1] 21/16
often [5] 26/14 26/16
69/13 69/16 77/21
Oh [14] 36/22 38/13
38/22 39/25 40/8 41/21
41/22 41/24 42/4 42/10
43/4 43/7 53/24 90/12
okay [26] 4/8 7/7 12/2
23/18 25/2 26/8 33/3
35/19 36/5 42/17 43/13
44/13 46/25 48/13
48/24 55/6 64/3 66/25
69/22 77/7 77/13 89/6
89/7 89/17 90/11 91/4
old [4] 63/19 76/14
76/15 80/8
omission [1] 25/22
once [5] 12/9 19/13
28/17 35/1 75/25
one [56] 1/13 7/13
15/13 15/14 18/24

26/12 26/20 28/21
28/23 29/22 30/23
30/23 31/4 39/25 41/17
42/17 43/3 43/5 45/10
45/22 46/9 46/10 46/18
47/3 51/24 53/5 53/7
53/7 56/16 58/16 59/15
59/16 59/18 59/23 60/1
60/2 63/20 63/20 65/23
66/23 69/5 70/21 72/4
76/8 76/14 78/15 78/23
79/14 80/10 81/23 82/8
84/16 85/22 89/12
89/13 90/5
one-year-old [1] 76/14
ones [3] 16/9 29/10
55/10
only [14] 11/8 19/19
39/19 44/16 44/25
45/20 45/22 46/3 57/14
57/19 63/3 64/7 73/2
84/7
open [7] 7/17 7/21
21/25 37/9 37/13 38/8
38/19
openly [1] 37/7
operations [1] 70/6
opinion [1] 68/16
opportunity [5] 35/20
44/18 44/24 88/25 90/8
opposed [1] 23/6
oral [1] 89/3
order [3] 84/10 84/14
85/21
ordered [1] 85/20
ordering [1] 85/23
orderly [2] 51/22 52/15
ordinary [1] 81/22
Orenberg [27] 1/18
1/18 2/12 2/14 9/6
11/18 12/23 14/11
14/18 15/3 33/7 34/4
35/12 44/7 46/25 47/10
48/7 48/12 51/1 55/4
59/12 60/19 63/16 77/5
88/17 89/9 90/21
Orenberg's [1] 61/14
orenberglaw.com [1]
1/20
Orlando [1] 89/15
other [54] 3/12 5/16
8/2 8/5 9/5 9/19 11/18
12/12 15/14 20/3 24/19
24/25 25/3 25/16 25/17

26/9 26/20 27/17 27/18
29/6 29/21 29/22 33/1
41/3 41/3 42/25 43/19
45/5 48/7 52/5 54/21
54/22 57/8 59/16 63/10
67/13 67/24 68/22 72/4
72/19 73/22 74/10
78/25 81/5 82/7 82/9
82/22 83/12 83/19
83/21 84/3 84/9 85/6
89/10
others [9] 24/6 67/11
67/12 72/1 72/14 79/3
80/25 81/19 83/2
otherwise [7] 13/19
14/5 54/13 70/11 71/4
71/19 81/10
our [7] 18/18 47/21
55/2 55/18 61/15 63/24
82/1
ours [1] 57/16
out [21] 20/13 25/4
32/22 37/12 37/23
38/17 38/24 39/18
43/22 46/6 58/19 59/19
63/20 68/9 68/21 70/3
70/17 73/7 74/24 76/22
90/8
outcome [2] 24/14
32/19
outer [1] 5/10
outlined [1] 86/14
outset [1] 55/12
outside [4] 38/16
55/19 64/18 68/15
outstanding [1] 4/10
over [8] 36/14 36/15
44/16 56/9 64/18 74/5
74/5 74/11
overall [3] 27/12 27/13
82/7
overlapping [2] 30/9
47/22
overruled [1] 5/17
overstates [1] 32/16
overtake [1] 79/21
overtime [1] 38/5
overwhelmed [1]
79/17
overwhelming [1]
85/5
own [8] 19/16 19/25
40/4 44/2 61/22 63/21
68/25 78/3

**O**

ownership [1] 58/6
owns [1] 47/25

**P**

P R O C E E D I N G S
[1] 2/1
P.C [1] 1/18
p.m [6] 1/6 49/1 49/1
77/14 77/14 91/6
page [5] 9/20 12/22
13/1 13/5 66/8
Page 28 [1] 13/5
Pages [2] 7/9 86/14
pandemic [2] 70/6
70/12
papers [7] 45/15 63/22
64/14 70/17 72/5 77/22
78/8
paragraph [20] 5/6
5/13 5/15 6/4 9/25 10/2
10/4 10/13 10/14 10/18
12/18 12/25 13/2 13/3
13/5 13/6 13/8 13/14
13/18 13/24
Paragraph 16 [3] 5/6
5/13 13/24
Paragraph 28 [2] 6/4
13/2
paragraphs [10] 4/15
4/17 4/21 5/3 8/14 8/17
9/1 9/5 9/15 14/25
parcel [1] 47/14
Pardon [1] 18/2
Park [1] 1/19
part [11] 4/23 9/16
11/8 47/14 64/5 69/12
70/5 74/24 75/6 82/4
84/1
participant [1] 79/14
participate [1] 61/8
particular [21] 3/9
3/18 8/22 11/9 26/15
27/9 27/16 29/4 31/2
33/8 46/21 51/17 55/14
56/4 69/15 69/17 79/20
82/16 83/23 88/3 90/3
particularly [3] 80/23
83/6 85/7
parties [7] 2/25 3/23
4/5 4/6 15/15 16/17
77/22
parties' [1] 55/8
parts [1] 6/24

pass [1] 37/14
passed [1] 39/7
password [1] 17/17
past [2] 12/9 12/19
path [1] 23/23
pause [1] 18/3
pay [9] 10/21 10/23
11/13 11/17 66/10
76/22 85/20 85/22
85/25
peaceful [2] 56/2
81/24
people [19] 12/22 20/4
39/24 40/7 40/8 41/3
42/3 42/10 62/6 62/8
62/18 62/18 66/22 67/1
67/3 67/17 75/8 82/2
82/3
people's [1] 36/11
pepper [1] 62/11
percent [2] 22/16
61/13
perfectly [1] 27/18
performed [2] 18/16
30/8
performing [1] 30/25
perhaps [9] 32/4 32/23
34/15 34/17 61/3 61/15
63/1 64/25 72/14
peril [1] 62/17
perimeter [5] 5/10
19/14 30/17 30/24
31/23
perimeter-related [1]
31/23
period [7] 57/4 59/6
70/25 71/1 73/16 76/11
78/5
periods [2] 67/5 67/7
Perkins [4] 13/15
13/18 16/15 16/16
Perkins' [1] 4/16
permeate [1] 65/9
permission [5] 86/21
87/9 88/1 88/7 89/19
permit [1] 89/25
permits [1] 17/16
permitted [1] 90/10
person [4] 25/11 62/23
66/17 87/8
personal [3] 69/14
79/18 86/8
personally [1] 69/1
perspective [5] 12/16

pass [1] 37/14
67/16
pertain [2] 4/16 4/18
phase [2] 7/20 46/17
phone [5] 17/9 17/15
17/18 17/22 17/24 18/6
18/10 18/13 18/21
18/22 18/23 19/17
37/11 37/11 37/13
37/16 37/19 37/20
37/24
phones [1] 18/25
phonetic [1] 2/19
photos [3] 17/8 17/14
18/10
phrases [1] 20/14
physical [4] 16/3 16/6
49/21 50/9
pick [1] 38/6
picked [1] 38/3
place [4] 18/2 34/8
74/21 86/23
placement [1] 89/14
places [2] 42/25 83/18
plain [1] 87/2
Plaintiff [2] 1/3 1/12
plan [2] 48/17 89/2
planned [1] 79/7
planning [3] 70/20
79/10 81/4
plans [1] 34/8
platform [1] 57/10
play [2] 28/17 43/13
played [1] 74/25
Plaza [3] 1/13 5/12
5/22
plea [2] 59/15 68/14
pleas [1] 67/7
please [3] 2/7 16/22
35/23
plus [4] 50/17 51/21
52/22 63/19
podium [1] 35/24
point [15] 3/25 22/17
23/10 24/18 30/5 31/20
39/1 39/8 39/11 40/1
40/12 41/6 47/23 55/14
83/19
pointed [4] 68/9 68/21
70/3 70/17
points [5] 48/7 48/10
52/25 64/14 82/16
police [16] 5/12 5/22
5/22 6/1 6/5 6/18 6/18

25/17 47/1 1 57/9 62/6
63/8 71/21 79/21 79/22
81/21
policy [2] 70/15 72/8
Polk [1] 73/6
Pollock [1] 6/11
Pollocks' [1] 7/14
portion [2] 11/3 52/8
portions [1] 14/23
pose [1] 60/8
posed [1] 62/10
poses [1] 81/2
position [3] 8/20 64/15
78/13
positions [3] 26/13
53/12 77/22
possess [1] 86/5
possession [1] 6/12
possibility [4] 23/12
23/20 24/8 58/19
possible [5] 9/12 17/7
31/3 31/5 56/3
possibly [2] 28/20
48/22
posture [2] 58/25
60/25
potential [1] 80/1
potentially [3] 10/21
11/13 58/10
Potomac [2] 1/19 1/19
power [3] 56/2 81/24
81/25
practicalities [1] 66/7
pre [2] 54/16 70/20
pre-grouping [1]
54/16
pre-planning [1] 70/20
precise [1] 81/9
prefer [2] 35/16 35/18
preliminary [1] 34/7
prepared [2] 11/21
89/9
preponderance [1]
50/20
present [3] 2/16 9/12
72/22
presentation [3] 20/18
35/15 48/10
presented [2] 64/13
82/5
presence [11] 3/6
11/22 14/9 34/14 86/14
88/21 88/23 88/24 89/3
89/8 90/7

**P**

preserved [1] 55/3
President [2] 42/3
42/15
presidential [1] 79/6
presume [1] 11/5
pretrial [1] 3/7
pretty [4] 3/21 36/18
38/20 75/23
prevent [1] 5/23
prevents [1] 81/21
previous [2] 80/17
81/3
previously [1] 50/4
Price [7] 59/4 59/13
59/14 61/14 82/17
84/18 84/19
pride [1] 61/9
prideful [1] 59/10
primary [2] 51/20
79/15
prior [8] 22/21 22/23
44/19 57/2 66/14 70/11
71/8 80/12
prism [1] 64/16
prison [1] 84/22
Prisons [4] 70/3 70/5
85/13 89/1
privileges [1] 78/10
probably [7] 17/2
29/19 42/25 46/19
48/15 52/12 84/8
probation [16] 2/6
45/19 47/11 53/10
78/16 86/12 86/15
86/21 86/23 86/24
86/24 87/4 87/9 87/11
87/19 88/9
probation's [2] 3/5
27/3
probationary [1] 78/9
problem [1] 81/13
procedural [1] 58/25
procedurally [1] 59/15
procedure [2] 14/21
17/2
proceed [2] 2/25 3/17
proceedings [5] 79/8
84/7 88/7 91/6 92/5
produced [1] 18/14
progressions [1]
65/14
prohibited [2] 5/17
87/1

promotes [1] 86/23
prong [1] 70/2
prongs [2] 70/2 70/21
pronounce [4] 4/7
48/23 77/12 77/19
proof [1] 52/9
proper [1] 53/19
properly [2] 32/8
68/21
property [2] 52/4 83/9
propose [1] 16/17
proposed [2] 12/17
53/10
proposing [1] 11/21
proposition [2] 27/14
28/7
prosecutes [1] 65/3
prosecution [2] 40/16
43/23
protect [4] 17/17 51/22
52/15 79/25
protected [1] 31/2
protecting [3] 79/22
80/21 83/7
protesting [1] 81/10
protestors [2] 5/23 6/2
protracted [1] 71/1
proud [16] 21/7 22/1
40/20 40/22 40/25
40/25 41/2 43/15 43/16
43/17 57/14 57/17
57/19 60/11 60/12
60/15
provide [4] 65/19
73/15 84/6 89/4
provided [2] 7/5 82/15
provides [3] 49/13
51/15 70/15
provision [1] 21/12
provisions [1] 54/23
PSR [28] 3/18 3/19
3/22 4/9 4/10 5/18 8/14
8/17 9/7 10/7 10/16
11/8 11/10 12/4 12/8
12/13 12/16 12/22 13/1
13/8 13/20 14/2 14/22
16/17 53/10 53/13 54/4
54/5
public [1] 80/21
pull [1] 37/22
pure [1] 67/6
Purported [1] 8/15
purpose [3] 15/6 22/5
79/8

purposely [1] 36/22
purposes [5] 8/6 13/9
28/21 35/5 87/16
Pursuant [2] 14/21
87/21
push [3] 43/18 43/23
56/12
pushed [1] 75/21
pushes [3] 40/12
40/20 56/10
put [8] 21/6 21/25
40/24 57/6 62/6 62/18
72/5 76/1
puts [1] 18/25
putting [2] 28/4 62/7

**Q**

qualifications [1]
88/10
question [14] 7/18
7/21 9/4 26/19 44/8
45/12 50/11 64/19
64/20 67/15 67/18 82/3
88/20 90/15
questioned [2] 40/1
87/10
questions [9] 19/6
34/17 36/2 38/12 46/20
63/14 86/22 88/14
88/17
quibble [1] 70/24
quick [1] 4/7
quite [2] 8/7 79/20

**R**

rack [1] 5/6
racks [6] 5/11 5/21 6/1
43/4 43/5 43/6
raised [6] 10/19 10/20
11/10 11/13 48/8 90/15
rally [6] 19/11 23/17
23/18 23/19 23/21 24/3
range [10] 21/5 21/8
53/4 53/6 54/19 54/25
55/20 55/22 72/17 85/2
rather [2] 35/16 56/25
re [3] 18/10 55/14
81/18
re-offend [1] 81/18
re-reviewed [1] 55/14
re-search [1] 18/10
rea [1] 21/11
reaching [1] 51/4
reaction [2] 21/3 21/6

read [1] 18/5
reading [1] 68/13
ready [2] 2/25 46/7
real [3] 23/11 51/9
63/3
reality [1] 67/14
realize [1] 58/24
really [15] 12/3 12/7
12/24 13/21 16/7 24/7
26/16 27/17 32/11
45/25 46/9 47/7 66/18
67/13 76/10
reason [8] 24/20 29/2
31/2 31/21 63/11 70/13
81/12 85/10
reasonable [2] 7/19
50/19
reasonably [2] 87/13
87/16
reasons [14] 27/6
46/19 51/15 51/24
54/17 58/3 70/17 72/16
73/3 73/3 73/4 74/17
82/22 84/15
recalculated [1] 55/22
recalled [2] 7/11 7/13
received [1] 88/5
recent [1] 25/25
recess [8] 3/25 4/1 4/7
46/19 48/15 49/1 77/10
77/14
recidivism [2] 81/3
81/13
recite [1] 20/24
recognize [2] 32/2
53/9
recognizing [2] 9/3
53/14
recollection [2] 24/5
37/8
recommend [2] 63/11
90/1
recommendation [9]
3/6 17/5 55/19 55/23
61/6 61/14 89/14 89/16
90/5
recommended [4]
55/9 61/11 72/9 78/17
record [14] 2/8 11/19
14/23 35/12 49/3 51/3
53/17 69/23 71/8 77/16
82/21 85/11 90/13 92/5
recovered [1] 6/19
recur [1] 81/11

# R

redundant [2]  14/5 74/6
refer [1]  27/17
reference [3]  26/16 30/15 47/15
referenced [2]  28/18 54/10
references [2]  26/14 28/12
referred [2]  65/3 84/19
referring [1]  29/3
refers [1]  66/8
reflect [2]  54/16 77/11
reflected [3]  15/3 24/2 53/12
reflecting [1]  89/3
reflects [2]  47/17 52/6
refrain [1]  86/6
regard [1]  19/10
regarding [6]  3/19 4/4 8/23 15/5 20/22 20/23
regards [2]  9/25 38/14
regrets [2]  61/25 63/2
rejecting [1]  53/16
related [8]  13/14 13/21 15/11 16/7 31/12 31/23 46/10 87/13
relationship [1]  40/22
relative [1]  69/9
release [9]  53/7 78/1 78/10 78/18 80/14 85/17 85/18 86/1 86/18
relevant [4]  26/22 53/3 69/20 87/13
relied [2]  19/18 54/23
rely [2]  8/7 74/10
remain [2]  31/11 72/21
remained [1]  81/14
remaining [3]  15/19 16/6 16/9
remarkable [1]  64/4
remarkably [1]  60/21
remarks [1]  58/15
remember [13]  20/20 21/17 21/20 36/10 36/16 36/23 36/25 39/20 43/7 43/8 43/24 44/3 71/23
reminder [1]  9/8
remorse [6]  59/24 60/1 61/18 61/18 62/3 62/5
removed [1]  19/23
reoccurred [1]  27/23

repeat [1]  31/16
repeatedly [1]  82/13
repeats [3]  33/15 33/17 63/9
replay [1]  55/15
replied [1]  17/23
report [15]  3/6 3/7 9/21 11/22 14/9 14/10 14/14 34/15 86/14 88/21 88/23 88/24 89/3 89/8 90/7
Reported [1]  1/23
Reporter [2]  1/23 92/3
reporter's [1]  9/9
reporting [1]  86/15
reports [1]  11/10
represented [1]  66/9
represents [1]  71/3
reputation [1]  61/25
request [7]  34/13 55/21 55/22 87/25 88/6 88/20 89/12
requested [1]  77/24
requesting [2]  10/3 10/7
requests [2]  88/18 89/13
require [1]  30/1
required [2]  85/24 86/1
requirement [1]  86/10
requires [3]  28/9 66/21 84/25
reserve [1]  8/25
reserving [2]  9/4 14/25
reside [2]  86/16 86/20
residence [1]  7/14
resolve [4]  4/12 12/8 46/8 48/19
resolving [1]  46/21
respect [7]  5/2 14/25 50/16 63/5 80/21 80/23 83/1
respects [3]  17/11 64/24 83/15
respond [2]  47/1 48/6
response [4]  21/25 33/1 42/10 48/12
responsibility [3]  52/24 60/2 60/2
responsibly [1]  45/4
rest [3]  11/15 19/5 73/13
restitution [14]  10/21

10/24 11/14 11/17 11/22 78/2 78/12 78/19 84/6 84/7 84/10 84/12 84/14 85/23
restricted [16]  5/10 5/16 19/13 30/12 30/17 30/24 31/4 31/6 31/11 31/12 31/15 31/22 47/15 70/7 70/8 81/15
restricted-area-related [1]  31/12
result [10]  18/14 27/8 27/11 27/21 32/3 50/22 52/19 52/23 53/2 80/1
resulted [1]  83/7
resulting [1]  28/2
results [1]  79/5
return [1]  4/7
returns [1]  19/2
review [7]  14/10 69/24 82/19 85/1 88/25 89/9 90/8
reviewed [3]  55/14 80/6 80/13
reviewing [1]  82/22
revision [1]  12/25
ridiculous [1]  38/23
right [36]  4/12 10/5 10/25 12/5 13/7 13/25 16/21 22/16 22/24 23/12 23/14 24/11 26/2 29/16 29/17 30/14 30/19 31/5 31/9 32/9 32/11 32/13 32/19 33/3 33/16 35/7 36/6 36/10 37/17 44/17 57/18 61/2 69/2 71/14 73/7 87/22
rights [1]  88/2
rigorous [1]  75/24
riot [23]  6/12 6/14 6/19 6/20 7/12 7/24 8/1 8/2 8/2 8/5 8/8 11/23 11/24 22/11 47/9 47/25 53/23 56/10 56/19 79/21 81/20 81/22 82/4
rioter [1]  56/4
rioters [9]  56/10 57/8 62/17 63/10 79/7 79/15 81/5 82/7 83/19
riots [1]  79/14
risk [3]  51/10 60/8 81/2
road [1]  3/4
road-mapping [1]  3/4

Robert [2]  2/19 72/9
rock [1]  34/8
rose [1]  34/24
row [2]  2/20 59/7
rows [1]  79/22
RPR [1]  1/23
rubric [1]  72/3
Rule [12]  14/21 14/21
ruled [1]  45/18
rules [3]  28/11 28/11 35/21
ruling [1]  34/13
run [1]  51/9

# S

S-0 [1]  90/19
said [36]  10/4 20/3 25/19 36/9 36/25 37/1 37/12 38/25 40/12 41/6 41/19 42/15 43/1 43/25 46/9 51/6 56/15 57/15 57/17 58/15 61/19 61/25 62/3 64/16 65/12 74/9 75/7 79/2 79/13 81/25 82/12 83/17 85/12 85/24 90/9 90/17
Saint [1]  1/13
same [19]  24/11 28/24 29/12 29/13 29/14 29/22 37/18 37/24 47/12 47/15 51/13 51/16 52/5 63/6 67/18 68/14 74/4 78/13 81/18
Sarah [1]  71/12
sat [4]  7/2 44/16 55/12 65/4
satire [9]  39/24 40/7 40/13 40/21 42/23 43/17 43/19 44/3 58/16
satisfied [1]  14/17
saw [6]  18/9 19/15 19/16 19/22 64/21 80/7
say [35]  7/17 13/4 23/15 25/20 26/2 26/18 26/21 32/11 38/13 38/22 39/4 40/2 40/24 41/21 41/24 43/3 43/7 43/9 43/11 43/13 43/15 43/24 43/25 44/12 44/15 45/14 46/2 64/22 65/6 70/18 74/17 75/1 78/13 82/2 84/16
saying [11]  20/7 32/15 35/17 36/22 39/23

**S**

saying... **[6]** 40/13 45/16 67/8 71/14 72/24 73/15

says **[5]** 33/22 35/2 37/17 40/23 62/4

search **[1]** 18/10

searched **[1]** 17/24

second **[11]** 3/21 16/3 16/13 17/10 18/24 29/17 29/25 35/10 48/10 70/13 85/6

secret **[1]** 37/17

Section **[11]** 15/18 16/11 49/10 49/17 50/13 50/22 51/12 52/24 87/14 87/21 88/3

Sections **[1]** 52/19

security **[1]** 75/24

see **[12]** 9/18 19/23 29/24 30/4 33/21 39/18 40/1 40/14 40/14 41/14 65/10 70/1

seeing **[5]** 39/20 65/5 71/16 76/11 76/11

seek **[1]** 87/3

seeking **[1]** 11/22

seem **[3]** 14/5 32/23 43/10

seemed **[2]** 26/12 27/14

seems **[12]** 8/8 12/1 13/20 27/15 27/24 28/20 30/5 33/14 51/8 52/6 52/13 60/12

seen **[3]** 39/21 56/8 65/22

segregate **[1]** 17/17

seized **[2]** 18/23 19/2

self **[4]** 89/20 89/24 89/25 90/10

self-surrender **[4]** 89/20 89/24 89/25 90/10

send **[2]** 42/11 57/21

sense **[1]** 21/7

sensitive **[1]** 31/1

sent **[7]** 3/9 24/3 40/8 41/22 42/8 42/20 88/25

sentence **[33]** 2/23 4/5 4/7 5/14 13/9 13/24 15/6 35/5 48/24 59/21 61/4 61/11 61/20 63/12 66/22 69/11 72/19

72/20 77/2 77/20 77/24 78/9 78/24 80/4 80/22 80/24 82/6 82/10 82/12 85/2 85/4 87/22 88/4

sentenced **[12]** 58/22 58/22 59/14 60/25 66/23 67/3 67/4 67/5 83/2 84/19 85/16 86/17

sentences **[5]** 48/21 55/9 69/16 82/23 82/24

sentencing **[20]** 1/8 3/7 4/19 7/20 8/6 9/20 12/1 12/10 34/15 34/16 46/13 66/20 67/22 70/14 72/5 72/14 72/22 76/20 87/14 87/16

separate **[4]** 17/15 30/7 30/8 52/18

separated **[1]** 48/5

separately **[3]** 30/2 30/7 48/1

September **[1]** 92/9

serious **[13]** 21/1 43/16 67/4 67/11 67/12 69/7 79/3 79/19 79/20 83/5 83/6 83/15 84/18

seriously **[1]** 67/14

seriousness **[8]** 55/25 61/7 69/10 75/4 76/18 79/1 80/2 83/19

serve **[1]** 85/16

served **[1]** 18/11

service **[1]** 78/11

services **[2]** 3/7 14/17

session **[1]** 79/5

set **[1]** 87/14

seven **[2]** 54/9 64/17

several **[10]** 17/11 20/1 25/3 36/8 39/12 42/22 55/23 58/11 81/15 86/2

severe **[1]** 83/11

severity **[1]** 82/25

shade **[2]** 24/21 26/2

shall **[2]** 51/14 86/13

share **[1]** 28/6

shared **[1]** 51/20

she **[6]** 36/9 36/9 40/1 68/21 75/20 87/2

she's **[1]** 40/2

sheds **[1]** 7/6

sheer **[1]** 79/16

Sherry **[1]** 2/6

shield **[30]** 6/5 6/12 6/14 6/15 6/19 6/20 6/21 7/12 7/14 7/21 7/21 7/25 8/1 8/2 8/2 8/4 8/5 8/8 11/23 11/24 47/9 47/25 52/7 53/23 56/10 56/19 56/21 56/25 58/2 79/21

shift **[2]** 38/4 38/7

shocking **[3]** 64/20 64/20 64/24

shooting **[2]** 21/5 21/8

short **[1]** 3/25

shortest **[1]** 28/10

shot **[2]** 38/14 39/13

should **[17]** 3/13 4/5 8/23 10/22 11/16 11/16 17/2 32/8 42/25 45/2 45/21 45/22 47/25 52/18 61/15 62/9 71/18

shouldn't **[1]** 32/6

show **[4]** 10/8 19/19 40/4 81/6

showing **[1]** 60/1

side **[2]** 5/7 47/21

sign **[1]** 7/15

signed **[3]** 6/6 7/24 8/7

significant **[9]** 16/9 57/4 59/17 59/23 60/25 61/11 61/20 70/20 73/16

significantly **[1]** 80/20

signs **[1]** 19/15

similar **[12]** 13/23 59/5 59/10 59/21 60/21 66/16 67/17 67/20 69/13 81/20 83/2 83/20

similarly **[1]** 66/13

simply **[3]** 17/1 20/21 29/21

since **[4]** 10/9 55/13 63/1 65/18

single **[4]** 16/16 51/14 51/19 56/4

singular **[1]** 64/17

sit **[1]** 51/2

situation **[4]** 44/13 44/15 46/10 70/3

situations **[1]** 69/14

six **[9]** 44/19 53/20 53/24 54/8 54/13 54/18 64/17 78/9 84/25

six-month **[1]** 84/25

size **[1]** 6/20

skin **[1]** 40/24 41/19

sleep **[1]** 73/14

slightly **[1]** 78/15

small **[2]** 22/17 59/5

smallest **[1]** 76/12

so **[116]**

social **[1]** 59/9

some **[30]** 4/9 4/24 5/8 6/17 8/2 8/5 20/11 20/11 26/13 27/15 27/17 27/18 34/10 34/19 41/6 52/1 63/1 64/16 67/5 67/12 67/23 71/16 71/21 76/19 81/12 81/13 83/21 84/3 84/3 89/13

somebody **[1]** 41/5

someone **[19]** 18/21 19/4 22/11 22/12 24/6 24/20 25/21 25/21 25/24 50/16 58/11 60/14 60/15 60/16 61/14 61/15 69/23 87/5 87/7

something **[11]** 12/4 20/2 21/1 24/1 24/16 33/15 45/23 51/11 63/21 72/13 75/11

sometimes **[3]** 27/3 27/3 27/12

somewhat **[3]** 6/21 82/25 84/17

somewhere **[1]** 25/11

son **[6]** 73/1 73/14 75/15 75/19 76/11 80/9

soon **[2]** 65/19 65/21

sorely **[1]** 73/2

sorry **[4]** 9/21 10/4 13/2 53/22

sort **[6]** 27/25 34/7 47/6 59/18 62/2 83/18

sought **[1]** 57/6

sounds **[1]** 32/14

southwest **[1]** 5/7

space **[1]** 31/1

speak **[7]** 34/9 35/1 35/9 44/5 44/19 60/10 74/11

speaking **[1]** 27/22

speaks **[1]** 60/13

special **[2]** 85/20 85/25

specific **[7]** 14/1 25/4 26/9 28/5 49/17 82/8 90/5

**specifically [6]** 15/22 20/1 25/18 28/12 31/2 59/2
**spectrum [1]** 69/7
**speech [3]** 42/3 42/15 42/18
**spends [1]** 73/12
**spent [2]** 64/5 67/21
**spoken [2]** 45/3 45/4
**spray [1]** 62/11
**spreadsheet [1]** 69/1
**spring [1]** 2/25
**stable [2]** 65/13 65/13
**staffs [1]** 62/18
**stage [1]** 57/10
**stand [5]** 25/23 33/22 35/25 39/6 45/1
**standard [1]** 7/20
**standing [2]** 38/16 50/1
**stands [1]** 24/18
**start [3]** 15/14 46/17 77/21
**started [1]** 19/15
**starting [2]** 9/20 36/8
**state [3]** 20/14 53/16 86/4
**stated [2]** 50/4 54/17
**statement [11]** 5/5 5/13 13/22 22/5 24/10 34/2 38/23 39/6 68/14 70/15 72/8
**statements [18]** 4/20 9/7 11/2 11/7 11/9 12/12 12/16 12/24 19/14 19/25 21/23 33/12 33/13 43/18 43/19 59/10 61/22 71/13
**states [9]** 1/1 1/2 1/9 2/3 2/10 5/15 6/4 15/8 79/4
**status [1]** 44/20
**statute [1]** 84/8
**statutory [3]** 53/5 54/11 84/10
**stay [2]** 74/20 76/2
**steak [1]** 42/7
**Steal [1]** 19/11
**stealing [2]** 6/5 6/14
**step [2]** 51/8 63/8
**steps [1]** 51/9
**stick [1]** 39/24

**still [8]** 7/22 24/18 54/19 60/13 63/8 70/5 73/1 76/20
**stole [1]** 83/9
**stolen [4]** 11/24 56/10 60/22 79/20
**stop [2]** 11/14 19/11
**stopped [1]** 6/18
**stories [1]** 66/16
**storm [4]** 20/16 41/23 58/13 63/7
**storming [3]** 57/22 61/8 62/10
**strengths [1]** 79/15
**stressed [1]** 38/17
**stretch [3]** 4/25 41/21 41/24
**strictly [1]** 69/5
**strike [2]** 5/3 5/12
**strikes [2]** 7/25 33/14
**strive [1]** 65/18
**strived [1]** 65/15
**strong [1]** 85/7
**stuff [1]** 16/19
**stupid [5]** 40/10 41/10 42/24 62/4 63/21
**submission [7]** 6/25 7/6 8/18 62/22 68/5 73/10 89/10
**submissions [2]** 63/24 66/1
**submit [5]** 19/9 21/15 47/20 72/1 86/10
**submitted [5]** 3/8 14/15 66/6 71/9 71/12
**subsequent [1]** 17/9
**subsequently [1]** 18/9
**substance [3]** 80/18 86/6 86/7
**substantially [2]** 51/13 51/15
**successful [1]** 56/3
**such [6]** 13/21 25/16 41/22 47/17 81/23 88/7
**suffered [1]** 62/16
**sufficiently [2]** 81/19 82/7
**suggest [4]** 8/8 20/13 59/21 62/25
**suggesting [2]** 24/14 79/11
**suggests [2]** 46/4 60/14
**summarize [1]** 80/6

**summarizing [1]** 79/21
**supervised [6]** 53/6 78/1 78/18 85/17 85/18 86/1
**supervision [4]** 86/4 87/2 87/18 87/20
**support [8]** 21/4 45/8 45/17 61/6 66/2 71/16 72/25 76/25
**supportive [1]** 80/18
**suppose [1]** 88/18
**Supreme [1]** 15/8
**sure [14]** 7/1 16/25 24/1 24/15 26/5 26/11 35/23 54/4 56/22 67/22 68/12 74/11 75/1 88/24
**surely [2]** 41/9 42/21
**surface [1]** 60/20
**surged [1]** 57/9
**surprisingly [1]** 51/11
**surrender [4]** 89/20 89/24 89/25 90/10
**swept [1]** 58/18
**swirl [1]** 22/11
**swore [1]** 44/17

**T**

**table [1]** 67/22
**take [29]** 3/25 4/1 4/7 11/15 12/5 16/23 28/6 30/11 33/10 33/12 36/7 37/5 41/4 41/6 41/7 44/16 46/19 48/14 48/22 52/11 75/18 76/5 76/20 76/21 76/24 76/25 77/10 83/14 87/1
**taken [18]** 7/25 17/8 17/14 19/19 20/20 26/13 38/11 38/18 43/22 50/15 52/2 52/9 52/10 57/15 65/16 72/13 75/20 77/14
**takes [2]** 38/24 57/25
**taking [10]** 16/18 17/12 20/2 41/8 41/9 53/15 57/16 75/6 76/17 85/10
**talk [13]** 9/11 12/9 14/13 26/9 28/5 37/4 37/5 41/15 44/5 59/24 59/24 61/17 73/19
**talked [11]** 37/1 37/3 37/7 37/15 38/1 41/4 41/25 42/2 42/14 61/5

**talking [11]** 21/8 24/24 31/19 36/19 37/16 40/15 42/4 42/11 59/19 73/12 73/13
**Tampa [1]** 89/15
**Tampa/Orlando/Jacks onville [1]** 89/15
**taste [1]** 39/23
**technical [1]** 27/6
**tell [5]** 16/8 33/22 43/21 66/9 72/4
**telling [1]** 15/14
**tells [2]** 33/20 45/5
**ten [2]** 44/19 77/12
**tend [2]** 59/18 82/9
**tenor [1]** 60/23
**tension [1]** 27/15
**term [4]** 84/22 85/13 85/14 85/17
**terms [4]** 17/1 28/15 60/21 85/15
**Terrace [1]** 56/16
**terrible [1]** 64/19
**testified [11]** 18/20 19/9 19/15 19/15 20/17 20/22 21/13 22/17 34/2 34/11 51/7
**testifies [2]** 22/3 25/23
**testify [1]** 24/20
**testimony [21]** 8/15 8/24 17/10 18/19 19/5 19/21 21/14 24/19 24/25 25/4 33/12 50/18 58/9 63/25 64/9 71/19 71/22 80/7 80/12 83/25 83/25
**testing [1]** 86/10
**text [10]** 20/22 22/8 22/25 24/3 40/19 41/16 41/16 41/22 42/9 81/6
**texted [1]** 20/15
**texting [1]** 23/21
**texts [3]** 40/21 42/20 58/16
**than [20]** 16/1 43/19 44/23 49/5 55/13 56/9 56/25 62/24 67/2 67/4 67/12 67/14 68/17 70/11 73/22 78/15 83/11 83/16 84/18 87/15
**thank [36]** 2/21 3/3 3/16 8/11 8/12 14/7

**thank... [30]**  14/20
19/8 33/5 34/3 34/5
36/3 44/6 46/25 48/13
48/25 49/4 54/14 54/25
55/7 55/11 55/16 60/18
63/13 63/15 63/17 77/2
77/4 77/6 77/9 77/17
88/13 89/11 91/1 91/4
91/5

**that [532]**

**that's [44]**  7/19 11/25
12/3 13/17 14/3 19/14
19/16 21/11 24/9 25/1
25/22 25/24 27/7 28/1
31/13 33/23 35/15
37/24 38/20 39/17
39/19 39/19 40/22
41/12 41/19 41/24 43/1
43/2 43/2 43/12 44/4
45/13 45/24 46/18
52/22 54/12 57/22 66/6
68/10 68/23 69/12
70/21 82/2 90/23

**theft [2]**  47/9 52/4

**their [17]**  17/18 40/4
53/12 55/9 56/11 59/1
59/1 60/7 60/23 62/6
62/18 64/8 69/14 72/22
79/16 80/9 82/23

**them [40]**  4/12 9/24
15/6 15/10 19/1 19/4
20/11 20/15 25/16 27/7
27/19 27/21 29/18
29/22 30/1 30/7 30/22
37/4 37/7 37/7 37/10
37/14 37/19 42/23
51/16 53/16 55/14
55/15 56/12 56/24 57/1
57/9 67/3 67/5 67/5
69/11 76/2 76/25 76/25
80/6

**themselves [2]**  24/6
43/18

**then [51]**  3/25 4/1 4/13
9/19 10/14 10/22 12/6
12/10 17/7 17/9 17/17
17/24 20/17 23/20
25/23 26/19 27/2 27/11
27/11 27/18 28/2 29/11
30/1 31/13 32/5 35/4
38/13 38/22 39/5 41/23
41/25 42/19 48/20
48/22 48/23 50/11

5/1 12/5 27/5 39/15 44/13
63/1 67/23 70/13 73/11
75/21 77/11 77/19
78/16 83/9 90/9 91/2

**there [82]**  4/9 4/13
4/23 6/7 6/17 7/4 8/3
12/12 14/1 15/1 15/14
16/13 16/16 20/6 22/15
22/18 23/3 24/20 25/3
25/21 26/8 26/14 26/23
26/23 26/25 27/6 28/15
29/9 32/10 36/17 38/11
38/15 39/17 40/5 40/5
40/6 40/15 41/11 42/1
42/3 42/16 42/20 43/4
44/16 45/16 45/22
46/22 49/13 50/5 52/15
52/15 55/14 56/4 56/16
64/19 67/1 67/3 70/24
71/20 72/14 74/18
74/22 74/23 74/23
74/25 75/2 75/3 75/16
75/17 76/19 76/20
76/25 81/6 81/8 81/23
84/13 85/23 88/10
89/13 90/2 90/16 90/18

**there's [16]**  9/24 19/20
28/16 32/2 32/5 40/2
40/17 43/18 45/20
73/16 74/3 74/17 75/23
76/24 81/12 88/23

**thereafter [1]**  65/21

**therefore [9]**  5/2 5/12
8/25 49/22 50/10 53/1
53/21 84/22 87/20

**these [26]**  10/14 10/15
11/2 11/7 15/16 16/22
22/8 30/25 31/1 31/7
32/25 33/7 43/4 43/14
43/17 46/20 48/19
52/17 56/1 65/2 65/3
65/4 76/18 81/17 84/15
87/17

**they [54]**  4/16 4/18
7/12 11/5 11/9 11/16
19/21 19/22 20/8 21/4
25/15 27/4 28/24 29/13
29/14 29/14 30/7 31/1
32/25 37/2 37/3 37/11
37/15 37/21 37/22
37/22 37/23 38/5 38/5
43/6 43/19 56/14 57/9
57/14 58/4 60/8 60/14
60/15 60/17 60/20

**they're [6]**  15/9 16/9
19/1 21/7 28/2 72/24

**thing [12]**  7/17 24/7
26/12 38/3 38/21 41/19
66/12 66/19 76/4 76/6
81/23 84/5

**things [16]**  17/6 20/7
21/16 23/16 26/21
27/15 37/25 41/15
42/24 43/8 43/14 43/14
57/15 59/18 74/23 85/3

**think [79]**  6/24 7/6
7/17 7/18 7/20 8/6
12/18 13/23 16/23 17/1
17/23 19/24 20/12
22/20 23/9 23/22 23/23
24/9 24/10 24/18 25/8
26/25 28/9 28/10 29/1
30/4 30/6 32/7 32/10
32/14 33/1 36/15 39/7
39/17 39/18 39/22
40/20 42/5 42/12 44/16
44/23 45/2 45/17 45/23
45/25 46/20 47/3 47/14
48/9 49/6 52/12 53/11
53/18 53/19 55/16
57/12 59/4 59/23 60/20
60/25 61/2 61/10 61/18
62/25 65/20 67/19 68/7
69/8 69/19 71/18 72/17
78/13 81/12 81/17
83/17 83/25 84/2 85/3
85/7

**thinking [13]**  26/22
28/16 28/23 28/25 29/5
35/5 38/7 38/9 38/20
42/8 42/10 69/20 77/18

**third [1]**  29/17

**this [98]**

**those [62]**  3/12 4/17
5/3 5/3 5/20 5/25 7/13
8/17 9/22 9/23 14/23
15/13 17/22 17/25
17/25 18/4 18/21 20/9
20/14 23/22 26/5 27/2
27/15 28/17 29/21
30/24 31/9 36/24 40/7
40/13 40/21 45/1 47/25
50/24 52/1 53/5 53/15
56/5 58/22 59/18 61/10

61/11 62/23 63/3 64/96
65/22 66/6 66/6 68/1
68/2 72/24 74/10 74/10
79/11 83/6

61/11 62/23 63/3 64/96
64/13 64/14 64/17
66/10 70/10 71/16
72/16 78/20 79/8 80/1
81/21 81/25 83/8 83/15
83/16 90/2 90/19

**though [2]**  25/15
69/12

**thought [9]**  19/22
25/24 41/11 41/11 42/6
42/19 46/2 46/9 76/1

**thoughts [1]**  48/16

**three [8]**  16/4 46/3
49/21 50/9 52/18 53/7
61/5 71/3

**three-level [3]**  16/4
49/21 50/9

**through [24]**  3/22 4/1
4/11 5/24 7/2 9/2 9/23
20/6 38/15 39/11 41/18
41/18 50/24 51/2 54/7
55/13 56/13 62/5 62/6
66/1 74/4 76/1 77/18
88/22

**throughout [2]**  14/2
72/1

**throw [1]**  38/8

**thus [2]**  4/19 83/3

**ties [1]**  6/19

**time [37]**  5/9 5/19
13/15 13/20 14/10
14/13 34/9 34/18 34/20
38/25 39/12 42/12 43/6
43/8 45/25 46/23 46/24
47/23 57/4 59/6 65/18
65/20 67/22 70/25 71/2
72/6 73/17 74/4 75/20
75/20 76/11 76/12
81/19 82/5 86/17 86/25
87/3

**timelines [3]**  39/7
39/10 43/24

**times [13]**  14/1 20/3
33/17 33/20 33/21
37/11 37/14 39/8 43/25
44/19 79/2 81/25 84/9

**timestamps [1]**  14/2

**today [14]**  14/23 45/3
45/4 45/24 46/8 46/11
46/16 65/9 65/10 66/4
78/14 82/21 85/12 89/3

**today's [1]**  30/11

**together [5]**  27/4
29/22 30/22 51/14

114

**T**

**together...** [1] 54/20
**told** [4] 18/5 37/4 39/12 56/14
**tomorrow** [2] 27/24 29/19
**Tones** [1] 38/7
**too** [5] 26/1 32/24 32/24 43/25 64/23
**took** [10] 6/4 6/21 8/4 37/11 44/17 49/5 51/9 52/7 58/3 68/10
**tools** [1] 87/19
**top** [3] 55/22 74/10 78/5
**topic** [2] 8/22 19/13
**topics** [5] 15/16 16/22 34/25 36/8 74/5
**total** [1] 52/23
**training** [1] 39/2
**transaction** [1] 30/23
**transcript** [2] 1/8 92/4
**transfer** [1] 56/2
**transition** [1] 81/24
**transitions** [1] 81/25
**trash** [1] 18/17
**trauma** [1] 62/16
**travel** [3] 9/25 10/19 11/11
**traveled** [2] 7/10 12/20
**traveling** [1] 19/12
**treat** [1] 51/18
**tremendous** [1] 72/23
**trespass** [3] 16/2 48/4 49/25
**trial** [22] 2/24 6/7 7/2 7/19 8/16 8/19 8/25 10/20 11/12 17/10 17/13 18/1 18/19 34/11 44/13 44/14 44/20 51/2 71/22 72/11 75/21 82/20
**tried** [2] 38/1 43/8
**triggering** [1] 28/21
**trip** [1] 81/3
**trophies** [1] 58/1
**true** [5] 24/24 33/15 39/6 69/15 92/4
**truth** [3] 43/12 43/21 44/4
**truthfully** [3] 19/10 45/5 86/22
**try** [4] 36/24 37/24 39/8 43/13

**trying** [18] 5/23 12/7 25/16 25/19 25/20 25/23 26/3 26/3 26/4 36/23 37/8 38/19 43/23 56/14 56/17 62/5 71/25 74/12
**tumble** [1] 74/10
**tunnel** [11] 25/8 25/18 39/8 39/9 47/13 56/7 56/12 56/23 79/19 83/5 83/10
**turn** [3] 33/7 52/19 55/8
**turned** [2] 76/8 80/10
**Turning** [1] 15/7
**TV** [1] 64/21
**two** [32] 7/9 12/20 16/9 16/22 17/6 21/17 26/5 27/15 28/3 29/11 29/21 33/7 36/10 36/11 36/14 36/15 36/20 36/21 36/22 38/15 45/20 46/3 50/12 50/23 52/18 54/22 62/24 64/6 70/2 76/15 85/3 89/18
**two-hour** [2] 36/20 36/21
**two-level** [2] 50/12 50/23
**two-year-old** [1] 76/15
**twofold** [1] 28/9
**type** [2] 72/8 87/3
**typical** [1] 34/15

**U**

**U.S** [5] 1/24 70/14 87/14 87/21 88/2
**U.S.** [2] 5/7 64/18
**U.S. Capitol** [2] 5/7 64/18
**ultimate** [2] 53/25 54/19
**ultimately** [1] 17/24
**unable** [1] 87/25
**unacceptable** [1] 82/4
**unavailable** [1] 88/4
**unaware** [1] 58/11
**under** [19] 8/14 9/4 15/7 16/11 21/10 22/3 33/14 40/23 41/19 45/9 47/8 50/13 54/10 54/23 70/14 71/7 72/2 87/18 88/2
**underlying** [3] 16/1

**understand** [20] 4/11 11/25 23/25 26/8 27/7 41/21 45/11 54/4 58/3 64/12 68/13 69/19 73/12 74/7 74/13 74/14 74/24 75/4 75/5 76/18
**understanding** [3] 60/6 60/6 70/4
**understood** [2] 7/4 34/12
**undue** [1] 73/18
**unenviable** [1] 64/15
**Unfortunately** [5] 64/7 65/16 66/5 68/25 72/10
**unique** [3] 51/17 51/19 52/17
**UNITED** [7] 1/1 1/2 1/9 2/3 2/10 15/8 79/4
**unlawful** [1] 86/6
**unlawfully** [1] 86/5
**unless** [5] 19/5 31/16 31/18 55/14 87/4
**unlike** [2] 45/8 83/21
**unlikely** [2] 81/9 81/18
**unnecessariness** [1] 74/14
**unprompted** [1] 58/16
**unquestionably** [1] 79/3
**until** [4] 18/8 24/8 39/9 42/14
**untrue** [1] 51/6
**untruthful** [1] 84/1
**unusual** [2] 44/13 44/15
**unwarranted** [2] 66/21 82/12
**up** [27] 11/15 12/5 27/20 31/4 34/10 36/8 36/24 37/1 38/3 38/6 38/7 38/22 39/5 39/15 40/7 41/2 41/4 43/9 43/15 44/21 45/24 57/9 58/18 65/13 66/4 70/24 73/8
**updated** [1] 19/1
**Upper** [1] 56/16
**us** [7] 9/11 20/7 42/4 46/10 50/11 56/17 85/1
**USAO** [1] 1/12
**usdoj.gov** [2] 1/14 1/17
**use** [6] 31/10 56/25

**used** [12] 9/25 10/19 11/4 11/5 11/11 11/16 20/15 52/8 56/25 66/10 79/9 83/10
**user** [1] 18/16
**users** [1] 17/16
**Using** [1] 79/20
**utility** [1] 56/21

**V**

**valuable** [1] 56/22
**value** [2] 11/23 56/20
**van** [1] 7/12
**vandalism** [1] 79/10
**variance** [8] 33/2 55/21 61/13 70/2 70/9 70/13 72/2 78/9
**various** [5] 5/24 53/12 58/3 70/7 70/17
**vary** [2] 32/8 32/17
**varying** [1] 30/20
**verdict** [3] 5/8 5/19 19/18
**versus** [5] 2/4 15/8 24/3 24/4 30/12
**very** [28] 23/11 28/4 28/4 44/12 46/3 46/18 47/24 47/24 48/3 48/3 48/11 50/15 51/1 51/11 51/17 54/14 56/24 59/2 59/5 60/24 63/3 63/5 65/13 65/13 67/14 69/9 73/14 81/17
**victim** [10] 28/25 29/4 29/5 29/8 29/12 29/14 29/15 29/17 47/12 51/20
**victims** [7] 29/21 29/23 30/8 30/10 47/22 47/24 84/6
**video** [10] 3/9 40/1 40/2 40/14 43/6 43/6 56/8 56/15 71/13 73/10
**videos** [23] 17/8 17/14 17/25 19/18 33/13 33/18 33/22 39/23 39/24 40/7 40/13 42/22 43/2 43/4 55/13 57/13 57/19 59/10 61/21 63/25 65/22 66/6 80/7
**view** [32] 4/17 4/25 15/18 15/21 15/24 16/6 21/10 27/3 27/4 49/7

## V

**view...** [22] 49/16 49/24 50/7 50/14 54/8 64/8 68/16 70/25 79/18 80/2 80/14 80/19 81/2 82/6 82/24 83/11 84/17 84/23 84/25 85/4 87/2 89/22
**viewed** [1] 50/17
**violation** [7] 26/17 27/10 27/10 27/18 28/19 31/12 31/15
**violence** [13] 22/10 23/12 23/20 33/21 33/24 33/25 41/11 42/21 58/9 61/8 79/9 79/12 81/16
**violent** [10] 33/18 33/18 33/19 33/23 56/1 63/10 81/20 81/21 81/22 82/4
**virtue** [2] 30/15 56/20
**visible** [1] 5/20
**visit** [1] 86/25
**visiting** [1] 70/8
**voice** [1] 19/20
**volunteer** [1] 25/16
**votes** [1] 81/24
**vs** [1] 1/4

## W

**waiting** [2] 23/21 58/17
**waive** [2] 86/8 86/10
**wake** [1] 38/7
**walk** [4] 4/11 9/23 54/7 77/18
**wall** [1] 20/6
**Walters** [1] 11/21
**wandered** [1] 22/11
**want** [21] 3/22 4/12 9/22 13/13 15/14 15/15 36/24 37/13 38/21 41/15 43/10 44/2 53/16 54/3 59/2 73/19 74/4 74/15 74/17 75/25 88/24
**wanted** [3] 23/25 24/15 57/25
**wants** [2] 34/9 62/23
**warrant** [7] 18/9 18/11 18/15 61/10 61/12 84/22 85/3
**warrants** [1] 37/22

**was** [172]
**Washington** [7] 1/4 1/16 1/25 7/10 12/21 24/12 81/4
**wasn't** [12] 19/22 24/1 24/15 26/3 26/3 36/3 36/13 37/9 42/14 43/16 45/16 81/22
**watched** [4] 3/10 57/8 61/21 61/22
**watches** [1] 33/22
**way** [25] 3/4 6/18 7/22 7/25 8/2 8/5 8/9 11/6 26/25 27/2 27/5 27/12 28/4 35/8 35/18 48/4 52/6 56/6 60/1 60/2 62/20 65/17 66/3 76/19 76/22
**ways** [7] 5/16 16/17 28/16 63/1 64/13 64/13 83/16
**we** [75] 2/23 3/11 6/23 9/19 11/15 12/9 12/9 12/17 13/21 16/14 16/15 17/19 17/19 17/20 17/21 19/13 20/5 20/9 22/4 23/9 23/21 24/25 25/4 25/19 26/21 26/25 28/5 33/18 36/20 40/23 41/7 42/6 42/13 42/16 44/20 44/21 49/2 50/22 51/12 51/24 52/5 52/11 52/18 52/19 57/16 58/8 58/14 59/8 59/9 59/10 59/23 61/11 61/20 63/11 63/24 63/25 65/2 66/20 67/10 71/21 73/22 77/15 78/3 80/13 82/1 82/11 82/21 88/22 88/24 89/2 89/4 89/19 89/23 90/7 90/17
**we'll** [4] 12/5 29/19 41/4 48/14
**we're** [17] 20/2 20/16 24/24 31/19 37/16 41/7 41/23 42/5 42/15 48/14 48/22 58/16 59/19 65/1 65/4 65/5 65/9
**we've** [7] 14/8 56/8 61/23 72/18 75/25 77/11 80/7
**weapon** [1] 83/14
**weapons** [1] 44/21
**wearing** [1] 58/12

**week** [2] 36/13 55/18
**week-long** [1] 36/13
**weigh** [3] 80/3 80/20 82/9
**Welcome** [1] 2/22
**well** [24] 9/10 10/2 11/19 13/16 26/21 29/4 29/13 31/16 38/15 40/2 41/16 44/9 45/10 45/13 45/23 48/11 53/12 54/14 62/10 63/16 74/25 75/23 84/15 89/13
**went** [4] 58/11 72/8 73/7 88/22
**were** [49] 6/8 10/19 11/4 11/5 11/11 12/19 17/22 17/25 18/20 21/4 21/23 22/4 30/25 33/19 36/1 36/25 37/3 39/23 39/24 40/8 40/13 40/21 41/3 42/1 42/6 42/13 42/20 42/24 43/6 47/13 47/23 50/15 52/1 52/15 56/14 56/21 58/12 61/13 63/10 63/10 66/10 74/23 79/3 79/20 79/24 82/25 83/5 87/23 90/17
**weren't** [3] 20/6 33/18 74/23
**West** [4] 5/11 5/21 56/16 71/20
**what** [84] 3/5 4/5 4/11 4/25 7/2 7/23 8/9 9/18 11/4 11/20 12/7 12/24 15/12 15/15 17/21 18/11 19/2 19/24 20/8 20/14 20/19 21/7 21/9 22/1 22/3 22/20 24/2 25/18 29/1 30/22 31/10 32/3 32/14 32/22 33/14 35/2 35/16 37/18 39/17 40/4 41/5 43/3 45/10 45/12 45/14 45/19 46/1 47/17 48/14 48/17 50/17 52/7 57/14 57/25 58/17 58/19 60/3 60/7 60/14 60/15 60/17 61/12 61/19 62/2 62/3 62/25 65/6 65/9 65/9 67/9 67/16 69/16 69/16 69/17 70/16 70/18 72/19 73/15 73/22

**what's** [6] 10/15 26/20 26/22 27/22 40/9 42/10
**whatever** [6] 31/1 32/16 46/16 68/22 76/21 76/22
**when** [36] 9/2 17/9 17/19 21/1 22/3 22/25 23/15 23/21 24/3 25/15 25/22 25/23 36/14 36/19 36/25 37/1 37/2 37/3 39/7 41/19 41/21 42/2 43/3 44/21 48/22 51/8 56/23 60/13 60/25 64/21 64/21 65/17 67/10 75/23 75/24 84/7
**where** [19] 6/6 19/14 26/19 27/16 29/20 31/20 31/24 37/1 38/6 39/11 42/15 46/6 46/20 53/16 68/10 74/23 84/17 86/16 86/20
**whether** [16] 3/25 8/1 8/4 8/23 9/4 10/23 11/16 11/17 16/10 24/11 24/24 47/11 58/5 75/2 81/7 90/15
**which** [45] 3/10 5/15 5/24 6/4 7/6 7/21 7/25 8/10 8/14 8/22 9/1 9/2 9/25 12/18 15/13 16/12 16/15 17/11 19/3 19/4 19/19 22/20 24/19 24/21 28/23 29/7 29/16 30/25 33/19 34/14 51/10 53/22 54/24 59/23 67/15 71/4 71/8 78/5 79/16 82/11 82/20 83/9 84/24 85/2 86/2
**while** [10] 6/12 30/4 52/3 59/9 59/11 71/20 79/4 84/1 86/1 86/3
**who** [39] 2/16 2/19 7/11 7/13 11/21 22/11 22/12 44/25 47/13 47/21 52/15 56/5 56/21 58/11 58/16 58/22 60/5 60/6 60/14 60/15 60/16 62/6 62/18 62/21 66/3 66/3 66/22 67/1 67/3 67/18 71/16 71/23 72/14 80/9 81/21 83/2 83/19 84/18 87/6

**W**

**whole [2]** 33/12 61/3
**whose [2]** 7/21 58/21
**why [17]** 25/8 27/6
35/24 37/22 39/15
39/16 40/13 46/18
46/19 51/15 54/7 55/9
59/19 59/20 66/6 84/16
88/9
**wife [8]** 66/16 71/14
73/2 73/13 75/19 76/7
76/21 80/9
**will [29]** 3/21 3/23 4/1
4/3 4/6 4/13 4/19 5/2
8/6 9/2 11/7 11/9 13/8
15/14 16/18 27/24
39/23 46/19 71/13 72/4
77/11 81/11 81/18
89/16 89/25 90/1 90/7
90/8 90/10
**willful [6]** 22/4 22/13
26/1 44/11 44/11 45/16
**willfully [3]** 21/11
21/14 45/6
**willfulness [1]** 44/11
**window [2]** 36/20
36/22
**wish [2]** 74/18 75/19
**wishes [1]** 4/4
**within [10]** 53/1 54/3
68/11 70/7 81/20 86/16
86/17 87/11 87/24
89/14
**without [8]** 31/6 31/12
72/22 76/11 86/20 87/8
88/1 88/7
**witness [3]** 33/23
35/25 36/2
**witnessed [1]** 33/25
**witnesses [1]** 71/16
**woman [1]** 39/14
**wonder [3]** 57/25 58/1
58/2
**wondering [1]** 46/7
**word [7]** 23/22 56/19
58/17 60/6 74/8 74/11
84/16
**words [2]** 57/4 63/21
**work [8]** 27/13 38/5
62/18 73/17 75/21
78/10 80/14 87/3
**worked [1]** 80/15
**worker [2]** 73/5 80/15
**working [3]** 39/2 39/2

74/20
**works [4]** 18/12 36/11
36/15 71/8
**world [4]** 27/16 31/19
72/24 76/7
**worn [1]** 64/9
**worrier [1]** 41/18
**worse [2]** 66/19 67/2
**worth [1]** 36/21
**would [60]** 7/8 10/15
10/18 11/19 16/16 20/5
22/10 30/1 32/8 34/17
35/1 35/16 35/18 35/20
37/21 37/23 38/6 39/17
41/11 43/11 43/19
44/11 44/25 45/8 45/14
46/2 46/8 46/11 46/15
46/17 47/1 52/4 55/8
55/22 56/24 58/10
61/12 65/14 68/24
70/11 72/20 72/21 73/2
74/21 75/15 75/18
75/22 76/4 76/12 76/16
76/19 76/23 77/5 77/8
82/7 84/22 84/22 89/2
89/10 90/5
**would-be [1]** 82/7
**wouldn't [4]** 52/12
59/19 59/20 63/8
**wounded [1]** 25/11
**written [3]** 3/12 28/11
28/12
**wrong [3]** 60/6 60/7
88/11
**wronged [1]** 60/16
**wrote [1]** 45/20

**Y**

**yeah [9]** 22/22 23/8
24/17 32/18 32/21
40/24 47/19 74/3 90/12
**year [8]** 2/3 44/22 53/5
53/7 65/23 72/12 76/14
76/15
**year's [1]** 36/21
**years [14]** 12/20 21/17
36/10 36/12 36/14
36/15 36/22 53/7 54/12
62/24 63/19 64/6 67/6
80/8
**years' [1]** 78/1
**yelled [1]** 20/2
**yes [32]** 2/13 3/1 3/2
7/16 9/13 9/17 9/23

14/16 14/19 16/20 17/4
25/6 30/3 30/14 30/21
35/11 35/23 44/6 46/3
47/6 53/18 63/17 68/3
68/6 73/21 73/24 89/16
90/20
**yesterday [5]** 65/23
76/8 76/13 80/10 89/9
**yet [3]** 20/25 32/18
84/13
**York [1]** 1/13
**you [208]**
**you'd [4]** 33/6 44/7
46/22 48/6
**you're [10]** 22/16
28/20 29/5 31/16 31/18
31/24 36/19 37/13 67/8
67/19
**you've [5]** 28/17 55/12
65/22 74/9 75/7
**young [11]** 38/14 64/4
64/12 65/14 65/19
72/21 73/1 73/1 73/2
73/18 80/9
**your [118]**
**Your Honor [90]** 2/2
2/9 3/1 3/2 3/15 6/23
7/8 8/12 12/14 12/17
13/6 13/14 13/24 14/12
14/16 14/19 16/20
16/24 18/2 18/19 19/6
19/9 19/14 19/17 19/18
20/9 20/12 20/20 21/15
23/9 24/10 25/9 26/1
28/8 28/24 29/24 32/8
33/9 33/25 36/7 43/20
44/5 44/9 44/12 44/18
44/18 47/4 47/20 49/2
55/5 55/11 55/12 55/18
55/21 56/19 57/3 57/23
58/9 58/14 59/4 59/23
60/1 61/5 61/17 62/2
62/9 62/21 63/1 63/11
63/17 63/19 64/20 65/7
67/21 70/1 73/19 74/14
75/6 75/8 75/17 76/5
76/17 77/1 77/15 88/12
88/16 89/4 89/12 89/23
91/3
**yourself [1]** 37/12
**yourselves [1]** 2/8

**Z**

**zero [1]** 52/25
**zip [1]** 6/19