**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **CASE NO. 21-CR-447 (CJN)** |
| | : | |
| **JONATHAN DANIEL POLLOCK,** | : | |
| **JOSEPH DANIEL HUTCHINSON, III,** | : | |
| **OLIVIA MICHELE POLLOCK,** | : | |
| | : | |
| **Defendants.** | : | |

**GOVERNMENT'S OPPOSITION TO**
**DEFENDANT'S MOTION TO SUPPRESS**

Jonathan Pollock has moved to suppress an undefined set of evidence in this case, including that from Mr. Pollock's residence, his electronic devices, his cars, his social media accounts, and anywhere else where he might have an expectation of privacy.  ECF No. 350 at 1 (the "Motion").  But Mr. Pollock has not identified what, if any, specific evidence should be suppressed, nor has he identified any particular flaw, omission, or insufficiency in any of the warrants executed in connection with this matter that would warrant suppression.  Generalized accusations of warrants' insufficiency, without any clear explanation of why—or even which—warrants are insufficient, are not enough to suppress evidence.[1]  The Motion should be denied.

**I.     Factual Background**

As part of its investigation into the conduct of Mr. Pollock and his co-defendants at the U.S. Capitol on January 6, 2021, as well as Olivia Pollock and Hutchinson's failure to appear for trial, and in connection with its attempts to locate Mr. Pollock in order to arrest him, the

---

[1] Olivia Pollock has joined Mr. Pollock's motion to suppress.  ECF No. 354.  As described below, Mr. Pollock's scattershot brief fails to identify the specific warrants or evidence that he would like to suppress.  As such, these arguments are even more generic, and even less effective, when applied to Ms. Pollock, who similarly fails to identify the warrants or evidence that concern her.

1

government sought – and courts issued – several search warrants.[2]  Mr. Pollock does not identify which of these search warrants he objects to.  In the interest of efficiency, the government will focus on the warrants pursuant to which it obtained evidence that it may introduce at trial:

- On June 21, 2021, United States Magistrate Judge Zia M. Faruqi in the District of Columbia authorized a search warrant for two iCloud accounts (the "iCloud Warrant"), one of which was used by Jonathan Pollock (the "iCloud Account").[3]  From the search of the iCloud Account, agents recovered evidence pertaining to Jonathan Pollock's conduct on January 6, 2021, including text messages acknowledging his presence at the Capitol that day, photographs and videos of Jonathan Pollock and his co-defendants on the National Mall and on the Capitol grounds that day, and images and videos taken on January 4 and 5, 2021 depicting Jonathan Pollock wearing the same clothing he wore on January 6, 2021.

- On June 29, 2021, United States Magistrate Judge Thomas G. Wilson in the Middle District of Florida authorized a search warrant for the property located in Lakeland, Florida (the "Property"), where Jonathan Pollock and Olivia Pollock lived along with their parents and other family members (the "Residence Warrant").  The Residence

---

[2] These warrants were produced in discovery as part of the defendants' FBI case files.  They were also produced separately with an accompanying cover letter and folder title identifying them as "legal process" on March 2, 2024.

[3] The other account was used by Joshua Doolin, one of the co-defendants who was previously tried.  The government also intends to introduce materials derived from this account at trial.  To the extent that any of the defendants seek to challenge the validity of search warrants of others' property, they lack standing to do so.  *See Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978) ("Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted. . . . A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed.").

Warrant authorized searches of six structures: (1) a two-story house with an affixed trailer, (2) an enclosed barn, (3) a single-story building, (4) an open-sided barn, (5) a recreational vehicle, and (6) a shed.[4]  The FBI executed the Residence Warrant on June 30, 2021, and in connection with that search, agents seized several electronic devices,[5] clothing items, and other paraphernalia.  At trial, the government may offer evidence obtained from two cellphones seized that day belonging to Jonathan Pollock's mother, Tina Pollock, and his sister, Mary Pollock.  Such evidence includes text messages regarding the family's plans to travel to Washington, D.C. and about images of family members on the Capitol grounds that appeared in the media, and photographs of the defendants and others both on the National Mall on January 6, 2021, and during their travel to Washington, D.C. from Florida on January 5, 2021.

The federal magistrate judges who authorized the warrants each found probable cause to search for and seize evidence of offenses committed by Jonathan Pollock and others at the U.S. Capitol on January 6, 2021.  The iCloud Warrant, the Residence Warrant, and their respective applications are attached as Exhibits 1 and 2.[6]

## II.   Argument

Mr. Pollock takes a shotgun approach to his argument, claiming that every search warrant issued in connection with this investigation was "based on conclusory assertions," ECF No. 350

---

[4] The Residence Warrant did not authorize the search of the van and trailer that were also on the property.  Those are the subject of a separate suppression motion filed by Olivia Pollock.  *See* ECF No. 191.

[5] Notably, no electronic devices used by Jonathan Pollock were seized because Jonathan Pollock had already fled the area and was not present when agents executed the search.

[6] Because the warrants and applications contain unique identifying information – email addresses and home addresses – they were designated as "sensitive" pursuant to the Protective Order in this case.  The government therefore respectfully requests that they be filed under seal.

at 2, "devoid of . . . specific information," *id.*, "stale," *id.* at 3, "over-broad," *id.*, and insufficiently connected to Pollock, *id.* at 4, and failed to describe the items to be seized with "scrupulous exactitude" or the places to be searched with particularity, *id.* at 3-4.  For these reasons, he argues that any evidence directly or indirectly from any location or account where he had an expectation of privacy should be suppressed.

"[A]n affidavit supporting a search warrant is presumptively valid." *United States v. Gifford,* 727 F.3d 92, 98 (1st Cir.2013) (cleaned up).  *See also Franks v. Delaware*, 438 U.S. 154, 171 (1978) ("There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant."); *United States v. Rhine,* 21-CR-0687 (RC), 2023 WL 2682258, at *2 (D.D.C. Mar. 29, 2023) (An "affidavit offered in support of a search warrant enjoys a presumption of validity.") (quoting *United States v. Maynard*, 615 F.3d 544, 550 (D.C. Cir. 2010)).  "A magistrate's determination of probable cause should be paid great deference by reviewing courts." *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (cleaned up).  "A grudging or negative attitude by reviewing courts toward warrants is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." *Id.* (cleaned up).  "[W]hen a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner." *United States v. Ventresca*, 380 U.S. 102, 109 (1965).  Indeed, establishing "[p]robable cause is not a high bar," *D.C. v. Wesby*, 583 U.S. 48, 57 (2018) (cleaned up), and in challenging the sufficiency of a warrant, the defendant, not the government, bears the burden of proving the subsequent search after issuance of a valid warrant was improper.  *United States v. Manafort*, 313 F. Supp. 3d 213, 219 (D.D.C. 2018) (citing *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978)).

Moreover, "[a] motion to suppress . . . must in every critical respect be sufficiently definite, specific, detailed, and nonconjectural to enable the Court to conclude that a substantial claim is presented." *United States v. Cooper*, 203 F.3d 1279, 1284 (11th Cir. 2000).  Nor is it enough for defendants to "'promise' to prove at the evidentiary hearing what they did not specifically allege in their motion to suppress." *Id.* at 1285.  Thus "[a] court need not act upon general or conclusory assertions founded on mere suspicion or conjecture, and the court has discretion in determining the need for a hearing." *United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir. 1985); *see also Cooper*, 203 F.3d at 1284 ("A court need not act upon general or conclusory assertions.").

Accordingly, Mr. Pollock's generic complaints do not require the court's engagement. But even if the Court chooses to wrestle with the defendant's conclusory arguments, they are unconvincing.

*First*, the search warrants are not "based on conclusory assertions," nor are they "devoid of . . . specific information."  ECF No. 350 at 2. The application for the Residence Warrant is supported by a 38-page affidavit, the iCloud Warrant by a 66-page affidavit.  The former describes the affiant's law enforcement background, Ex. 2 at 36-37, a general description of the attack on the Capitol on January 6, 2021, *id.* at 38-40, the crimes Mr. Pollock and his co-defendants committed, *id.* at 40-42, evidence that Jonathan Pollock and Olivia Pollock lived at the residence to be searched, *id.* at 43, evidence that other members of the Pollock family, including Tina Pollock and Mary Pollock, traveled to and were present in Washington, D.C. during the time period around January 6, 2021, *id.* at 44-45, and evidence that Jonathan Pollock, Olivia Pollock, and several of their family members and travel companions had digital devices with them on January 6, 2021 and used those devices while in the vicinity of the Capitol grounds, *id.* at 45-50.

Similarly, the affidavit in support of the iCloud Warrant describes the affiant's law enforcement background, Ex. 1 at 13, the attack on the Capitol, *id.* at 14-24, and the crimes that Jonathan Pollock and his co-defendants committed, *id.* at 25-65, as well as evidence that Jonathan Pollock had and used a digital device at the Capitol, *id.* at 66-68.  It also describes evidence Jonathan Pollock was the user of the iCloud Account, a description of how such accounts generally function, and an explanation of why there were grounds to believe that evidence of Jonathan Pollock's offenses would be found in the iCloud Account, *id.* at 68-70.  *Id.*  Both affidavits provide information—both contextual and specific to each warrant—that provide more than sufficient evidence for the magistrate judges to conclude that execution of the search warrants would reveal evidence of the crimes alleged.

*Second*, the search warrants are not stale.  ECF No. 350 at 3.  "[A]n affidavit's facts are only 'too stale,' and the exclusionary rule only applies, if the officers executing the warrant could not have harbored an objectively reasonable belief in the existence of probable cause."  *United States v. Ali*, 870 F. Supp. 2d 10, 26 (D.D.C. 2012).  Both warrants were issued within six months of Mr. Pollock's participation in the attack on the Capitol, and specifically describe, not just his crimes, but how he was connected to the iCloud Account and the Property, and why it was likely that evidence of those offenses would be found in the iCloud Account and at the Property.  *See* Ex. 1 at 66-70; Ex. 2 at 43-55.  Given the short time between Mr. Pollock's crimes and the issuance of the search warrants, and the nature of the evidence sought, it was objectively reasonable for the officers involved to rely on them, confirmed by the fact that the search warrants did, in fact, yield evidence of Mr. Pollock's crimes.

*Third*, the search warrants specifically describe the places to be searched and the items to be seized, and are neither overbroad nor insufficiently connected to Mr. Pollock.  ECF No. 350 at

2-4.  These arguments boil down to the same thing: that the affidavits are insufficiently specific.

As relevant here:

> There are two prongs of specificity: Particularity and breadth. . . . A warrant is not constitutionally overbroad so long as the time, location, and overall scope of the search are consistent with the probable cause set forth in the warrant application. As to particularity, the warrant must allow officers to seize only evidence of a particular crime.

*Matter of Search of Info. that is Stored at Premises Controlled by Google LLC*, 579 F. Supp. 3d 62, 75-76 (D.D.C. 2021) (cleaned up).  Moreover:

> The Constitution is not so exacting as to require the elimination of all discretion of the officers executing the warrant.  Importantly, the degree of particularity turns on what was realistic or possible in this investigation.  Thus, a broader sweep can be lawful when a reasonable investigation cannot produce a more particular description of the things to be seized prior to obtaining and executing the warrant.

*Id.* at 76 (cleaned up).  Both warrants describe the specific places to be searched: a defined residence and affiliated structures, and a particular iCloud account.  Both warrants also describe the specific evidence sought: evidence of the defendants' crimes at the Capitol.  Neither are the sorts of roving search warrants seeking general evidence of illegality.  In fact, it is hard to imagine how either warrant could describe the locations and evidence sought with more specificity without already knowing what evidence was contained in each.  Given that "a reasonable investigation cannot produce a more particular description of the things to be seized prior to obtaining and executing the warrant," *id.*, both are more than sufficiently specific.

Finally, even if this Court finds that the identified search warrants are invalid, the good-faith exception should permit evidence derived from those warrants to be used.  "[E]vidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment."  *United States v. Leon*, 468 U.S. 897, 919 (1984).  "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or

his judgment that the form of the warrant is technically sufficient." *United States v. Washington*, 775 F.3d 405, 407 (D.C. Cir. 2014) (quoting Leon, 468 U.S. at 898). Thus "we ordinarily do not suppress evidence seized pursuant to a search warrant unless the warrant affidavit was 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *United States v. Cardoza*, 713 F.3d 656, 659 (D.C. Cir. 2013) (quoting *Leon*, 468 U.S. at 923). This principle also applies to the staleness analysis. *See United States v. Matthew*, 753 F.2d 1321 (D.C. Cir. 2014) (declining to determine whether a potential period of three years was "stale" because the officers were executing a warrant that contained "a judicial mandate to an officer to conduct a search" (quoting *Leon*, 468 U.S. at 920 n.21). Mr. Pollock has not plausibly alleged, much less shown, that any agents who executed the warrants at issue did or should have known that the warrants at issue were unconstitutional. Given the depth and specificity of the affidavits in support of these warrants, the officers who executed them acted reasonably in doing so.

\* \* \*

Mr. Pollock has made no definite allegations about the searches in this investigation.   In fact, he has not even identified the searches at issue, the search warrants that authorized them, or the evidence that was obtained.   In the absence of more particular accusations, this Court has no obligation to entertain these generic, scattershot arguments.   Even when one does engage with Mr. Pollock's arguments, for the reasons described above, they are unconvincing.   The Motion should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By:   */s/ Brendan Ballou*
Brendan Ballou
Special Counsel
DC Bar No. 241592

Anna Krasinski
NH Bar No. 276778
Benet J. Kearney
NY Bar No.4774048
Assistant United States Attorneys

United States Attorney's Office
601 D Street NW
Washington, DC 20530
(603) 451-7851/ (212) 637 2260 / (202) 809-2058
benet.kearney@usdoj.gov
anna.krasinski@usdoj.gov
brendan.ballou-kelley@usdoj.gov

## <u>CERTIFICATION</u>

I, Brendan Ballou, certify that to serve the parties, their counsel, and standby counsel, that I am electronically filing this pleading with the Clerk of the Court using the CM/ECF system, and am separately mailing this filing to the defendant Joseph Daniel Hutchinson III.

<u>/s/ Brendan Ballou</u>
Brendan Ballou
DC Bar No. 241592
Special Counsel
United States Attorney's Office
601 D Street NW
Washington, DC 20001
(202) 431-8493
Brendan.Ballou-Kelley@usdoj.gov